United States District Court
Southern District of New York
-------------------------------------------------------x

Alpha Capital Anstalt,

                       Plaintiff,

        v.

Oxysure Systems, Inc., Adar Bays LLC,
Union Capital LLC, JSJ Investments, LLC,
Group 10 Holdings, LLC and Macallan
Partners, LLC,

                      Defendants.

-------------------------------------------------------x

Memorandum of Law Submitted By Plaintiff Alpha
Capital Anstalt in Support of its Motion for a Preliminary
Injunction and a Temporary Restraining Order

Law Offices of Kenneth A. Zitter
Attorneys for Plaintiff,
  Alpha Capital Anstalt
260 Madison Avenue - 18th Floor
New York, New York 10016
212-532-8000

Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Point 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Alpha Capital Has Met the Standard for
    the Issuance of a Preliminary Injunction
    and a Temporary Restraining Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Alpha Capital Has A Strong Likelihood of Success on the Merits . . . . . . . . . . . 4

    C.    Alpha Capital Will Suffer Irreparable Harm if
    Preliminary Injunctive Relief is Not Granted . . . . . . . . . . . . . . . . . . . . . . . . . 9

        i.    The parties agreed in writing that Oxysure's
        breach of the transaction documents
        would cause Alpha Capital irreparable harm
        and entitle Alpha Capital to injunctive relief . . . . . . . . . . . . . . . . . . . . . 9

        ii.    Alpha Capital's damages will
        be difficult to calculate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        iii.    Oxysure is unlikely to be able to
        satisfy any ultimate damages award . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        iv.    Money damages are not an adequate remedy
        for the breach by a public corporation
        of the terms of its publicly held securities . . . . . . . . . . . . . . . . . . . . . . 15

        v.    Only the requested equitable relief
        will provide effective enforcement of
        Alpha Capital's contract rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Point 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    Alpha Capital Should Not Be
    Required to Post a Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Table of Authorities

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research, Corp.*,
2003 WL 328302 (S.D.N.Y. Feb. 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Alpha Capital Aktiengesellschaft v. Group Management Corp.*,
2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Alvenus Shipping v. Delta Petroleum (U.S.A.) Ltd.*,
876 F. Supp. 482 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brenntag International Chemicals, Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Citibank, N.A. v. Singer Co.*, 684 F. Supp. 382 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . 18

*Delaware-New Jersey Ferry Co. v. Leeds,* Del. Ch., 186 A. 913 (1936)
*Co. v. Leeds,* Del. Ch., 186 A. 913 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Department of Urban Development v. K. Capolino Construction Corp.,*
2001 U.S. Dist. LEXIS 5825 (S.D.N.Y. May 7, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Doctor's Associates v. Stuart*, 85 F.3d 975 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Fleet National Bank v. Trans World Airlines*, 767 F. Supp.
510 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Halifax Fund, L.P. v. Response U.S.A., Inc.*,
1977 WL 33173241 (Del. Ch. May 13, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974)
*cert. denied,* 94 S.Ct. 2644, 417 U.S. 932, 41 L. Ed. 2d 236 (1974) . . . . . . . . . . . . . . . . . . . . 19

*Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631 (2d Cir.1979) . . . . . . . . . . . . . 12

*Kamine/Besicorp. Allegany L.P. v. Rochester Gas & Electric Corp.*,
908 F. Supp. 1180 (W.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*La Plaza Defense League v. Kemp*, 742 F. Supp. 792 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . 19

*North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . 10

*Polymer Technology Corp. v. Mimran*, 37 F.3d 74 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Reuters Ltd. v. United Press International, Inc.,* 903 F.2d 904 (2d Cir. 1990) . . . . . . . . . . . . . . 4

*Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238
(S.D.N.Y. 2000), *aff'd as modified*, 356 F.3d 393 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Seide v. Crest Color, Inc.*, 835 F. Supp. 732 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sovereign Business Forms, Inc. v. Sternrite Industries, Inc.,*
2000 WL 1772599 (S.D.N.Y. Nov. 28, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,*
60 F.3d 27 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Ticor Title Insurance Co. v. Cohen,* 173 F.3d 63 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . 10, 11

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir. 2003) . . . . . . . . . . . . . . 18

Federal Rules of Civil Procedure:

Rule 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 18

Rule 65(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Treatises:

11A Wright, Miller & Kane, *Federal Practice and Procedure,*
Sec. 2948.1 (1995 ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11A Wright, Miller and Kane, *Federal Practice and Procedure,*
Sec. 2954 (1995 ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Preliminary Statement</u>

This memorandum of law is submitted by Plaintiff Alpha Capital Anstalt ("Alpha Capital") in support of its motion under Fed. R. Civ. P. Rule 65 for a preliminary injunction and a temporary restraining order preventing Defendant Oxysure Systems, Inc. ("Oxysure"), and all those in active concert with it, from:

i) honoring any conversion requests submitted by any holder of any Oxysure Series C, D or E Convertible Preferred Stock or any convertible note or other convertible security issued after December 26, 2013 and containing a variable conversion price; and

ii) issuing or releasing from escrow any variable rate securities or securities which otherwise violate the terms of the Securities Purchase Agreement and the Certificate of Designation governing the Oxysure Series B Convertible Preferred Stock owned by Alpha Capital; and

iii) issuing any securities for less than the amount set forth in Section 4.13 of the Securities Purchase Agreement; and

iv) entering into any Subsequent Financing in violation of Alpha Capital's right to participate therein in accordance with Section 4.17 of the Securities Purchase Agreement.

As hereafter set forth, Alpha Capital has a high likelihood of success on the merits and, in the absence of the requested preliminary injunction and temporary restraining order, Alpha Capital will suffer irreparable harm.

The Facts

The facts of this matter have been fully set forth in the affirmation of Konrad Ackermann served herewith and will not be repeated at length herein. Suffice it to say that Oxysure, in issuing Series C, D and E Convertible Preferred Stock and in issuing Convertible Notes, clearly violated the terms of the Securities Purchase Agreements entered into by Alpha Capital and Oxysure with respect to Alpha Capital's two purchases of Series B Convertible Preferred Stock (the "Series B Stock"), and the Certificates of Designation filed in connection therewith. Alpha Capital has a likelihood of success on the merits of its claims.

Absent an award of the requested equitable relief, Alpha Capital will suffer irreparable harm. Oxysure, in order to induce Alpha Capital to purchase the Series B Stock, agreed in writing on two occasions that Alpha Capital would suffer irreparable harm in the event of Oxysure's violation of the terms of the transaction documents (Ackermann Affirmation, ¶12). Because of the nature of Oxysure's violations of the transaction documents, Alpha Capital will have difficulty establishing its damages (Ackermann Affirmation, ¶13) which, in any event, because of Oxysure's financial circumstances and its reliance on continued financings to remain in business, Oxysure is unlikely to be able to pay (Ackermann Affirmation, ¶14). Oxysure's own

auditors have expressed substantial concern about Oxysure's ability to continue as a going

concern (Ackermann Affirmation, ¶14). Further, purchasers of securities issued by public

corporations, as here, should be able to enforce the terms of those securities and not be relegated

to a damages remedy when the public corporation violates the terms applicable to those

securities. Alpha Capital seeks enforcement of the clear contract terms to which Oxysure agreed,

which cannot otherwise be effectively enforced. Oxysure agreed to those terms to induce Alpha

Capital to invest over $1 million in Oxysure securities. Those factors, as hereafter set forth,

constitute irreparable harm warranting an award of the requested equitable relief.

<u>Argument</u>

<u>Point 1</u>

Alpha Capital Has Met the Standard for
the Issuance of a Preliminary Injunction
<u>and a Temporary Restraining Order</u>

A. <u>The Standard</u>

The Second Circuit's standard for the grant of a preliminary injunction under Fed. R. Civ.

P. Rule 65 is well known. As the court stated in *Tom Doherty Associates, Inc. v. Saban*

*Entertainment, Inc.,* 60 F.3d 27, 33 (2d Cir. 1995):

> "A party seeking injunctive relief ordinarily must show: (a) that it
> will suffer irreparable harm in the absence of an injunction and (b)
> either (i) a likelihood of success on the merits or (ii) sufficiently
> serious questions going to the merits to make them a fair ground for

3

> litigation and a balance of hardships tipping decidedly in the
> movant's favor."

See also: *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999); *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77-78 (2d Cir. 1994); *Reuters Ltd. v. United Press International, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990).

As is hereafter set forth, Alpha Capital meets the standard for an award of the requested preliminary injunctive relief.

B. Alpha Capital Has A Strong Likelihood of Success on the Merits.

Alpha Capital entered into a Securities Purchase Agreement ("SPA") when it acquired the Series B Stock and Warrants both in December 2013 and December 2014. In the SPA, the parties agreed that while Alpha Capital still owned the Series B Stock or the Warrants:

> i) Oxysure would not enter into any Variable Rate Transactions, as defined and set forth
> in the SPA. In general, that provision prohibited Oxysure from issuing any
> securities or debt instruments which were convertible into Oxysure common stock
> at a variable conversion price - i.e., a price which fluctuated with the market price
> of Oxysure common stock; and

ii) Oxysure would not issue any stock at a price less than the greater of the Preferred

Stock Conversion Price and the Exercise Price of the Warrants. Since December

2013, that price has been $1.20 per share; and

iii) Alpha Capital had the right to participate in any Subsequent Financing, up to the full

amount of any such financing.

Thus §4.13 and §4.17 of the SPA provide, in relevant part, as follows (Exhibits A and C to the

Ackermann Affirmation):

4.13. <u>Subsequent Equity Sales</u>. Without prior written approval
from Holder, from the date hereof until such time as the Preferred
Stock and Warrants are no longer outstanding, the Company will
not, without the consent of the Purchasers, . . . issue nor agree to
issue any common stock, floating or Variable Priced Equity Linked
Instruments nor any of the foregoing or equity with price reset
rights (subject to adjustment for stock splits, distributions,
dividends, recapitalizations and the like) (collectively, the
"<u>Variable Rate Transaction</u>") . . . "<u>Variable
Priced Equity Linked Instruments</u>" shall include: (A) any debt or
equity securities which are convertible into, exercisable or
exchangeable for, or carry the right to receive additional shares of
Common Stock either (1) at any conversion, exercise or exchange
rate or other price that is based upon and/or varies with the trading
prices of or quotations for Common Stock at any time after the
initial issuance of such debt or equity security, or (2) with a fixed
conversion, exercise or exchange price that is subject to being reset
at some future date at any time after the initial issuance of such
debt or equity security due to a change in the market price of the
Company's Common Stock since date of initial issuance. . . .

For so long as Preferred Stock or Warrants are outstanding,
the Company will not . . . issue any Common Stock or Common
Stock Equivalents, if such issuance . . . would be at an effective
price per share of Common Stock less than the higher of the

5

Conversion Price or Warrant Exercise Price in effect at the time of such lower issuance . . . or would be issued or made on terms more favorable to such other holder or recipient than the Purchaser, with respect to the terms of the offering pursuant to the Transaction Documents.

4.17    Participation in Future Financing
         (a) From the date hereof until the date that is the 24 month anniversary of the Closing Date, upon any proposed issuance by the Company or any of its Subsidiaries of Common Stock, Common Stock Equivalent, for cash consideration, Indebtedness or a combination thereof . . .   (a "Subsequent Financing"), each Purchaser shall have the right to participate in up to an amount of the Subsequent Financing equal to 100% of the Subsequent Financing (the "Participant Maximum") on the same terms, conditions and price provided for in the Subsequent Financing. . .

Oxysure violated those provisions of the SPA when it:

i) issued Series C, D and E Convertible Preferred Stock and convertible notes to

   Defendants Adar Bays, LLC ("Adar") and Union Capital LLC ("Union

   LLC") on or about June 30, 2015[1]; and

ii) issued variable rate convertible notes (together with the convertible notes

   issued to Adar and Union LLC, the "Convertible Notes") to Defendants

   JSJ Investments, LLC ("JSJ"), Group 10 Holdings, LLC ("Group 10"),

   Union LLC and Macallan Partners, LLC ("Macallan") in or about the first

   quarter of 2015; and

_____

   [1]In accordance with Oxysure's Form 8K-Amended filed on July 8, 2015 (Exhibit H) and a July 7, 2017 press release (Exhibit I), the Series D and E Convertible Preferred Stock have been issued in escrow pending Oxysure's compliance with certain undertakings.

iii) did not inform Alpha Capital of, and did not afford Alpha Capital an

opportunity to participate in, the subsequent financings in which Oxysure

issued the Series C, D and E Convertible Preferred Stock and the

Convertible Notes (Ackermann Affirmation, ¶8).

On July 7, 2015 Oxysure issued a press release (Exhibit I to Ackermann Affirmation) and

on July 8, 2015 Oxysure filed a Form 8K-Amended (Exhibit H to Ackermann Affirmation) in

which it disclosed that it had entered into an agreement for two financing tranches:

> On June 30, 2015, OxySure Systems, Inc. (the "Company") entered
> into Securities Purchase Agreements (the "Purchase Agreements")
> with two accredited institutional investors (the "Investor(s)"),
> providing for, subject to various conditions, up to $3 million in
> financing in the form of $2.7 million in convertible preferred stock
> and 2 convertible notes totaling $.3 million.
>
> The Purchase Agreements provide for two financing tranches,
> comprising a first tranche for $1 million received by the Company
> at the closing on June 30, 2015 ("Closing") and a second tranche
> for $2 million paid by the Investors into an escrow account at
> Closing, to be released to the Company upon the uplisting of the
> Company's common stock ("Common Stock") to a national
> exchange such as NasdaqCM or NYSE MKT ("Uplisting").

According to the Form 8K Amended, the first tranche financing, which already closed, involved

a $1 million investment, $700,000 for Series C Stock and $300,000 for convertible notes. The

Series C Stock is convertible at a price linked to the market price of Oxysure common stock,

which violates Alpha Capital's agreement with Oxysure.[2] The same market linked conversion price is contained in the Series D stock, which remains in escrow because the second tranche financing has not yet closed (see Exhibit H to the Ackermann Affirmation, §6(b)). The Series E Stock, also held in escrow, has a conversion price of 15% less than market price at the time of conversion (Exhibit H to the Ackermann Affirmation, §6(b)). Because Series C, D and E Stock can be converted into common stock at a discount to market, and market price is currently approximately $0.55 (Exhibit P to the Ackermann Affirmation), Oxysure has also violated its agreement not to issues shares at less than $1.20.

Oxysure's issuance of other variable rate convertible notes disclosed in its Form 10Q for the quarter ended March 31, 2015, filed on May 18, 2015, also violates Oxysure's agreement with Alpha Capital. Thus Oxysure disclosed (Exhibit N to the Ackermann Affirmation):

> During the three months ended March 31, 2015 we issued three convertible notes with a total principal value of $536,000 for $495,000 cash. The notes contained original issuance discounts for a total of $41,000, and interest rates ranging from 8% to 12%. The maturity dates of the notes range from September 25, 2015 to February 19, 2016. **The creditors have the option at any time to convert the principal and any accrued interest into common stock of the Company at an average discount rate of approximately thirty six percent off the market price of the Company's common stock.** (bold added)

---

[2] The Convertible Notes are not described in nor attached to the public filing. Presumably the conversion price of those notes is linked to market.

Because the market price of Oxysure common stock during the first quarter of 2015 was substantially less than $1.20 (Exhibit P to Ackermann Affirmation), that issuance violated both the variable rate transaction and the pricing provisions of Alpha Capital's SPA.

Alpha Capital, therefore, has established a likelihood of success on the merits supporting the grant of the requested equitable relief.

C.  <u>Alpha Capital Will Suffer Irreparable Harm if Preliminary Injunctive Relief is Not Granted.</u>

Alpha Capital also meets the other requirement for a preliminary injunction -  irreparable harm absent the grant of the injunction. Alpha Capital meets this prong of the test for several reasons.

i.   The parties agreed in writing that
     Oxysure's breach of the transaction documents
     would cause Alpha Capital irreparable harm
     <u>and entitle Alpha Capital to injunctive relief</u>

The parties, represented by sophisticated counsel, agreed that Alpha Capital would suffer irreparable harm if Oxysure failed to comply with its obligations under the transaction documents and that Alpha Capital would be entitled to equitable relief to remedy any such failures. Thus ¶5.15 of the SPA (Exhibits A and C to the Ackermann Affirmation)  provides:

> 5.15 Remedies. In addition to being entitled to exercise all rights provided herein or granted by law, including recovery of damages, each of the Purchasers and the Company will be entitled to specific performance under the Transaction Documents. The parties agree that monetary damages may not be adequate compensation for any loss incurred by reason of any breach of obligations contained in the Transaction Documents and hereby agree to waive and not to assert in any action for specific performance of any such obligation the defense that a remedy at law would be adequate.

The courts in *North Atlantic Instruments v. Haber, supra*, at 49 and in *Ticor Title Insurance Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) both noted a contractual provision in the agreement under consideration which stated that a breach would cause irreparable injury in finding irreparable injury and in awarding injunctive relief. Indeed, in *Ticor*, the court stated that the acknowledgment of irreparable injury "might arguably be viewed as an admission" in that regard. *Ticor, supra*, 173 F.3d at 69. See also: *Alpha Capital Aktiengesellschaft v. Advanced Viral Research*, 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003) (the court noted defendant's acknowledgment of irreparable injury in granting injunctive relief); *Sovereign Business Forms, Inc. v. Sternrite Industries, Inc.*, 2000 WL 1772599 at *13 (S.D.N.Y. Nov. 28, 2000). The Court should certainly take into account the agreement of the parties to conclude that Alpha Capital is suffering irreparable harm as a result of Oxysure's breach of the SPA.

ii. Alpha Capital's damages will
   <u>be difficult to calculate</u>

Alpha Capital's damages in this case will be difficult to prove. Oxysure common stock
has declined from approximately $0.75 when Alpha Capital purchased the Preferred Stock to
approximately $0.55 today (Exhibit P to the Ackermann Affirmation). How much of that decline
or any future decline is or will be attributable to the market overhang created by the new Series
C, D and E Stock and by the Convertible Notes will be difficult to establish. Alpha Capital's
damages, therefore, will be difficult to prove. Alpha Capital's damages resulting from Oxysure's
wrongful failure to participate in the subsequent financings will also be very difficult to prove.
Because Alpha Capital was not offered the opportunity to participate, how much damage Alpha
Capital has suffered, had it chosen to invest in the financings, will be difficult to calculate.

As the court stated in *Tom Doherty Assoc., supra*, 60 F.3d at 38 (2d Cir. 1995):

> [I]rreparable harm exists only where there is a threatened imminent
> loss that will be very difficult to quantify at trial….. This rule is
> necessary to avoid the unfairness of denying an injunction to a
> plaintiff on the ground that money damages are available, only to
> confront the plaintiff at a trial on the merits with the rule that
> damages must be based on more than speculation.

See also: *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 248 (S.D.N.Y. 2000), *aff'd as
modified*, 356 F.3d 393 (2d Cir. 2004)("However, the Second Circuit has recognized that even
where damages are available, irreparable harm may be found where those damages are clearly
difficult to assess and measure."); *Ticor Title Ins. Co. v. Cohen, supra*, at 69 ("To the contrary,

11

we think for several reasons irreparable harm was shown to be present in this case. Initially, it would be very difficult to calculate monetary damages . . ."); *Ives Laboratories, Inc. v. Darby Drug Co., Inc.,* 601 F.2d 631, 644 (2d Cir. 1979)("irreparable injury" is shown where "interim damages cannot be calculated with sufficient accuracy to make damages an adequate substitute").

Alpha Capital's difficulty in calculating damages at the end of this case, therefore, also supports an award of the requested equitable relief.

iii. Oxysure is unlikely to be able to
   satisfy any ultimate damages award

Alpha Capital will suffer irreparable harm if the requested injunctive relief is not awarded because Oxysure is unlikely to be able to respond to any ultimate damages award at the end of this case. The likely inability of a defendant to respond in damages at the end of a case constitutes irreparable harm warranting injunctive relief.

Oxysure, according to its public filings, is an early stage technology company in the business of developing products with the capability of generating medical grade oxygen on demand, without the necessity of storing oxygen in compressed tanks. Oxysure itself and its accountants express substantial concern about Oxysure's ability to continue as a going concern. Thus Oxysure itself, in its most recent 10K filed on March 31, 2015, states (Exhibit Q to the Ackermann Affirmation):

> We are an early stage company and have a history of net losses. Currently, we have one product that we manufacture and make available for commercial sale, and to date we have not generated any significant product revenue. **As a result, we expect to continue to incur substantial net losses for the foreseeable future, which raises substantial doubt about our ability to continue as a going concern.** (Bold added)

In that filing Oxysure states that it does not have a long operating history and has not realized any substantial revenues. It has an accumulated deficit from inception, in 2004, through the end of 2014, of over $18 million. Because of the various factors which Oxysure sets forth in that filing, it concludes that it may well continue to incur substantial losses and negative cash flows for the foreseeable future. Indeed, Oxysure expects its net losses to continue for the foreseeable future. Oxysure notes its dependence on raising funds from additional debt or equity to continue its operations. Based upon its most current financial statements for the quarter ended March 31, 2015 (Exhibit R to the Ackermann Affirmation), filed with its Form 10Q on May 18, 2015, Oxysure's current liabilities ($1,632,290) substantially exceed its current assets ($1,435,137), thereby making it impossible for Oxysure to pay its obligations in the ordinary course as they come due.

Oxysure further states in that filing (Exhibit S to the Ackermann Affirmation):

> As a result of the foregoing circumstances our independent registered public accounting firm has included, and is likely in the future to include, an explanatory paragraph in their audit opinions **based on substantial uncertainty regarding our ability to continue as a going concern.** An audit opinion of this type may

13

interfere with our ability to obtain debt or equity financing in the
future. (Bold added)

Its independent auditors in fact noted in their opinion their substantial uncertainty regarding

Oxysure's ability to continue as a going concern (Exhibit T to the Ackermann Affirmation,

independent auditor's opinion to Oxysure's most recent audited financials filed on March 31,

2015).

The "irreparable harm" requirement for preliminary injunctive relief is met where, as

here, the movant has demonstrated that, absent such relief, any potential monetary

judgment may well be uncollectible. Thus in *Alvenus Shipping v. Delta Petroleum (U.S.A.) Ltd.*,

876 F. Supp. 482, 487 (S.D.N.Y. 1994) the court stated:

> As a general rule, irreparable harm is not present when the plaintiff has a
> claim for money damages.... However, an exception to the general rule
> exists when it is shown that a money judgment will go unsatisfied absent
> equitable relief.

See also: *Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 735 (S.D.N.Y. 1993); 11A Wright, Miller

& Kane, *Federal Practice and Procedure*, Sec. 2948.1, p. 151-53 (1995 ed.)("Even if a loss is

fully compensable by an award of money damages, however, extraordinary circumstances, such

as a risk that the defendant will become insolvent before a judgment can be collected, may give

rise to the irreparable harm necessary for a preliminary injunction."); *Brenntag International

Chemicals, Inc. v. Bank of India,* 175 F.3d 245, 250 (2d Cir. 1999)(irreparable harm is presented

in "monetary injury situations involving obligations owed by insolvents."); *Department of Urban*

14

*Development v. K. Capolino Construction Corp.*, 2001 U.S. Dist. LEXIS 5825. *10 (S.D.N.Y. May 7, 2001)("A monetary injury involving an obligation owed by an insolvent party constitutes irreparable injury."); *Alpha Capital Aktiengesellschaft v. Group Management Corp.,* 2002 WL 31681798 at *11 (S.D.N.Y. Nov. 25, 2002) ("[T]he Second Circuit has made it abundantly clear that irreparable harm is presented in 'monetary situations involving obligations owed by insolvents.'(citing *Brenntag International Chemicals*)").

The substantial doubt about Alpha Capital's ability to collect any judgment against Oxysure at the end of this litigation, therefore, supports an award of injunctive relief.

iv. Money damages are not an adequate remedy
for the breach by a public corporation
of the terms of its publicly held securities

Courts have recognized that money damages are simply not an adequate remedy for failure of a corporation to meet its obligations under the terms of its securities. In this case, Oxysure's agreement not to issue securities in variable rate transactions and not to issue securities for less than a certain price were essential terms to preserve the value of Alpha Capital's Series B Stock and Warrants. Money damages will do little to protect those rights. Courts have held, in the context of convertible securities, that the only appropriate remedy is to compel the corporation to comply with the terms of the securities. In *Halifax Fund, L.P. v. Response U.S.A., Inc.*, 1977 WL 33173241 (Del. Ch. May 13, 1997), plaintiff brought a motion for summary judgment relating to the corporation's failure to issue common shares to plaintiff

upon conversion of plaintiff's convertible preferred shares. Plaintiff sought to have the common shares issued. Defendant, among other points, argued that plaintiff's remedy for the corporation's failure to honor its contractual obligation to issue the shares was limited to damages. In his decision on the summary judgment motion the Delaware vice chancellor stated, 1977 WL 33173241 at *3:

> "There is no case - the defendant has not been able to cite any case, and the court is aware of none - that has the effect of precluding this Court from granting specific performance to remedy a clear case of a violation of a contract right to convert preferred stock into common stock. . . .
>
> In that connection, the Court rejects the defendant's argument that plaintiff has an adequate remedy at law, namely damages. In this case, only coercive relief will vindicate the rights being enforced . . ."

The grant of a preliminary injunction in this case is also required to protect the public securities markets. Purchasers of securities issued by public corporations, as is Alpha Capital in this case, should be able to rely on the integrity of the securities they are purchasing. If an investor is purchasing a convertible preferred stock, he should be able to rely on the fact that a court will enforce the agreements relating to that stock. He should not be relegated to long and costly litigation with complicated proofs of damages, if, as here, the issuing corporation blatantly ignores its contractual obligations. Thus, by issuing the preliminary injunction as requested, the Court will insure the integrity of the public securities markets. In *Delaware-New Jersey Ferry Co. v. Leeds,* Del.Ch., 186 A. 913, 916 (1936), Chancellor Josiah O. Wolcott, writing more than 75 years ago, stated:

16

> "If an innocent purchaser for value cannot rely on the verity of what
> the [corporation] itself represented by its certificate to be true, there
> could be no security whatever in transactions of purchase and sale
> of stocks. Confidence which is the support of all business relations
> would be destroyed on a vast and incalculable scale."

So, too, in this case, Oxysure must be compelled to comply with its unequivocal agreements
relating to the Series B Stock.


Other courts have noted that compelling compliance with the terms of a security's
issuance is preferable to damages. Thus in *Longview Special Finance v. Infinium Labs, Inc.*, 06
Civ. 1772, Judge Holwell of this Court, in dealing with a convertible security, stated that
"compelling compliance rather than simply awarding damages reinforces the sanctity of bargains
between corporations and creditors and investors (Transcript of hearing on November 29, 2006,
p. 21 annexed hereto as Exhibit A). Oxysure is a public company with publicly trading securities.
Alpha Capital, as a purchaser of a public company's securities, should be entitled to court
assistance in enforcing the terms of the Series B Stock. Such enforcement of the terms of a
security will insure the integrity of the public marketplace for securities - a purchaser of
securities from a public company is entitled to obtain what he bargained for when he purchased
the securities.

17

v. Only The Requested Equitable Relief
   Will Provide Effective Enforcement Of
   Alpha Capital's Contract Rights

Other than the award of the requested equitable relief, there is no other effective way to

insure that Alpha Capital receives the benefit for which it bargained - insuring that Oxysure

would not issue convertible securities with variable conversion rates, would not issue securities

for less than an agreed upon minimum consideration and would afford Alpha Capital the right to

participate in subsequent financings. Where, as here, "the only way to render the provision truly

viable is to enforce it," the Court should do so. See *Wisdom Imp. Sales Co. v. Labatt Brewing*

*Co.*, 339 F.3d 101, 114 (2d Cir. 2003); *Citibank, N.A. v. Singer Co.*, 684 F. Supp. 382, 386

(S.D.N.Y. 1988) ("[A] claimant entitled to protection need not wait for a trial on the merits to

protect its rights.")

Point 2

Alpha Capital Should Not Be
Required to Post a Bond

Rule 65 of the Federal Rules of Civil Procedures states as follows in connection with the

issuance of a preliminary injunction and a temporary restraining order:

> (c) Security. No restraining order or preliminary injunction
> shall issue except upon the giving of security by the applicant, in
> such sum as the court deems proper, for the payment of such costs
> and damages as may be incurred or suffered by any party who is
> found to have been wrongfully enjoined or restrained. No such
> security shall be required of the United States or of an officer or
> agency thereof.

18

Although the Rule is couched in mandatory language, the law is clear, however, that the Court has discretion with respect to requiring or dispensing with the bond. As the court stated in *La Plaza Defense League v. Kemp*, 742 F. Supp. 792, 807, note 13 (S.D.N.Y. 1990):

> "While Rule 65(c) appears to be mandatory, courts may decline to require the posting of a security bond."

Similarly, as is set forth in 11A Wright, Miller and Kane, *Federal Practice and Procedure*, Sec. 2954 (1995 ed.):

> "Indeed, it has been held that the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant."

See also: *Doctor's Associates v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996); *Kamine/Besicorp. Allegany L.P. v. Rochester Gas & Electric Corp.,* 908 F. Supp. 1180, 1193 (W.D.N.Y. 1995)(the court dispensed with a bond when granting a temporary restraining order noting that it did not appear that the defendant would suffer any long term harm if it turned out that the restraining order was wrongly granted); *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1356 (2d Cir. 1974) *cert. denied,* 94 S. Ct. 2644, 417 U.S. 932, 41 L. Ed. 2d 236 (1974)("[T]he district court may dispense with security when there has been no proof of likelihood of harm to the party enjoined."); *Fleet National Bank v. Trans World Airlines,* 767 F. Supp. 510, 519 (S.D.N.Y. 1991) (bond dispensed with when court believed movant acted in good faith and could not be liable to defendant).

19

Under the facts and circumstances in this case, there is no reasonable possibility that Oxysure will suffer any monetary damages as a result of being compelled to comply with its contractual obligations.  The Court, therefore, should dispense with the requirement of the bond.

<u>Conclusion</u>

For the foregoing reasons, the Court should award the relief requested in Plaintiffs' Order to Show Cause.

Respectfully submitted,

Law Offices of Kenneth A. Zitter

By
Kenneth A. Zitter, Esq.
Attorneys for Plaintiff

Alpha Capital Anstalt
260 Madison Avenue, 18th Floor
New York, New York 10016
212-532-8000
KAZ-3195

20