United States District Court
Southern District of New York
------------------------------------------------------x

Alpha Capital Anstalt,

                        Plaintiff,

        v.                                                      Defendant's Original Answer

Oxysure Systems, Inc., Adar Bays LLC,
Union Capital LLC, JSJ Investments, LLC,
Group 10 Holdings, LLC and Macallan          15 Civ. 5443 (VM) (GWG)
Partners, LLC,


                        Defendants.

------------------------------------------------------x

        Defendant Oxysure Systems, Inc., by its attorneys, respectfully submit its Original

Answer:

        1.      Plaintiff Alpha Capital Anstalt ("Alpha Capital") is a Liechtenstein entity with its

principal place of business in Vaduz, Liechtenstein.

        **RESPONSE:** Defendant does not deny this allegation but lacks information to verify its

truth or falsity at this time.

        2.      Defendant Oxysure Systems, Inc. ("Oxysure") is a Delaware corporation with its

principal place of business in Frisco, Texas.

        **RESPONSE:** Admit.

        3.      Upon information and belief, Defendant Adar Bays LLC ("Adar") is a Florida

limited liability company with its principal place of business in Miami, Florida all of whose

members are citizens of a state in the United States.

        **RESPONSE:** Defendant Oxysure does not deny this allegation but lacks information to

verify its truth or falsity at this time.

4.      Upon information and belief, Defendant Union Capital, LLC ("Union LLC") is a New York limited liability company with its principal place of business in Brooklyn, New York all of whose members are citizens of a state in the United States.

**RESPONSE:** Defendant does not deny this allegation but lacks information to verify its truth or falsity at this time.

5.      Upon information and belief, Defendant JSJ Investments, LLC ("JSJ") is a Texas limited liability company with its principal place of business in Dallas, Texas all of whose members are citizens of a state in the United States.

**RESPONSE:** Defendant does not deny this allegation but lacks information to verify its truth or falsity at this time.

6.      Upon information and belief, Defendant Group 10 Holdings, LLC ("Group 10") is a Florida limited liability company with its principal place of business in Miami Beach, Florida all of whose members are citizens of a state in the United States.

**RESPONSE:** Defendant does not deny this allegation but lacks information to verify its truth or falsity at this time.

7.      Upon information and belief, Defendant Macallan Partners LLC ("Macallan") is a New York limited liability company with its principal place of business in White Plains, New York all of whose members are citizens of a state in the United States. Adar, Union LLC, JSJ, Group 10 and Macallan are hereafter collectively referred to as the "Investor Defendants".

**RESPONSE:** Defendant does not deny this allegation but lacks information to verify its truth or falsity at this time.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of a state and citizens of a foreign state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**RESPONSE:** Defendant does not deny this allegation but lacks information to verify its truth or falsity at this time.

9.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated and it is the exclusive district in which Alpha Capital and Oxysure agreed that the claims hereafter set forth can be brought.

**RESPONSE:** Defendant does not deny this allegation but lacks information to verify its truth or falsity at this time.

## FACTS COMMON TO ALL CLAIMS

10.     On or about December 26, 2013, Alpha Capital purchased 675 shares of Oxysure Series B Convertible Preferred Stock (the "Series B Stock") for $675,000. The Preferred Stock was convertible into shares of Oxysure common stock. Alpha Capital also received, in connection with the Series B Stock, warrants (the "Warrants") to purchase 613,636 additional shares of Oxysure common stock.

**RESPONSE:** Defendant admits this allegation.

11.     On or about December 29, 2014, Alpha Capital purchased an additional 400 shares of the Series B Stock for $400,000. Alpha Capital also received, in connection with the additional Series B Stock, warrants to purchase 727,273 additional shares of Oxysure common

3

stock (the "2014 Warrants"). The 2013 and 2014 Warrants are together referred to as the "Warrants". The terms of the SPA and the 2014 Securities Purchase Agreement were identical in all material respects and will together be referred to as the SPA.

**RESPONSE:** Defendant admits the first two sentences of this allegation and does not take a position on the characterizations thereafter.

12.     Alpha Capital currently holds 750 shares of Series B Stock and Warrants to purchase 1,340,909 shares of Oxysure common stock. Alpha Capital has invested over $1 million in Oxysure.

**RESPONSE:** Defendant does not deny this allegation but lacks information to verify its truth or falsity at this time.

13.     Alpha Capital had the right to convert each share of Series B Stock, at any time and from time to time, into Oxysure common stock at an initial Conversion Price of $0.55 subject to downward adjustment, as set forth in the Certificate of Designation originally governing the terms of the Series B Stock and the Amended Certificate of Designation filed in connection with Alpha Capital's 2014 purchase of additional Series B Stock. The initial Exercise Price of the Warrants was $1.20, subject to downward adjustment in accordance with the terms of the Warrants (Exhibits B and D, §2(b)).

**RESPONSE:** Defendant admits the last sentence of this allegation and otherwise denies this allegation as stated. The CoD and SPA speak for themselves.

14.     In the SPA, the parties agreed, among other things, that while Alpha Capital still owned Series B Stock or the Warrants:

i)      Oxysure would not enter into any Variable Rate Transactions, as defined and set forth in the SPA. In general, that provision prohibited Oxysure from issuing any

securities or debt instruments which were convertible into Oxysure common stock at a variable conversion price - i.e., a price which fluctuated with the then obtaining market price of Oxysure common stock; and

ii)    Oxysure would not issue any stock at a price less than the greater of the Series B Stock Conversion Price and the Exercise Price of the Warrants. Since December 2013, that price has been $1.20 per share; and

iii)    Alpha Capital, along with another investor, had the right to participate in any Subsequent Financing.

**RESPONSE:** Defendant admits the last sentence of this allegation and otherwise denies this allegation.

15.    Those provisions were very important to Alpha Capital in purchasing the Series B Stock and the Warrants. The issuance of other variable rate convertible securities, after Alpha Capital purchased the Series B Stock and the Warrants, places continuing substantial downward pressure on the price of the issuer's common stock, to Alpha Capital's detriment. Alpha Capital insisted upon the Variable Rate Transaction provision in order to insure that no such pressure would be exerted on Oxysure's common stock while Alpha Capital owned the Series B Stock and the Warrants, which were convertible into Oxysure common stock.

**RESPONSE:** Defendant denies this allegation.

16.    Similarly, Oxysure's agreement not to issue stock at less than the higher of the Series B Stock Conversion Price and the Warrant Exercise Price was designed to insure, as much as possible, that the Series B Stock and the Warrants would retain their value. The right to participate in future financings would allow Alpha Capital to benefit further from its initial investment in Oxysure. Without the foregoing provisions, Alpha Capital would not have

5

purchased the Series B Stock or the Warrants. Oxysure agreed to those provisions to induce Alpha Capital to invest over $1 million in Oxysure.

**RESPONSE:** Defendant denies this allegation.

17.     The SPA containing the parties' agreement relating to future Variable Rate Transactions and the floor price for any additional securities issuances was publicly filed twice: first, as Document 10 in Oxysure's Form 10K filed with the SEC on April 15, 2014 and, again, as item 10.26 in Oxysure's Form 10K filed with the SEC on March 31, 2015. Thus the limitation on Oxysure's ability to issue variable rate convertible securities and the price at which any securities could be issued after Alpha Capital purchased the Series B Stock and the Warrants in December 2013 was publicly available.

**RESPONSE:** Defendant denies this allegation.

18.     Any subsequent sophisticated purchasers of Oxysure's securities, in the course of performing their normal due diligence in reviewing the public filings of a company in which they were considering an investment, would clearly learn of the limitations regarding Oxysure's issuance of variable rate convertible securities and the price at which any securities could be issued. In any event, Oxysure had no right to sell any such securities.

**RESPONSE:** Defendant denies this allegation and otherwise lacks information to verify whether or what sophisticated investors hypothetically could or would know or learn.

19.     Upon information and belief, all of the Investor Defendants are sophisticated investors who reviewed Oxysure's public filings who knew about the SPA and the Certificate of Designation. Upon information and belief, upon review of those filings, the Investor Defendants knew of the limitations contained therein which were imposed on Oxysure's ability to issue new securities and Alpha Capital's rights to participate in any subsequent financing.

6

**RESPONSE:** Defendant denies this allegation.

20.     In violation of those limitations, Oxysure issued: i) Series C, D and E Convertible Preferred Stock (the "Series C Stock", the "Series D Stock" and the "Series E Stock" as the case may be) and convertible notes to Defendants Adar and Union LLC on or about June 30, 2015 and ii) variable rate convertible notes (together with the convertible notes issued to Adar and Union LLC, the "Convertible Notes") to Defendants JSJ, Group 10, Union LLC and Macallan in or about the first quarter of 2015.

**RESPONSE:** Defendant denies this allegation.

21.     Based upon Oxysure's public filings, Oxysure issued $385,000 shares of Series C Stock and $300,000 of Convertible Notes to Defendants Adar and Union LLC on June 30, 2015 for a total consideration of $1 million. On that date Oxysure also issued 1,050,000 shares of Series D Stock and 531,667 shares of Series E Stock to Adar and Union LLC in escrow pending the occurrence of certain events. Upon information and belief those events have not yet occurred so the sale of the Series D Stock and Series E Stock has not yet been completed. The convertible notes issued on June 30, 2015, upon information and belief, could also be converted into common shares.

**RESPONSE:** Defendant denies this allegation.

22.     The issuance of the Series C, D and E Stock and the convertible notes on June 30, 2015 violated the SPA because they were convertible into common shares at a price which varied with the market price of the common shares, the common shares could be acquired for a price of less than $1.20 per share, and Alpha Capital was not afforded an opportunity to purchase that stock or the convertible notes.

**RESPONSE:** Defendant denies this allegation.

23.    Oxysure disclosed in its Form 10Q for the quarter ended March 31, 2015, filed on May 18, 2015, that it had issued, during the first quarter of 2015, variable rate convertible notes. Defendants Union LLC, JSJ, Group 10 and Macallan, upon information and belief, purchased those convertible notes. The issuance of those convertible notes also violated the terms of the SPA because, upon information and belief, those notes are convertible into common stock at a price which varies with the market price of the common stock and enabled the holders to obtain stock at less than $1.20 per share. The issuance of those convertible notes also violated the SPA because Alpha Capital was not afforded the opportunity to purchase them.

**RESPONSE:** Defendant admits that it made disclosures in its Form 10Q for the quarter ended March 31, 2015 regarding the Series C, D, and E transactions. Defendant otherwise denies the allegations.

**<u>First Claim for Relief</u>**
**Breach of contract against Oxysure**
**Relief sought - preliminary and permanent injunction**

24.    Alpha Capital realleges paragraphs 1 through 23.

**RESPONSE:** Defendant denies this allegation.

25.    Alpha Capital purchased the 675 shares of Oxysure's Series B Stock and Warrants in or about December 2013. In or about December 2014, Alpha Capital purchased an additional 400 shares of the Series B Stock and received additional Warrants.

**RESPONSE:** Defendant does not deny this allegation.

26.    In connection with such purchases, Oxysure agreed, among other things, not to issue securities in Variable Rate Transactions, as defined in the agreements between the parties, not to issue securities for a price less than the greater of the Series B Stock Conversion Price or the Warrant Exercise Price and to afford Alpha Capital the opportunity to invest in any

subsequent financing.

**RESPONSE:** Defendant denies this allegation.

27.     In violation of those agreements, Oxysure issued Series C, D and E Convertible Preferred Stock (the "Series C Stock", the "Series D Stock" and the "Series E Stock", as the case may be) and convertible notes to Defendants Adar and Union LLC on June 30, 2015 and, during the first quarter of 2015, issued convertible notes to the other Investor Defendants.

**RESPONSE:** Defendant denies this allegation.

28.     Alpha Capital has no adequate remedy at law.

**RESPONSE:** Defendant denies this allegation.

29.     Alpha Capital is, therefore, entitled to an injunction, both preliminary and permanent, enjoining Oxysure from: i) honoring any conversion requests submitted by any holder of any Oxysure Series C, D or E Convertible Preferred Stock or any convertible note or other convertible security issued after December 26, 2013 and containing a variable conversion price; and ii) issuing or releasing from escrow any variable rate securities or securities which otherwise violate the terms of the SPA and the Certificate of Designation governing the Series B Stock; and iii) issuing any securities for less than the amount set forth in Section 4.13 of the SPA; and iv) entering into any Subsequent Financing in violation of Alpha Capital's right to participate therein in accordance with Section 4.17 of the SPA.

**RESPONSE:** Defendant denies this allegation.

## Second Claim for Relief
### Breach of contract against Oxysure
### Relief sought – damages

30.     Alpha Capital realleges paragraphs 1 though 27.

**RESPONSE:** Defendant denies this allegation.

31.     As a result of Oxysure's breach of contract, Alpha Capital is entitled to damages as determined at trial.

**RESPONSE:** Defendant denies this allegation.

## Third Claim for Relief
### Tortious interference with contract against the Investor Defendants
### Relief sought - damages

32.     Alpha Capital realleges paragraphs 1 through 23.

**RESPONSE:** Defendant denies this allegation.

33.     A valid contract existed between Alpha Capital and Oxysure regarding the terms and conditions of the Series B Stock.

**RESPONSE:** Defendant does not deny this allegation.

34.     Upon information and belief, the Investor Defendants are sophisticated investors who performed due diligence before purchasing their respective Oxysure preferred stock and convertible notes, which due diligence included review of Oxysure's public filings.

**RESPONSE:** Defendant denies this allegation.

35.     Upon information and belief, in the course of their due diligence, learned of the existence of the agreements between Alpha Capital and Oxysure and, therefore, knew about those contracts. Upon information and belief, even without performing due diligence, the Investor Defendants, as sophisticated investors, knew that a Securities Purchase Agreement and a Certificate of Designation existed with respect to the Series B Stock because those are the documents utilized in connection with any purchase of preferred stock and contain the terms and conditions applicable thereto.

**RESPONSE:** Defendant denies this allegation and otherwise lacks knowledge as to what

a hypothetical sophisticated investor could or would learn or know.

36.     Indeed, in connection with their own purchase of the Series C, D and E Stock from Oxysure, Adar and Union LLC entered into their own Securities Purchase Agreements and Certificates of Designation.

**RESPONSE:** Defendant admits this allegation.

36.     The Investor Defendants purchased the Series C, D and E Stock and the Convertible Notes from Oxysure. But for their purchase of those securities, Oxysure would not have sold them.

**RESPONSE:** Defendant lacks information necessary to understand this allegation or to effectively admit or deny it.

37.     The sale of the Series C, D and E Stock and the Convertible Notes to the Investor Defendants caused a breach of the agreements between Alpha Capital and Oxysure relating to the Series B Stock.

**RESPONSE:** Defendant denies this allegation.

38.     As a result, Alpha Capital suffered damages.

**RESPONSE:** Defendant denies this allegation.

**Fourth Claim for Relief**
**Tortious interference with contract against the Investor Defendants**
**Relief sought - equitable relief**

39.     Alpha Capital realleges paragraphs 1 through 23 and 33 through 37.

**RESPONSE:** Defendant denies this allegation.

40.     Alpha Capital has no adequate remedy at law.

**RESPONSE:** Defendant denies this allegation.

11

41.     As a result, Alpha Capital is entitled to an order prohibiting the Investor Defendants from converting or exercising any Oxysure convertible notes, convertible preferred stock or warrants, or obtaining any Series C, D or E Stock, in a manner which violates any agreements between Alpha Capital and Oxysure.

**RESPONSE:** Defendant denies this allegation.

Wherefore, Plaintiff Alpha Capital Anstalt demands judgment against Defendants Oxysure Systems, Inc., Adar Bays LLC, Union Capital LLC, JSJ Investments, LLC, Group 10 Holdings, LLC and Macallan Partners, LLC as follows:

i)     on the First Claim for Relief against Defendant Oxysure, for an injunction, both preliminary and permanent, enjoining Oxysure from: i) honoring any conversion requests submitted by any holder of any Oxysure Series C, D or E Convertible Preferred Stock or any convertible note or other convertible security issued after December 26, 2013 and containing a variable conversion price; and ii) issuing or releasing from escrow any variable rate securities or securities which otherwise violate the terms of the SPA and the Certificate of Designation governing the Series B Stock; and iii) issuing any securities for less than the amount set forth in Section 4.13 of the SPA; and iv) entering into any Subsequent Financing in violation of Alpha Capital's right to participate therein in accordance with Section 4.17 of the SPA; and

ii)     on the Second Claim for Relief against Defendant Oxysure Systems, Inc. for damages to be determined at trial; and

iii)     on the Third Claim for Relief against Defendants Adar Bays LLC, Union Capital LLC, JSJ Investments, LLC, Group 10 Holdings, LLC and Macallan Partners, LLC, for damages to be determined at trial; and

iv)     on the Fourth Claim for Relief against Defendants Adar Bays LLC, Union Capital

LLC, JSJ Investments, LLC, Group 10 Holdings, LLC and Macallan Partners, LLC, for an order prohibiting them from converting or exercising any Oxysure convertible notes, convertible preferred stock or warrants, or obtaining any Series C, D or E Stock, in a manner which violates any agreements between Alpha Capital and Oxysure.

v)      on all Claims for Relief, for interest, attorneys fees and the costs and disbursements of this action; and

vi)      for such other, further and different relief as the Court deems just and proper.

**RESPONSE:** Defendant denies this allegation.

Respectfully submitted this 9th day of September, 2015

**STECKLER LLP**

*/s Mazin A. Sbaiti*
**Mazin A. Sbaiti, Esq.**
State Bar No. 4339057
12720 Hillcrest Rd.
Suite 1045
Dallas, Texas 75230
T: (972) 387-4040
F: (972) 387-4041
Mazin@Stecklerlaw.com
**COUNSEL FOR THE PLAINTIFF**

13

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of September, 2015, a true and correct copy of the above and foregoing instrument was served via electronic service and/or First Class mail, upon the following counsel of record in accordance with the Texas Rules of Civil Procedure:

Kenneth Zitter
260 Madison Avenue #18
New York, NY 10016
Ph:  212-532-8000
Fax: 212-679-8990


_/s Mazin A. Sbaiti_
Mazin A. Sbaiti, Esq.