

Mazin A. Sbaiti
mazin@stecklerlaw.com

October 9, 2015

Judge Gabriel Gorenstein
Courtroom 6B
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re**: *REQUEST FOR INFORMAL CONFERENCE WITH THE COURT REGARDING PROTECTIVE ORDER*

Dear Judge Gorenstein:

We write on behalf of Defendant Oxysure Systems, Inc. to request an informal conference with the Court pursuant to Local Rule 37.2 and this Court's Chamber Rules for Discovery Motions.

Mazin Sbaiti and Ken Zitter met and conferred via several email exchanges and then via telephone on October 8, 2015, at approximately 2:45 pm central time for fifteen minutes, to discuss resolution of these matters. The parties agreed that they had reached an impasse and would need to submit these issues to the Court.

**Oxysure Seeks a Protective Order Limiting Discovery and**
**Who Can View Certain Non-Public Documents**

Currently pending are outstanding requests for documents sent to Oxysure and sent to non-parties to the litigation.[1] Specifically concerning to Oxysure and animating this letter are (1) requests for communications that seek non-public information that Alpha is not privy to and that are not otherwise public and are not otherwise relevant, and (2) requests for all transaction documents.

(1)  **The communications are not relevant nor likely to lead to discoverable information**.

*First*, Any communications regarding the transactions with the third parties are are subject to two non-disclosure agreements entered into between Oxysure and Anubis Capital, who located

---

[1] The non-parties were, at one point, named defendants. As part of their stipulations of dismissal, those parties and Alpha agreed that their document request should be treated as Requests for Production, instead of Rule 45 subpoenas.

those third parties and arranged the transactions. The third parties agreed to be bound by these agreements as part of the transactions. Thus, there are multitudes of communications that Oxysure believed would not be discoverable or disclosed to any third party. Moreover, there is information about Oxysure that, much like a trade secret, should be kept secret that might be revealed in such communications. Oxysure's confidentiality agreements should not be circumvented just because Alpha has decided, rather speciously, that every single communication regarding the negotiation of those transactions is somehow relevant to whether the final transaction violated its stock purchase agreement. That makes no sense at all.

*Second*, the communications in question are about now-completed transactions, the final terms of which have been made public already. Therefore, either the information is cumulative of publicly disclosed information, or it is irrelevant to this case because terms or considerations that did not end up in the final transaction documents **by definition cannot be grounds for Alpha to claim a breach of contract**.

*Third*, the documents sought are overly broad and overly burdensome to produce and should not have to be produced by Oxysure or the third parties, given the lack of relevance or other demonstrated probative value.

(2)     **The Transaction Documents are Already Public**

The transaction documents have already been made public in substantial part. Any non-public portions should likewise remain non-public as they are ether non-material (such as the convertible notes) and any other related documents.

Accordingly, Oxysure seeks an Order from the Court limiting production of irrelevant non-public documents requested by Alpha, and for any documents agreed to or ordered to be produced to be designated as "OUTSIDE ATTORNEYS EYES ONLY," that restricts viewing such documents to outside litigation counsel, requiring any person viewing the documents to attest that they in no way assist Alpha in deciding trading strategy, and restricting the use of such documents or the information therein to prosecuting this litigation. And while the financial information ostensibly sought by Alpha—the number of shares, value of the instruments, etc.—has already been publicly disclosed a variety of Oxysure's public disclosures, the balance has been kept completely private. Thus, to the extent such documents are relevant and are produced, they should be restricted a set forth above.

Plaintiff has taken the position that the information is relevant and discoverable and therefore should be produced. While there is no relevance to the communications given the information already in the public domain, Oxysure is willing to concede that the notes, which were not made public, may nonetheless be discoverable. Still, Oxysure's position has not been that these specific documents should not be produced to the extent they are discoverable, non-privileged and otherwise not overly burdensome to uncover, but simply that any such production allow the documents to remain confidential.

Oxysure welcomes the opportunity to discuss this further with the Court during the informal session.

**Oxysure Seeks Deposition of Alpha's 30(b)(6) Witness**

On or around September 10, 2015, Oxysure requested dates for Alpha's 30(b)(6) witness. Alpha's counsel informed Oxysure that Alpha's counsel and witness could not make it to an October 13, 2015 deposition. Accordingly, the deposition was noticed for October 20, 2015, with the accommodation that the date could be moved to any day that week other than the Monday.

Alpha has now taken the position that it will not produce a witness except and until all of Oxysure's documents requested by Alpha have been produced. But this moving target is absolutely baseless. Alpha can use this as a way to move the deposition back indefinitely by simply issuing new Requests for Production—which it has already done by issuing a second set of requests for production even more invasive and exhaustive than the first set.

Moreover, we are at a loss as to why Oxysure's documents should serve as any kind of predicate to a deposition of Alpha. This is a simple breach of contract action seeking damages. As such, Oxysure's internal documents and non-public information should are irrelevant to Alpha's knowledge of the facts underlying its own Complaint and TRO petition. We are entitled to know those facts and we are entitled to get at them as soon as possible. Plaintiff cannot identify an iota of prejudice that it will suffer by having to answer questions about the facts it knows about—or knew about—the day it filed its TRO petition and Complaint. Oxysure is not interested in testimony colored by the advantage of having read Oxysure's internal documents-to which Alpha has dubious entitlement.

The desire to depose Alpha early on serves a second, important function: it will help guide Oxysure's discovery. Depositions reveal much about what was material and not material information to the transaction. *See National Life Ins. Co. v. Hartford Accident and Indemnity Co.*, 615 F.2d 595, 600 n.5 (3d Cir. 1980) (compelling depositions instead of requiring other forms of discovery proceed first because "there are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses."). We should not be required to wait until Alpha feels like it has enough documents from Oxysure to get these questions answered.

Moreover, the law agrees with us. Rule 26 expressly states that "methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery." See Fed. R. Civ. P. 26(d); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2005 U.S. Dist. LEXIS 4300, *9 (S.D.N.Y. Mar. 17, 2005) ("there is no priority among the parties with regard to requests for document production").

Accordingly, Defendant Oxysure respectfully request an informal conference to visit with the Court regarding these issues.

October 9, 2015
Page 4

                    Sincerely,

                    Mazin A. Sbaiti, Esq.
                    ***Counsel for Oxysure Systems, Inc.***

Cc:    Ken Zitter (via facsimile)