United States District Court
Southern District of New York
---------------------------------------------------------x

Alpha Capital Anstalt,

                             Plaintiff,                  15-CV-5443 (VM)(GWG)

        v.

                                                    <u>Amended Complaint</u>

Oxysure Systems, Inc.,

                             Defendant.

---------------------------------------------------------x

Plaintiff Alpha Capital Anstalt, by its attorneys, for its Amended Complaint herein, respectfully alleges:

<u>the parties</u>

1. Plaintiff Alpha Capital Anstalt ("Alpha Capital") is a Liechtenstein entity with its principal place of business in Vaduz, Liechtenstein.

2. Defendant Oxysure Systems, Inc. ("Oxysure") is a Delaware corporation with its principal place of business in Frisco, Texas.

jurisdiction and venue

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of a state and citizens of a foreign state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated and it is the exclusive district in which Alpha Capital and Oxysure agreed that the claims hereafter set forth can be brought.

facts common to all claims

5. On or about December 26, 2013, Alpha Capital purchased 675 shares of Oxysure Series B Convertible Preferred Stock (the "Series B Stock") for $675,000. The Preferred Stock was convertible into shares of Oxysure common stock. Alpha Capital also received, in connection with the Series B Stock, warrants (the "2013 Warrants") to purchase 613,636 additional shares of Oxysure common stock.

6. On or about December 29, 2014, Alpha Capital purchased an additional 400 shares of the Series B Stock for $400,000. Alpha Capital also received, in connection with the additional

2

Series B Stock, warrants to purchase 727,273 additional shares of Oxysure common stock (the "2014 Warrants"). The 2013 Warrants and 2014 Warrants are together referred to as the "Warrants". Alpha Capital purchased the Series B Stock and Warrants pursuant to the terms of the 2013 and 2014 Securities Purchase Agreements, whose terms were identical in all material respects and will together be referred to as the "SPA". The Series B Stock is governed by the Certificate of Designation filed by Oxysure with the Delaware Secretary of State on or about December 20, 2013 and the Amended Certificate of Designation filed by Oxysure with the Delaware Secretary of State on or about December 24, 2014. The terms of the Certificate of Designation and the Amended Certificate of Designation are identical in all material respects and will together be referred to as the "Certificate of Designation".

7. Alpha Capital currently holds 575 shares of Series B Stock and Warrants to purchase 1,340,909 shares of Oxysure common stock. Alpha Capital has invested over $1 million in Oxysure.

8. Alpha Capital had the right to convert each share of Series B Stock, at any time and from time to time, into Oxysure common stock at an initial Conversion Price of $0.55 subject to downward adjustment, as set forth in the Certificate of Designation originally governing the terms of the Series B Stock and the Amended Certificate of Designation filed in connection with Alpha Capital's 2014 purchase of additional Series B Stock. The initial Exercise Price of the Warrants was $1.20, subject to downward adjustment in accordance with the terms of the Warrants (Exhibits B and D, §2(b)).

3

9. In the SPA, the parties agreed, among other things, that while Alpha Capital still owned Series B Stock or the Warrants:

i) Oxysure would not enter into any Variable Rate Transactions, as defined and set forth in the SPA. In general, that provision prohibited Oxysure from issuing any securities or debt instruments which were convertible into Oxysure common stock at a variable conversion price - i.e., a price which fluctuated with the then obtaining market price of Oxysure common stock; and

ii) Oxysure would not issue any stock at a price less than the greater of the Series B Stock Conversion Price and the Exercise Price of the Warrants. Since December 2013, that price has been $1.20 per share; and

iii) Alpha Capital, along with another investor, had the right to participate in any Subsequent Financing.

10. In addition, the Certificate of Designation setting forth the terms and conditions of the Series B Stock provided that so long as 15% of the originally issued Series B Stock remained outstanding:

i) Oxysure would not incur any indebtedness over $200,000; and

ii) Oxysure would not issue any securities which would be *pari passu* or senior to the Series B Stock in terms of rights upon liquidation or dividends.

11. All those provisions were very important to Alpha Capital in purchasing the Series B Stock and the Warrants. The issuance of other variable rate convertible securities, after Alpha

4

Capital purchased the Series B Stock and the Warrants, places continuing substantial downward pressure on the price of the issuer's common stock, to Alpha Capital's detriment. Alpha Capital insisted upon the Variable Rate Transaction provision in order to insure that no such pressure would be exerted on Oxysure's common stock while Alpha Capital owned the Series B Stock and the Warrants, which were convertible into Oxysure common stock.

12. Similarly, Oxysure's agreement not to issue stock at less than the higher of the Series B Stock Conversion Price and the Warrant Exercise Price was designed to insure, as much as possible, that the Series B Stock and the Warrants would retain their value. The right to participate in future financings would allow Alpha Capital to benefit further from its initial investment in Oxysure and help protect Alpha Capital from dilution of its position in Oxysure.

13. Oxysure's agreement not to incur any indebtedness and not to issue any securities which were *pari passu* or senior to the Series B Stock was also designed to insure the value of the Series B Stock. Without the foregoing provisions, Alpha Capital would not have purchased the Series B Stock or the Warrants. Oxysure agreed to those provisions to induce Alpha Capital to invest over $1 million in Oxysure.

14. The SPA and the Certificate of Designation governing the Series B Stock, containing the parties' agreement relating to future Variable Rate Transactions, the floor price for any additional securities issuances, the limitations on the issuance of debt and of *pari passu* or senior securities were publicly filed twice: first, as Documents 9 and 10 in Oxysure's Form 10K filed

with the SEC on April 15, 2014 and, again, as Documents 4 and 5 in Oxysure's Form 10K filed with the SEC on March 31, 2015. Thus the limitation on Oxysure's ability to issue variable rate convertible securities or *pari passu* securities, the price at which any securities could be issued after Alpha Capital purchased the Series B Stock and the Warrants in December 2013 and the limitations on incurring debt were all publicly available.

15. In violation of those limitations, Oxysure issued: i) Series C, D and E Convertible Preferred Stock (the "Series C Stock", the "Series D Stock" and the "Series E Stock" as the case may be) and convertible notes to Adar Bays LLC ("Adar") and Union Capital LLC ("Union LLC") on or about June 30, 2015; and ii) variable rate convertible notes (together with the convertible notes issued to Adar and Union LLC, the "Convertible Notes") to JSJ Investments, LLC ("JSJ"), Group 10 Holdings, LLC ("Group 10"), Union LLC and Macallan Partners, LLC ("Macallan") in or about the first quarter of 2015; iii) issued stock below the price of $1.20; iv) incurred indebtedness in excess of $200,000; v) issued *parri passu* securities, and vi) failed to allow Alpha Capital to participate in Subsequent Financings in 2014 and 2015 in accordance with the terms of their agreement.

16. Based upon Oxysure's public filings, Oxysure issued $385,000 shares of Series C Stock and $300,000 of Convertible Notes to Adar and Union LLC on June 30, 2015 for a total consideration of $1 million. On that date Oxysure also issued 1,050,000 shares of Series D Stock and 531,667 shares of Series E Stock to Adar and Union LLC in escrow pending the occurrence of certain events. Upon information and belief those events have not yet occurred so the sale of

6

the Series D Stock and Series E Stock has not yet been completed. The convertible notes issued on June 30, 2015, upon information and belief, could also be converted into common shares.

17. The issuance of the Series C, D and E Stock and the convertible notes on June 30, 2015 violated the SPA because they were convertible into common shares at a price which varied with the market price of the common shares, they were *parri passu* with the Series B Stock, the common shares could be acquired for a price of less than $1.20 per share, Alpha Capital was not afforded an opportunity, in accordance with the terms of the agreements between Oxysure and Alpha Capital, to purchase that stock or the convertible notes, and Oxysure incurred over $200,000 in indebtedness.

18. Oxysure disclosed in its Form 10Q for the quarter ended March 31, 2015, filed on May 18, 2015, that it had issued, during the first quarter of 2015, variable rate convertible notes. Union LLC, JSJ, Group 10 and Macallan, upon information and belief, purchased those convertible notes. The issuance of those convertible notes also violated the terms of the SPA because, upon information and belief, those notes are convertible into common stock at a price which varies with the market price of the common stock and enabled the holders to obtain stock at less than $1.20 per share. The issuance of those convertible notes also violated the SPA because Alpha Capital was not afforded the opportunity to purchase them in accordance with the terms of the agreements between Alpha Capital and Oxysure and Oxysure incurred more than $200,000 in indebtedness.

7

## First Claim for Relief
### breach of contract
### relief sought - preliminary and permanent injunction

19. Alpha Capital realleges paragraphs 1 through 18.

20. Alpha Capital purchased the 675 shares of Oxysure's Series B Stock and Warrants in or about December 2013. In or about December 2014, Alpha Capital purchased an additional 400 shares of the Series B Stock and received additional Warrants.

21. In connection with such purchases, Oxysure agreed, among other things, not to issue securities in Variable Rate Transactions, as defined in the agreements between the parties, not to issue securities for a price less than the greater of the Series B Stock Conversion Price or the Warrant Exercise Price, to afford Alpha Capital the opportunity to invest in any Subsequent Financing, not to incur indebtedness in excess of $200,000, and not to issue securities *pari passu* with the Series B Stock in terms of dividend distributions and liquidation preferences.

22. In violation of those limitations, Oxysure issued: i) Series C, D and E Convertible Preferred Stock and Convertible Notes to Adar and Union Capital LLC on or about June 30, 2015; and ii) Convertible Notes to JSJ, Group 10, Union LLC and Macallan in or about the first quarter of 2015; iii) issued stock below the price of $1.20; iv) incurred indebtedness in excess of $200,000; v) issued *parri passu* securities, and vi) failed to allow Alpha Capital to participate in Subsequent Financings in 2014 and 2015 in accordance with the terms of their agreement.

8

23. Alpha Capital has no adequate remedy at law.

24. Alpha Capital is, therefore, entitled to an injunction, both preliminary and permanent, enjoining Oxysure from: i) honoring any conversion requests submitted by any holder of any Oxysure Series C, D or E Convertible Preferred Stock or any convertible note or other convertible security issued after December 26, 2013 and containing a variable conversion price; ii) issuing or releasing from escrow any variable rate securities or securities which otherwise violate the terms of the SPA and the Certificate of Designation governing the Series B Stock; iii) issuing any securities for less than the amount set forth in Section 4.13 of the SPA; iv) entering into any Subsequent Financing in violation of Alpha Capital's right to participate therein in accordance with Section 4.17 of the SPA; v) incurring any indebtedness in violation of its agreements with Alpha Capital; and vi) paying any dividends to the Series C, D and E Preferred Stock or paying, in liquidation, any amounts to the holders of said Stock before Alpha Capital has been paid in full all amounts due to it upon liquidation.

Second Claim for Relief
breach of contract
relief sought - damages

25. Alpha Capital realleges paragraphs 1 though 22.

26. As a result of Oxysure's breach of contract, Alpha Capital is entitled to damages as determined at trial.

### Third Claim for Relief
attorneys fees

27. Alpha Capital realleges paragraphs 1 through 22.

28. In accordance with §11(d) of the Certificate of Designation and §5.9 of the SPA, Alpha Capital is entitled to reimbursement of its attorneys fees and other costs and expenses incurred in the prosecution of this action, such amounts to be determined after trial.

Wherefore, Plaintiff Alpha Capital Anstalt demands judgment against Defendant Oxysure Systems, Inc. as follows:

i) on the First Claim for Relief, for an injunction, both preliminary and permanent, enjoining Oxysure from: i) honoring any conversion requests submitted by any holder of any Oxysure Series C, D or E Convertible Preferred Stock or any convertible note or other convertible security issued after December 26, 2013 and containing a variable conversion price; and ii) issuing or releasing from escrow any variable rate securities or securities which otherwise violate the terms of the SPA and the Certificate of Designation governing the Series B Stock; and iii) issuing any securities for less than the amount set forth in Section 4.13 of the SPA; and iv) entering into any Subsequent Financing in violation of Alpha Capital's right to participate therein in accordance with Section 4.17 of the SPA; and v) incurring any indebtedness in violation of its agreements with Alpha Capital; and vi) paying any dividends to the Series C, D and E Preferred

10

Stock or paying, in liquidation, any amounts to the holders of said Stock before Alpha Capital has been paid in full all amounts due to it upon liquidation; and.

ii) on the Second Claim for Relief, for damages to be determined at trial; and

iii) on the Third Claim for Relief, for reimbursement of attorneys' fees and other costs and expenses incurred by Alpha Capital in the prosecution of this action; and

iii) on all Claims for Relief, for interest and the costs and disbursements of this action; and

iv) for such other, further and different relief as the Court deems just and proper.

Law Offices of Kenneth A. Zitter

By_____
Kenneth A. Zitter
Attorneys for Plaintiff Alpha Capital Anstalt
260 Madison Avenue, 18th Floor
New York, New York 10016
KAZ-3195