UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALPHA CAPITAL ANSTALT, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | §    15-CIV-5443 (VM) (GWG) |
| | § |
| OXYSURE SYSTEMS, INC., | § |
| | § |
| *Defendant*. | § |

### DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Defendant Oxysure Systems, Inc., respectfully moves this Court for an Order of Protection over documents designated "Confidential" and "Attorneys Eyes Only," and would respectfully show the Court:

### I.

### SUMMARY OF DEFENDANT'S POSITION

Defendant Oxysure Systems, Inc. is attempted to balance the need for discovery with its need to maintain confidentiality. Defendant Oxysure has produced over 7000 pages of documents, a majority of which carries no protective designation. This rifle-shot motion requests that certain designated documents be protected to ensure Oxysure's privacy, and is justified by the facts that:

*First*, the documents are of dubious relevance. The core of this lawsuit is that the *final* agreements between Oxysure and certain third parties constitute violations of the Series B transactions that Plaintiff entered into. Thus, documents that are merely collateral to these transactions and which do not vary the terms thereof——discussions, unsigned drafts, disputes, posturing—are patently irrelevant.

*Second*, the documents, while irrelevant to this case, do implicate the privacy interests of Oxysure and third parties. Notably, there is a confidentiality agreement between Oxysure and the representative of these third parties. They reveal options and strategies that, if public, would put

Oxysure at a competitive disadvantage. Moreover, courts in this and other circuits have agreed to restrict documents to "Attorneys Eyes Only" where, as here, they contain sensitive information such as negotiations or dealings with third parties, or were protected by confidentiality agreements.

*Third*, the Attorneys Eyes Only designation will not be prejudicial to Plaintiff. Plaintiff's counsel is eminently qualified to make use of the documents, and Plaintiff already requested, and received, permission to allow such documents to be shown to Mr. Grushko (Alpha Capital's de facto in house lawyer), on the grounds that his expertise was necessary for the same purpose. Plaintiff has identified no reason that Alpha Capital's principals would need to see the documents given the addition of Mr. Grushko's experience, knowledge, and expertise to the mix.

*Finally*, in the event that this Court decides not to allow the Attorneys Eyes Only designation, then Defendant respectfully requests that documents designated as Attorneys Eyes Only be treated as Confidential, and not subject to public filing, outside disclosure, or use outside of this litigation.

## II.

### DISCUSSION AND ANALYSIS

Plaintiff has sought all communications between Defendant *and third parties* to this litigation. All Defendant asks for in this motion is that access to those communications and conversations be restricted to outside litigation counsel. The Supreme Court has observed that liberality of the discovery rules provides significant opportunity for abuse by the party seeking discovery. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). That abuse "may seriously implicate privacy interests of litigants and third parties." *Id.* at 35.

Rule 26 provides that a court may enter a protective order to protect a party from "annoyance, embarrassment, oppression or undue burden or expense[.]" *See* Fed. R. Civ. P. 26(c)(1). The rule stipulates that such an order may:

"forbid[] the disclosure or discovery" (*id.* at R. 26(c)(1)(A));

"limit[] the scope of disclosure or discovery to certain matters" (*id.* at R. 26(a)(c)(1)(D));

> "designat[e] the persons who may be present while the discovery is conducted (*id.* at R. 26(c)(1)(E)); and

> "require[e] that…confidential research, development or commercial information not be revealed or be revealed only in a specified way" (*id.* at R. 26(c)(1)(G)).[1]

Thus, Rule 26 expressly envisions and authorizes the relief sought in this motion.

### A. The Requested "Attorneys Eyes Only" Designation is Commonly Entered in Cases Such as This One to Protect Confidential Commercial Information

The most widely cited case in this Court for determining whether a protective order should issue to shield "confidential commercial information" is *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F.Supp. 866 (E.D. Pa. 1981). The *Zenith* court found that "confidential commercial information" includes a wide variety of things, and is not limited to just trade secrets or formulas. *Id.* at 890. Thus, the court observed that Rule 26 protects disclosure of agreements with strategic third parties, financial records, oral agreements with customers, writings on business strategy, customers and supplier lists, profits and income data, terms of contracts, financial statements, prices and volumes of products, the nature of disputes with dissatisfied customers, among other things. *See id* at 890-91 and at n.42 (cases cited therein).

Indeed, as this very Court observed, protective orders limiting access to highly confidential information to counsel and experts "are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information." *John Wiley & Sons Inc. et al v. Book Dog Books LLC et al.*, cause number 13-cv-816 (WHP) (GWG) (Marc 26, 2014) (Gorenstein, M.J.) (quoting *Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*, 1999 U.S. Dist. LEXIS 124, 1999 WL 13257, at *3 (S.D.N.Y. Jan 13, 1999) (citing *Quotron Systems, Inc., v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992)) (limiting disclosure to counsel and experts). Indeed, in *John Wiley* and in *Vesta Corset*, this Court recognized that giving

---

[1] Rule 26(c)(1)(G) contains the same language as Rule 26(c)(7) which is cited in pre-2005 caselaw.

access to sensitive documents to employees of the opponent would open the documents up to irremediable abuse and commercial espionage. *Id.*

Other courts have likewise not hesitated to restrict to whom confidential documents can be disclosed as a means of balance the need for discovery with the need to protect sensitive business information. *See, e.g., Sullivan Marketing, Inc., v. Valassis Communications, Inc*., 1994 U.S. Dist. LEXIS 5824, 1994 WL 177795, at *2 (S.D.N.Y. 1994) (limiting disclosure of documents relating to pricing and market strategies to outside counsel and consultants retained for litigation and denying access to party and its in-house counsel because in-house counsel was sufficiently involved in competitive decision-making); *Culligan v. Yamaha Motor Corp*., 110 F.R.D. 122, 126 (S.D.N.Y. 1986) (limiting disclosure to plaintiff's counsel); *Stillman v. Vassileff*, 100 F.R.D. 467, 468 (S.D.N.Y. 1984) (limiting disclosure to plaintiff's counsel); *see also ABC Rug & Carpet Cleaning Serv. v. ABC Rug Cleaners, Inc*., 2009 U.S. Dist. LEXIS 2314, *8-9 (S.D.N.Y., Jan. 14, 2009) ("Ample precedent exists for limiting disclosure of . . . proprietary information to attorneys and experts, particularly when there is some risk that a party might use the information . . . to gain a competitive advantage over the producing party.") (quoting *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc*., 1998 WL 186728, at *2 (E.D.La., 1998) (citing cases)).

### B. The Documents Are Still Irrelevant

Now that Plaintiff is in possession of the requested Transaction Documents for the challenged transactions, there is no relevance to the (i) negotiations, (ii) unconsummated drafts, (iii) disputes, or other matters that do not vary the terms of the third party agreements.

Weighing against Plaintiffs' opposition is the fact that the documents are of dubious relevance. Plaintiff has alleged that certain transactions violate its restrictive covenant in the Series B - Stock Purchase Agreement (the "Series B SPA"). Either the subsequent transactions did, or did not, violate the Series B SPA. No amount of background chatter, unconsummated negotiated points or drafts, disputes, or other information about the negotiations or performance of those Agreement will change that fact. What Plaintiff proposes to do is to litigate the third party transactions in the belly of this litigation. This Court should reject that notion as overly vexatious.

New York does not recognize a cause of action for "intentional" breach of contract other than just, simple breach of contract. *See Piscopo v Hennessee Group, LLC,* 2009 N.Y. Misc. LEXIS 5320, *16 (N.Y. Sup. Ct., July 17, 2009). New York also does not recognize a cause of action for tortious interference when the defendant is a party to the subject contract. *See Mihalakis v. Cabrini Medical Center,* 151 A.D.2d 345, 347 (N.Y. App. Div. [1st Dep't] 1989).

Therefore, because the documents do not vary the terms of the transactions, they are irrelevant because they do not prove any element of any of the causes of action raised by the Plaintiff; and they do not shed light on additional evidence that would be relevant.

### C. **Oxysure Took Substantial Measures to Protect Confidentiality**

Oxysure's claim of confidentiality and privacy is not the product of tactical fabrication. The communications and negotiations with the third parties were the subject of a confidentiality agreement between Oxysure and the agent for those third parties, Anubis Capital.[2] This has never been disputed. Therefore, the confidentiality interests of Oxysure, as well as of those of the third parties, are implicated as well.

This Court's sister court held in *Sicurelli v. Jeneric/Pentron, Inc.*, 2005 U.S. Dist. LEXIS 42227 (E.D.N.Y. June 16, 2005) that the existence of a confidentiality agreement between a party and third party, in and of itself "demonstrated of good cause for the issuance of a protective order" preventing disclosure of the communications between them. *Id.* at *17-18 (citing *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56-57 (D. Conn. 2004) (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981)). There, much like in this case, the Court ordered restricted access to certain research and research reports, but did not require disclosure of communications precisely because they were marginally relevant but protectable interests. *Id.*

Here, the existence of the agreement with Anubis Capital, which bound the third parties is, in and of itself, sufficient grounds to restrict disclosure at all, and thus should aptly serve as a

---

[2] *See* Decl. of Julian Ross, December 4, 2015.

grounds for permitting disclosure only to outside litigation counsel. *See Grand River Enters. Six Nations v. King,* 2009 U.S. Dist. LEXIS 11504, *33 (S.D.N.Y. Jan. 30, 2009) (affirming magistrate order restricting access to sensitive information because "RJR has a strong interest in protecting highly sensitive materials while Plaintiff has a weak interest in accessing evidence that is only tenuously related to one of its of claims").

### D. Oxysure Will Suffer Competitive Injury

As provided in the Affidavit of Julian Ross, Oxysure's CEO, disclosure of the documents would work irreparable harm to Oxysure and put it at a competitive disadvantage.

#### 1. Documents Constituting Non-Public Third Party Agreements and Related Transaction Documents Should be Confidential

Oxysure has designated certain non-public documents constituting third party agreements "Confidential." This merely restricts them from being publicly disclosed, publicly filed in this Court or anywhere else, or used in any other proceeding or for any purpose other than this litigation.

Plaintiff has not raised any material concern as to this designation.

Whatever they might identify pales in comparison to the injury Oxysure will suffer if portions of the Notes and other non-publicly disclosed were selectively or otherwise disclosed, or were to be allowed to be used by the Plaintiff in its trading or strategic stance on Oxysure's stock. For one thing, allowing the Plaintiff to decide when and what to use or to publicly disclose whether through publication or in a public filing would run afoul of Regulation Fair Disclosure, or Reg. FD. *See* 17 C.FR. 243.100 *et seq*. Reg FD is designed to stop the partial disclosure of information to only selected persons. *SEC v. Mayhew,* 121 F.3d 44, 49-50 (2d Cir. 1997). Oxysure has made certain disclosures sufficient to inform the public about the transactions at issue; disclosure of the rest of the documents that were not previously disclosed would put Oxysure in the position of having to completely revise its disclosures to meet Reg FD or run the risk of being found to have

violated it.[3] That risk and cost is untenable and unnecessary given the ability of this Court to issue this requested protective order.  *See Boyd Group (U.S.), Inc. v. D'Orazio*, 2015 U.S. Dist. LEXIS 122984, *5 (N.D. Ill. Sept. 15, 2015) (affirming use of confidentiality designation to limit public disclosure and use of documents to only the litigation).

### 2. Documents Constituting Contract Negotiations with Third Parties and Drafts Should be "Attorneys Eyes Only"

Oxysure seeks to protect contract negotiations and drafts of contracts that contain terms that did not make it into final provisions of contracts. These discussions reveal much about Oxysure's financial strategies, different maneuvering and willingness to make transactions and deals with those parties.[4]

Courts have found that contracts and negotiations with strategic partners, such as investors here, are indeed subject to protection. "The terms of an agreement or a contract have often been the subject matter of a protective order designed to ensure that this type of confidential business information is not revealed to the public. The rationale applied by the Courts in granting this type of protective order is that if this information were disclosed, the moving party would suffer great competitive disadvantage and irreparable harm." *Essex Wire Corp. v. Eastern Electric Sales Co.*, 48 F.R.D. 308, 310 (E.D. Pa. 1969). *See also, Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 590 (S.D.N.Y. 1973) (granting protective order to protect "oral agreements with customers" and to protect Defendants' "own competitive stance").

Moreover, Courts have found that documents that peer into the financial inner workings of businesses are likewise protectable under an "Attorneys Eyes Only" designation. *See Layne Christensen Co. v. Purolite Co.,* 271 F.R.D. 240, 248 (D. Kan. 2010) (allowing designation of non-public "contracts," "strategic business information" and "financial information" to be designated "Attorneys Eyes Only"); *see also United States ex rel. Daugherty v. Bostwick Labs.*, 2013 U.S.

---

[3] See id.
[4] See id.

Dist. LEXIS 89683, *27-29 (S.D. Ohio June 24, 2013) (allowing financial information to be designated "Attorneys Eyes Only").

### 3. Documents Reflecting Communications and/or Disputes with the Third Parties Who Invested in Oxysure Should be Designated as Attorneys Eyes Only

Oxysure seeks to limit access to its communications with the third party investors, including any disputes (e.g., ones that did not lead to litigation) between or among them.

There can be no dispute that communications between Oxysure and a third party, particularly concerning the third party's relationship to Oxysure and disputes they might have, implicate both sides' rights to privacy. *Accord Umbach v. Carrington Inv. Partners (US), LP*, 2009 U.S. Dist. LEXIS 95046, *17 (D. Conn. Oct. 9, 2009) (granting protective order and limiting identity and communications with investors to "Attorneys Eyes Only").

Additionally, Courts have protected communications regarding disputes with third parties to Attorneys Eyes Only on the belief that such disputes, the nature thereof, and the handling of them are at the core of "sensitive business information." *See, e,g., Zenith Radio*, 529 F. Supp. at 890 (noting breadth of "Attorneys Eyes Only" protection for sensitive business communications including those with dissatisfied customers) (citing *American Oil Co. v. Pennsylvania Petroleum Products Co.,* 23 F.R.D. 680, 684-85 (D.R.I. 1959) (limiting disclosure of communications and substance thereof with dissatisfied customers to Attorneys Eyes Only)).

Accordingly, given the irrelevance of such documents, their sensitive nature, and the parties' reasonable expectations of privacy under the confidentiality agreement, these documents should be maintained as Attorneys Eyes Only.

### E. Plaintiff Cannot Demonstrate Prejudice That Would Outweigh the Injury to Oxysure

Furthermore, in *Vesta Corset,* on which this Court relied in *John Wiley & Sons Inc. et al v. Book Dog Books LLC et al.*, cause number 13-cv-816, Judge Pauley observed that the party resisting the protective order "had not demonstrated a need for its employees to access the confidential information sufficient to outweigh the [privacy] concerns." *See Vesta Corset*, 1999 U.S. Dist. LEXIS 124, at *9 (citing *Quotron*, 141 F.R.D. at 39-40). Here, Plaintiff cannot credibly

argue that it would be prejudiced by such a restriction. Mr. Zitter is a capable attorney who has represented his clients in dozens of similar matters. Surely he has the demonstrated intellect, knowledge, experience and wherewithal to review the documents and decide how to use them and what to do with them in this litigation. There is no evidence that Mr. Zitter's clients—who live outside the United States[5]—have any superior abilities to litigate this matter. Moreover, the whole purpose of this Court permitting Plaintiff's *de facto* in-house counsel, Mr. Grushko (over Defendant's objections, we might add), was to allow for his expertise to assist Mr. Zitter. Plaintiff cannot identify what additional, non-marginal benefit could be added by expanding the universe of persons permitted to see the documents.

### F. In the Alternative, this Court Should Maintain All Documents as "Confidential" and Restrict Access to a Single Plaintiff Designee

If this Court determines that, despite the confidentiality agreements and privacy concerns, all documents should be accessible by Plaintiff's employees or representatives, then Oxysure respectfully requests that to control dissemination, this Court should limit access to a single named Plaintiff designee. While Plaintiff has already designated Mr. Grushko as an expert and he already has documents, there is nothing to be gained by allowing access to all of Plaintiff's employees, none of whom live in the United States. Thus, a single designee would at least permit Oxysure to enforce the Court's Confidentiality designation.

Respectfully submitted this 4th day of December, 2015.

STECKLER LLP

*/s Mazin A. Sbaiti*
**Mazin A. Sbaiti, Esq.**
State Bar No. 4339057
12720 Hillcrest Rd.
Suite 1045
Dallas, Texas 75230
T: (972) 387-4040

---

[5] Per the Complaint, Alpha Capital Anstalt is a Lichtenstein entity and its "Geschäftsführer" is Mr. Konrad Ackerman, who submitted an affidavit in support of the failed TRO in this case.

F: (972) 387-4041  
Mazin@Stecklerlaw.com  
***Counsel for the Defendant***

## CERTIFICATE OF SERVICE

    This is to certify that on the 4th day of December, 2015, a true and correct copy of the above and foregoing instrument was served via electronic service and/or First Class mail, upon the following counsel of record in accordance with the Federal Rules of Civil Procedure:

    Kenneth Zitter  
    260 Madison Avenue #18  
    New York, NY 10016  
    Ph:  212-532-8000  
    Fax: 212-679-8990

                                          */s Mazin A. Sbaiti*  
                                          Mazin A. Sbaiti, Esq.