United States District Court
Southern District of New York
-----------------------------------------------------------x

Alpha Capital Anstalt,

                Plaintiff,                15-CV-5443 (VM)(GWG)

    v.

Oxysure Systems, Inc.,

               Defendant.

-----------------------------------------------------------x

Plaintiff's Memorandum Of Law In Opposition
To Defendant's Motion For A Protective Order

Law Offices of Kenneth A. Zitter
Attorneys for Plaintiff,
  Alpha Capital Anstalt
260 Madison Avenue - 18th Floor
New York, New York 10016
212-532-8000

## Table of Contents

Table of Authorities .................................................................. ii

Preliminary Statement ................................................................ 1

Argument ............................................................................ 2

Point 1 .............................................................................. 2

    Oxysure Is Not Entitled To A Protective Order ..................................... 2

    A.    Oxysure Has The Burden Of Proving
           That It Has Good Cause For The
           Issuance Of A Protective Order ........................................ 2

    B.    Oxysure Has Not Established That The Transaction
           Documents Are Entitled To A Protective Order ........................... 6

    C.    Oxysure Has Not Established That Any
           Emails Or Draft Transaction Agreements
           Are Entitled To A Protective Order .................................... 9

    D.    There Is No Confidentiality Agreement
           Governing The Documents To Be Produced ............................. 11

    E.    Attorneys' Eyes Only Designation
           Is Inappropriate For Any Documents ................................... 14

Conclusion .......................................................................... 15

## Table of Authorities

*Blum v. Schlegel*, 150 F.R.D. 38 (W.D.N.Y. 1993) .................................. 4

*Citicorp and Citicorp Services, Inc. v. Interbank Card Association*, 478 F. Supp. 756 (S.D.N.Y. 1979) ............................... 3, 10

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, S. Ct. 2193, 68 L. Ed. 2d 693 (1981) ............................................ 4-5

*In re Harcourt Brace Jovanovich, Inc. Securities Litigation*, 838 F. Supp 109 (S.D.N.Y. 1993) ................................... 4

*In re Parmalat Securities Litigation*, 258 F.R.D. 236 (S.D.N.Y. 2009) ............................................... 10

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184 (S.D.N.Y. 2014) (WHP)(GWG) ............................ 3

*Reliance Insurance Co. v. Barron's*, 428 F. Supp. 200 (S.D.N.Y. 1977) ........................................... 10

### Federal Rules of Civil Procedure:

26 ..................................................................... 2

26(b) .................................................................. 2

26(c). ......................................................... 3, 4, 5, 9, 10

### SEC Rules and Regulations:

Regulation SK, 17 C.F.R. 229.601(4) .............................................. 6

17 C.F.R. 240.24b-2 ............................................................. 7

Regulation FD 17 C.F.R. 243.100 ................................................. 8

### Treatises:

8A Wright Miller Marcus, *Federal Practice and Procedure*, §2035, (2010 ed.) ............. 4

## Preliminary Statement

Plaintiff Alpha Capital Anstalt ("Alpha Capital") submits this memorandum of law in opposition to Defendant Oxysure Systems Inc.'s ("Oxysure") motion for a protective order designating certain documents which it has produced as "Confidential" and others as "Attorneys Eyes Only." As hereafter set forth, Oxysure does not establish the alleged confidential nature of the documents as to which it seeks a protective order and does not specify the harm it will suffer absent a protective order. Indeed, Oxysure does not even attach the documents which it claims are confidential, providing only a list of emails from which list it is impossible to determine their alleged confidential nature.[1] Oxysure's claim that the documents are subject to a confidentiality agreement is simply untrue. Thus Oxysure has not demonstrated good cause or otherwise met its burden of proof for the issuance of any protective order.

---

[1] Oxysure could have requested that the allegedly confidential documents be filed under seal, pending further order of the Court. Given the nature of the motion, it is likely that the Court would have granted such an order. Oxysure apparently chose not to do so, thereby depriving the Court of the ability to review the documents to determine whether or not they contain confidential information. Based upon Alpha Capital's review of those documents, they do not contain confidential information (Zitter Affirmation, ¶5).

## Argument

## Point 1

## Oxysure Is Not Entitled To A Protective Order

### A. Oxysure Has The Burden Of Proving That It Has Good Cause For The Issuance Of A Protective Order

Rule 26(b) of the Federal Rules provides for the production of all relevant information without limitation,[2] except as otherwise provided in Rule 26. This Court already held a conference on October 16, 2015 regarding Oxysure's claims of relevance with respect to the documents requested by Alpha Capital. As a result, the parties conferred and agreed upon the documents which Oxysure would produce (Zitter Affirmation ¶3 and Exhibit C thereto). Thus relevance has already been contested and determined.[3] Oxysure's argument, therefore, (DM

---

[2] In relevant part, Rule 26(b) provides: "[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."

[3] See Docket Entry No. 36, the letter from Mazin Sbaiti to the Court dated October 9, 2015 which caused the Court to hold a hearing on October 16, 2015 to deal with Oxysure's claims of relevance. Thereafter, the parties agreed upon which documents would be produced subject to any motion for a protective order (Zitter Affirmation ¶3 and Exhibit C thereto). In any event, the documents as to which Oxysure seeks a protective order - the Transaction Documents pursuant to which Oxysure sold the variable rate securities and the related emails leading up to those sales - are clearly relevant because they may well provide information which is admissible at trial.

2

p. 1[4]) that a protective order must be granted because the documents are not relevant is incorrect.[5] The documents, therefore, must be produced without any protective order unless Oxysure's motion meets the requirements of Rule 26(c). See *Citicorp and Citicorp Services, Inc. v. Interbank Card Association*, 478 F. Supp. 756, 765 (S.D.N.Y. 1979) ("[E]ven with respect to materials disclosed for pretrial discovery purposes, secrecy is the exception, not the rule."). Oxysure does not meet the Rule 26(c) requirements for the entry of a protective order.

Rule 26(c) of the Federal Rules permits a party to move for a protective order based upon alleged "confidential commercial information," as Oxysure seeks to do herein.[6] This Court, in *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (WHP)(GWG), set forth the elements which Oxysure must establish to obtain a protective order under Rule 26(c).

---

[4]References to "DM" followed by a page number are references to pages in Oxysure's document entitled "Defendant's Motion For A Protective Order."

[5]The Court also entered an Order on October 26, 2015 that pending Oxysure's motion for a protective order, any Transaction Documents it produced should be treated as "Confidential" and any emails it produced should be treated as "Attorneys' Eyes Only." Exhibit A to Zitter Affirmation.

[6](c) Protective Orders
(1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . .

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

3

> To the extent a party seeks a protective order under Rule 26(c), that party "has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir.2004); accord *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (citing cases). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006) (internal quotations and citations omitted); see also *Allen v. City of New York*, 420 F.Supp.2d 295, 302 (S.D.N.Y. 2006) (good cause under Rule 26(c) requires demonstrating a "clearly defined and serious injury" that would result from disclosure) (citations omitted). Additionally, "the harm must be significant, not a mere trifle." *Duling*, 266 F.R.D. at 71 (quoting *187 Schiller v. City of New York, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 17, 2007)). The Second Circuit has cautioned that Rule 26(c) "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir. 1983).

See also: *Blum v. Schlegel*, 150 F.R.D. 38, 41 (W.D.N.Y. 1993) ("The party seeking protection from disclosure has the burden of making a particular and specific demonstration of fact, as distinguished from general, conclusory statements revealing some injustice, prejudice, or consequential harm that will result if protection is denied."); *In re Harcourt Brace Jovanovich, Inc. Securities Litigation*, 838 F.Supp 109, 114 (S.D.N.Y. 1993) ("The burden is upon the party opposing discovery to show that discovery should not be permitted."); 8A Wright Miller Marcus, *Federal Practice and Procedure*, §2035, (2010 ed.) ("The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause."); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, 101, S. Ct. 2193,

4

2201, 68 L. Ed. 2d 693 (1981) citing Wright & Miller. Oxysure has failed to establish that there is good cause for the issuance of a protective order.

Oxysure has not met its burden for the issuance of a protective order under Rule 26(c) for numerous reasons. First, it has not established that the documents as to which it seeks a protective order contain any confidential information. The motion papers contain only generalized allegations, not specific facts, as to the confidential nature of the information which Oxysure seeks to protect. Thus Oxysure claims that the documents reveal "options and strategies that, if public, would put Oxysure at a competitive disadvantage." (DM, p. 1-2). There is no description of those alleged options or strategies. There is no explanation of what competitive disadvantage Oxysure would suffer, absent a protective order. Alpha Capital does not compete with Oxysure so Alpha Capital cannot use any allegedly confidential information for its own benefit.

Particularly with respect to the Transaction Documents pursuant to which Oxysure, in violation of Alpha Capital's contract rights, sold variable rate securities, Oxysure has not explained what confidential information they contain. Transaction Documents do not contain confidential information warranting a protective order because, as hereafter set forth, Oxysure was required to file those documents publicly. There is no specificity as to which emails or Transaction Documents contain which allegedly confidential options or strategies. Neither the Transaction Documents nor the emails are attached to Oxysure's motion papers so that the Court can make an independent evaluation of the alleged confidential information therein contained.

## B. Oxysure Has Not Established That The Transaction Documents Are Entitled To A Protective Order

Oxysure has not established that the Transaction Documents contain any confidential information. Even if they did, under applicable federal regulations, Oxysure was required, but failed, to file those documents publicly. Oxysure, therefore, is not entitled to any confidentiality order regarding those documents.[7] Oxysure itself admits that final agreements pursuant to which Oxysure sold variable rate securities are relevant (DM p.1). The Transaction Documents which Oxysure did not produce are such final agreements.

Oxysure was required to file publicly those Transaction Documents, the same as it filed publicly all the Transaction Documents relating to the other variable rate securities which violated Oxysure's agreement with Alpha Capital.[8] Because the Transaction Documents were required to be publicly disclosed, they cannot, therefore, because of such public disclosure, contain any confidential information which warrants a protective order. Thus Regulation SK, 17 C.F.R. 229.601(4) provides, in relevant part:

---

[7] Despite the Court's granting temporary confidential status to the Transaction Documents, and Oxysure's agreement to produce them, Oxysure, in violation of its agreement and of the Court Order dated October 26, 2015, has failed to produce the Transaction Documents pursuant to which it sold convertible variable rate notes in 2014 and 2015 (Zitter Affirmation, ¶4). That failure to produce may be the subject of a further motion in this action.

[8] Oxysure disclosed some of the terms of the convertible notes in its Form 10Q for the quarter ended March 31, 2015 filed on May 18, 2015. Oxysure did not file the Transaction Documents themselves (Zitter Affirmation, ¶4 and Exhibit D).

6

> If a material contract or plan of acquisition, reorganization, arrangement, liquidation or succession is executed or becomes effective during the reporting period reflected by a Form 10-Q or Form 10-K, it shall be filed as an exhibit to the Form 10-Q or Form 10-K filed for the corresponding period.

The Transaction Documents whereby Oxysure sold convertible rate securities are material. Oxysure does not claim otherwise. Indeed, if Oxysure is fearful that their disclosure will allegedly cause it material harm, then, by definition, the Transaction Documents are material.

The only explanation provided by Oxysure for its failure to file publicly such documents is that "Oxysure, on advice of securities counsel, has not publicly disclosed certain Transaction Documents from Third Party Transactions due in part to the burden of overdisclosure and providing additional disclosures under regulation FD" (Ross Declaration, ¶6). Oxysure provides no opinion of counsel or affidavit of counsel to that effect. Oxysure does not explain what it means by the "burden of overdisclosure" or how its failure to disclose all the terms of the Transaction Agreements is protected by any rule or regulation relating to overdisclosure. Oxysure does not explain what burden is involved in publicly disclosing the full text of the Transaction Documents which are likely already in electronic form. A few keystrokes on the computer could attach those documents to any Form 10Q or 10K which Oxysure filed. That hardly seems burdensome.[9]

---

[9] SEC rules allow a company to request confidential treatment of all or a portion of documents which the company is otherwise required to file. See 17 C.F.R. 240.24b-2. Oxysure did not seek such confidential treatment from the SEC but simply failed to file those documents in violation of SEC regulations.

Nor does Oxysure explain the alleged burden of providing additional disclosures under Rule FD.[10] Indeed, Rule FD (Fair Disclosure), 17 C.F.R. §243.100, is designed to prohibit selective disclosure to insure that all investors in public companies have equal access to information about the company. Oxysure expresses concern about disclosing the Transaction Documents to Alpha Capital and to anyone who makes trading decisions at Alpha Capital (Ross Declaration, ¶7). Oxysure contends that disclosure of the Transaction Documents would give Alpha Capital "an unfair advantage in its trading activities, allowing it to strategically time conversions and sales" (Ross Declaration, ¶8). By not providing Alpha Capital and all the other Oxysure shareholders with all the terms of the Transaction Documents, however, Oxysure thereby provides material inside information and an unfair trading advantage to the purchasers of those securities. Those purchasers possess material inside information regarding Oxysure - all the terms of their securities purchases - which is not available to the other Oxysure shareholders, giving to those purchasers an unfair and illegal trading advantage. That type of selective disclosure is exactly the type of conduct which Regulation FD (set forth in note 10) outlaws. The Transaction Documents are simply not confidential and Oxysure's failure to file them publicly violates federal regulations.

---

[10]Section100 of Regulation FD sets forth the basic rule regarding selective disclosure. Under this rule, whenever:

(1) an issuer, or person acting on its behalf,
(2) discloses material nonpublic information,
(3) to certain enumerated persons (in general, securities market professionals or holders of the issuer's securities who may well trade on the basis of the information),

(4) the issuer must make public disclosure of that same information:
(a) simultaneously (for intentional disclosures), or
(b) promptly (for non-intentional disclosures).

Oxysure also argues, with respect to the Transaction Documents, that the "costs of monitoring and correcting its partial disclosures would be incalculably high according to our best information" (Ross Declaration, ¶6). Oxysure does not explain why the cost of attaching the undisclosed Transaction Documents to its next 10Q or 10K would be "incalculably high." To the contrary, the cost of attaching the documents to its next 10Q or 10K appears to be incalculably low.

Oxysure has not met its burden of proving that the Transaction Documents are entitled to a protective order under Rule 26(c). Aside from its impropriety, any protective order entered by the Court, we respectfully submit, would involve the Court in Oxysure's continuing violation of its obligation to file the Transaction Documents publicly in violation of federal regulations.

C. Oxysure Has Not Established That Any
   Emails Or Draft Transaction Agreements
   Are Entitled To A Protective Order

Oxysure argues that a protective order is necessary with respect to draft Transaction Agreements and emails relating to those agreements because they allegedly "reflect Oxysure's particular financing strategies and financial posturing that are non-public and, in the hands of people who trade (in the aggregate) would be damaging to Oxysure and its positioning" (Ross Declaration, ¶7). Oxysure does not explain why any positions it took in the course of negotiating prior financing deals would have any effect on any current trading by any investor in Oxysure securities. We respectfully submit that there is no logical connection between historical

9

negotiating positions leading up to a particular deal and current trading activities by any investor in Oxysure securities.

Further, Oxysure, although asserting generally that disclosure without a protective order would be damaging to it and its positioning, no specific damages are alleged. Indeed, we respectfully submit alleged damages, if they exist at all, are remote or speculative and do not meet Rule 26(c)'s requirement that any damages must be "clearly defined, specific and serious." See: *In re Parmalat Securities Litigation*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)("The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test."); *Citicorp and Citicorp Services, Inc. v. Interbank Card Association, supra* ("As Judges Brieant and Edelstein have held, those who seek to avoid disclosure of commercial information by a protective order under Rule 26(c) of the Federal Rules of Civil Procedure bear a heavy burden of demonstrating that "disclosure will work a clearly defined and very serious injury" citing *Reliance Insurance Co. v. Barron's*, 428 F.Supp. 200, 202-203 (S.D.N.Y. 1977)).

Oxysure argues that the emails, some of which allegedly reveal the disputes it had with its strategic financing partners, are sensitive business information which allegedly "would impact Oxysure's ability to negotiate in the future and put it at a substantial competitive disadvantage" (Ross Declaration, ¶8). Negotiating positions which Oxysure may or may not have taken in historical deals, some of which took place more than a year ago are hardly sensitive business

10

information. Any claim that the positions which Oxysure took in historical deals, which were negotiated against the background of the economic circumstances of both parties to the transactions at those times and the willingness of both parties to those deals to enter into them, given the risks and rewards of the deal, has no bearing on the terms and conditions to which Oxysure and a potential source of financing may do a deal in the future, given their economic circumstances and the risks and rewards which may then obtain. The types of financings in which Oxysure engages are fairly standard. Oxysure does not establish that any of the documents as to which it seeks a protective order contain any unique or unusual provisions not generally negotiated in financings of these types. Once again, any alleged damage to Oxysure or alleged competitive disadvantage by the denial of its motion for a protective order is highly remote or speculative, at best.

### D. There Is No Confidentiality Agreement Governing The Documents To Be Produced

Oxysure argues that the documents Alpha Capital seeks implicate some unstated privacy interest of Oxysure and third parties. Oxysure claims that it has a confidentiality agreement with the representative of those parties (DM p. 1) which compels the entry of a protective order. That claim is simply untrue.

The only agreements produced by Oxysure are two Consulting Agreements (Exhibits 2 and 3 to the Ross Declaration) whereby Oxysure retained Anubis Capital Advisors ("Anubis") to assist in raising funds. There are no parties to those agreements other than Anubis and Oxysure.

11

Anubis agreed only to provide consultant and advisory services to Oxysure. Anubis did not purport, in those agreements or otherwise, to represent any non party to those agreements. Those agreements set forth the services which Anubis would provide and its compensation for providing the services. In those agreements, as is typical in an agreement between a company and its investment advisor, Anubis agreed with Oxysure that Anubis would retain in confidence any confidential information which it received from Oxysure.[11] The documents as to which Oxysure

---

[11] Even if the confidentiality terms of the Anubis Consulting Agreements were somehow applicable to Alpha Capital's document request in this case (which they are not), Oxysure has not established that the documents as to which it seeks a protective order meet the definition of Confidential Information set forth therein. Thus the Consulting Agreement entered into between Oxysure and Anubis on August 9, 2013 (Exhibit 3 to the Ross Declaration) provides the following definition of Confidential Information:

"Non-Disclosure of Confidential Information

A.  As used in this Agreement, "Confidential Information" means information which is presented to the Consultant by the Company or developed, conceived or created by the Company, or disclosed to the Consultant or known by or conceived or created by the Consultant during the term of this Agreement, with respect to the Company, its business or any of its products, processes, and other services relating thereto relating to the past or present business or any plans with respect to the future business of the Company, or relating thereto to the past or present business of a third party or plans with respect to future business of a third party which are disclosed to the Company. Confidential Information includes, but is not limited to, all documentation, hardware and software relating thereto, and information and data in written, graphic and/or machine readable form, products, processes and services, whether or not patentable, trademarkable or copyrightable or otherwise protectable, including, but not limited to, information with respect to discoveries; know-how; ideas; computer programs; source codes and object codes; designs; algorithms; processes and structures; product information; marketing information; price lists; cost information; product contents and formulae; manufacturing and production techniques and methods; research and development information; list of clients and vendors and other information relating thereto; financial data and information; business plans and processes; documentation with respect to any of the foregoing; and any other information of the Company that the Company informs the Consultant or the Consultant should know, by virtue of its position or the circumstances in which the Consultant learned such other information, is to be kept confidential including, but not limited to any information acquired by the Consultant from any sources prior to the commencement of this Agreement. Confidential Information also includes similar information obtained by the Company in confidence from its vendors, licensors,

12

seeks a protective order, however, are not documents which Oxysure provided to Anubis. Oxysure seeks a protective order as to documents which Oxysure itself provided to third parties with whom no confidentiality agreement exists. Thus the Consulting Agreements between Anubis and Oxysure provide no basis for any protective order. Had Oxysure truly believed that it was revealing any confidential information to the purchasers of its securities, as a public company represented by counsel, it was certainly sophisticated enough to require the potential investors to execute confidentiality agreements.

---

licensees, customers and/or clients. Confidential Information may or may not be labeled as confidential."

Oxysure does not establish how any of the documents as to which it seeks a protective order fit the above definition of confidential information.

The June 1, 2015 Consulting Agreement between Anubis and Oxysure, in Exhibit A thereto entitled "Standard Terms and Conditions," provides for Anubis to keep confidential all of the information it receives from Oxysure. As noted above, Oxysure does not seek a protective order regarding material it provided to Anubis. It seeks a protective order as to documents which Oxysure provided directly to third parties with whom no confidentiality agreements exist. The overwhelming majority of the emails listed on Exhibit 1 to the Ross Declaration have no connection with Anubis. Virtually all of the few documents which show some connection to Anubis were also sent to other parties and their attorneys, not exclusively to Anubis, thereby negating any alleged confidential nature under the agreement with Anubis. The June 1, 2015 Consulting Agreement also provided that it was made solely for the benefit of Anubis and Oxysure. It specifically does not provide any rights or impose any obligations on anyone else (Standard Terms and Conditions, para. 7). Even if the broader scope of the confidentiality clause in the later June 1, 2015 agreement makes any difference (which it does not), that agreement would not apply to any transactions prior to June 1, 2015. All of the earlier transactions, including the ones in the first quarter of 2015 as to which Oxysure has not produced the Transaction Documents, would be governed by the terms of the earlier August 9, 2013 Consulting Agreement.

13

## E. Attorneys' Eyes Only Designation
## Is Inappropriate For Any Documents

Oxysure seeks a designation of "Attorneys' Eyes Only" for certain documents, although its motion does not specify for which documents it seeks such designation.[12] As set forth above, Oxysure has not met its burden of proving that it is entitled to any protective order. Any designation of "Attorneys' Eyes Only" would be particularly harmful to Alpha Capital. This case belongs to Alpha Capital, not to its attorneys. As the party to the case, absent some serious and well defined damage to Oxysure, which is lacking, Alpha Capital should be able to review all documents and assist its attorneys in preparation of the case. Alpha Capital is a sophisticated investing entity whose expertise in these matters and intimate knowledge of the facts underlying its claims, is highly valued by its counsel. Oxysure's unsubstantiated statement (DM p. 2) that disclosure to Plaintiff's counsel suffices is simply incorrect. Alpha Capital does not compete with Oxysure. Its only interest is in converting and/or selling its Oxysure convertible securities to make a profit. Oxysure has established no basis to deprive Alpha Capital, as a litigant, of full access to all documents produced in this litigation so that its claims can be fully presented to the Court.

---

[12]Presumably Oxysure is seeking confidential treatment for the Transaction Documents and "Attorneys' Eyes Only" treatment for the draft Transaction Agreements and emails, which reflects this Court's temporary order entered October 26, 2015 (Zitter Affirmation, Exhibit A).

14

## Conclusion

For the foregoing reasons, the Court should deny Oxysure's motion for a protective order in all respects.

Respectfully submitted,
Law Offices of Kenneth A. Zitter

By_____
Kenneth A. Zitter
Attorneys for Plaintiff
Alpha Capital Anstalt
260 Madison Avenue, 18th Floor
New York, NY 10016
212-532-8000
KAZ-3195
