**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **ALPHA CAPITAL ANSTALT,** | § | |
| **OSHER CAPITAL PARTNERS,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| ***v.*** | § | **Case No. 15-cv-005443-VM-GG** |
| | § | **(Ref Case 1:15-cv-09594)** |
| **OXYSURE SYSTEMS, INC. et al.** | § | |
| | § | |
| ***Defendants.*** | § | |

---

# DEFENDANTS' MOTION TO DISMISS

---

**STECKLER LLP**
Mazin A. Sbaiti, Esq.
New York Bar No. 4339057
12720 Hillcrest Rd.
Suite 1045
Dallas, Texas 75230
Tel: (972) 387-4040
Fax: (972) 387-4041
Mazin@stecklerLaw.com
***Counsel for Defendants***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………..iii-vi

I. SUMMARY OF DEFENDANTS' POSITION………...…………………………..…1

II. RULE 12(b)(2) MOTION TO DISMISS BY JULIAN ROSS..………………………2

A. Julian Ross Has Not "Transacted Business Within the State" Under § 302(a)(1)…3

B. NY CPLR § 302(a)(3) Does Not Apply……………………………………………5

C. Exercising Personal Jurisdiction Over Julian Ross Would be Unconstitutional…...7

III. RULE 12(b)(6) MOTION TO DISMISS…………………...………………………....8

A. Mr. Ross Cannot Be Liable for Oxysure's Alleged Breaches of Contract or Fraud……………...………………………………………………………………8

B. Plaintiff's Tort Claims May Only Be Brought As Contract Claims…...…………9

1. The Breach of Representation and Warranties Precludes a Claim for Fraud or Market Manipulation.…………………………………………………………9
2. The Tort Claims are Precluded by the Election of Remedies and Economic Loss Doctrines……………………………………………………………….12

C. Plaintiff has Not Alleged Falsity, Causation or Damages Arising from the Fraud……………………………………………………………………………..14

1. Plaintiff Has Not Alleged A Violation of Regulation M, Therefore They Cannot Plausibly Infer that the Alleged Misrepresentation was "False"…….14
2. Plaintiff Has Not Alleged Plausible Theory of Causation or Damages……...14

D. The Fraud and Market Manipulation Claims Fail to Meet Rule 9(b)'s Particularity Requirements……………………………………………………………….16

E. The Complaint Fails to Plead 10b-5 Violations Against Either Defendant……...18
1. The Standards Applicable to Pleading Fraud and 10b-5 Violations and Market Manipulation…………………………………………………………........18
2. The Complaints Lack Sufficient Factual Allegations to Make Out a Claim for Market Manipulation ……………………………………………………….20

F. The Integration/Merger Clause in the Series B SPA Bars the Fraud and Tort Claims…………………………………………………………………………....25

G. This Court's Prior Ruling Forecloses the Injunction Claims…………………….27

IV. PRAYER FOR RELIEF…………………………………………………………..…27

CERTIFICATE OF COMPLIANCE......................................................28

CERTIFICATE OF SERVICE.......................................................29

**TABLE OF AUTHORITIES**

CASES

*331 East 14th St. LLC v. 331 East Corp.*
740 N.Y.S.2d 327 (1st Dep't 2002)…………………………………………………...12
*Acito v. IMCERA Group*
47 F.3d 47, 54 (2d Cir. 1995)……………………………………………………….17
*Affiliated Ute Citizens v. United States*
406 U.S. 128, 153-154 (1972)…………………………………………………..….24
*Aquiline Capital Partners LLC v. FinArch* LLC
861 F.Supp.2d 378, 389 (S.D.N.Y. 2012)……………………………………..….7
*Arista Techs., Inc. v. Arthur D. Little Enters.*
125 F. Supp. 2d 641, 649-650 (E.D.N.Y. 2000)……………………………………..4
*ATSI Communs., Inc. v. Shaar Fund, Ltd.*
493 F.3d 87, 100-101 (2d Cir. 2007)……………………………………….....19, 20, 22
*AUSA Life Ins. Co. v. Ernst & Young*
206 F.3d 202, 208 (2d Cir. 2000)………………………………………………..…..9
*Bank of Tokyo-Mitsubishi Ltd. v. Enron Corp*
2005 U.S. Dist. LEXIS 2134, *42-43 (S.D.N.Y., Feb. 14, 2005)…………………….…11
*Baxter v. A.R. Baron & Co.*
1995 U.S. Dist. LEXIS 14882, *19-20, *23-24 (S.D.N.Y. Oct. 6, 1995)…………...21, 23
*Bennett v. U.S. Trust Co.*
770 F.2d 308, 313 (2d Cir. 1985)……………………………………………….…19
*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*
98 F.3d 13, 20 (2d Cir. 1996)……………………………………………………....10
*Burger King Corp. v. Rudzewicz*
471 U.S. 462 (1985)………………………………………………………..…..7
*Cardone v. Jiminy Peak Inc.*
667 N.Y.S.2d 82, 83 (1997)……………………………………………………....5
*Catton v. Defense Tech. Sys.*
2006 U.S. Dist. LEXIS 205, at *207 (S.D.N.Y.. Jan. 3, 2006)…………….....19, 22, 23, 24
*Chill v. GE*
101 F.3d 263, 267 & n.5 (2d Cir. 1996)………………………………………..…..25
*Cumberland Oil Corp. v. Thropp*
791 F.2d 1037, 1044 (2d Cir. 1986)…………………………………………………..14
*Digital Lab Solutions, LLC v. Stickler*
No. 06-cv-6482, 2007 WL 700821 at *3 (S.D.N.Y. Mar. 7, 2007)……………………....5
*DynCorp v. GTE Corp.*
215 F. Supp. 2d 308, 324 (S.D.N.Y. 2002)…………………………………………...10
*Endovasc Ltd. v. J.P. Turner & Co., LLC*
2004 U.S. Dist. LEXIS 5075, *47 (S.D.N.Y. Mar. 30, 2004)………………………...21
*Fezzani v. Bear, Stearns & Co.*
384 F. Supp. 2d 618, 642-643 (S.D.N.Y. 2004)……………………………………..…..22
*Four Finger Art Factory, Inc. v. DiNicola……….*
2000 U.S. Dist. LEXIS 1221, *5 (S.D.N.Y. Feb. 9, 2000)………………………...…..11

*Global Mins. & Metals Corp. v Holmes*
824 NYS2d 210 [1st Dep't 2006], *lv denied* 8 N.Y.3d 804 (2007)……………………..….15
*Grant v. DCA Food Indus.*
N.Y.S.2d 327, 328 (3rd Dep't 1986)………………………………………………………..9, 10
*Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*
56 F.3d 427, slip op. at 4517 (2d Cir. 1995)…………………………………………..…..8
*Hanson v. Denckla*
357 U. S. 235, 254 (1958)…………………………………………………………..…..7
*Harris v. Mills*
572 F.3d 66, 72 (2d Cir. 2009)…………………………………………………………….…8
*In re Amaranth Natural Gas Commodities Litig.*
730 F.3d 170, 183 (2d Cir. 2013)…………………………………………………….…..23
*In re Blech Sec. Litig.*
961 F. Supp. 569, 581 (S.D.N.Y. 1997)…………………………………………………22
*In re UBS Auction Rate Sec. Litig.*
2010 U.S. Dist. LEXIS 59024, *78 (S.D.N.Y. June 10, 2010)…………………….........23
*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*
326 U.S. 310, 316, 318 (1945)……………………………………………………………….3
*King County v. IKB Deutsche Industriebank AG*
863 F. Supp. 2d 288, 298 (S.D.N.Y. 2012)……………………………………...…..8
*Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*
2012 U.S. Dist. LEXIS 95693, *54-56 (S.D.N.Y. July 9, 2012)……………………...…10
*Lumber Mut. Cas. Ins. Co. of N.Y. v. Friedman*
28 N.Y.S.2d 506 (1941)…………………………………………………………………12
*Mayes v. Leipziger*
674 F.2d 178, 185 (2d Cir. 1982)…………………………………………………………4
*MBIA Ins. Corp. v Credit Suisse Sec. (USA) LLC*
32 Misc. 3d 758, 776-777 (N.Y. Sup. Ct. 2011)……………………………...11, 15, 16
*McKee Elec. Co. v. Rauland–Borg Corp.*
20 N.Y.2d 377, 383 (1967)…………………………………………………………….….2
*Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*
768 F. Supp. 115, 117 (S.D.N.Y. 1991)……………………………………………...…12
*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*
91 F.3d 790, 793 (2d Cir. 1996)…………………………………………………..….2, 3
*Nautilus Ins. Co. v Matthew David Events, Ltd.*
893 N.Y.S.2d 529, 532 (N.Y. App. Div. 1st Dep't 2010)……………………………..26
*Navaera Scis., LLC v. Acuity Forensic Inc.*
667 F. Supp. 2d 369, 378 (S.D.N.Y. 2009)……………………………………...…..3
*Novak v. Kasaks*
216 F.3d 300, 306 (2d Cir. 2000)………………………………………………………...16
*Orlando v. Novurania of America, Inc.*
162 F.Supp.2d 220, 225 (S.D.N.Y. 2001)…………………………………………….....13
*Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*
2013 U.S. Dist. LEXIS 173466, *12-13 (S.D.N.Y. Dec. 9, 2013)……………………..…5
*Palace Exploration Co. v. Petroleum Dev.*
41 F.Supp.2d 427, 434 (S.D.N.Y. 1998)……………………………………………….....5

*Parke-Bernet Galleries, Inc. v. Franklyn*
26 N.Y.2d 13, 18 (1970)……………………………………………………………..7
*Penguin Gr. (USA) Inc. v. Am. Buddha*
609 F.3d 30, 34 (2d Cir. 2010)…………………………………………………………2
*Prudential Oil Corp. v. Phillips Petroleum Co.*
418 F. Supp. 254, 257 (S.D.N.Y. 1975)……………………………………………12
*Puma Indus. Consulting, Inc. v. DAAL Assocs, Inc.*
808 F.2d 982, 986 (2d Cir. 1987)…………………………………………………....8
*Royal American Managers, Inc. v. IRC Holding Corp.*
885 F.2d 1011, 1015 (2d Cir. 1989)……………………………………………...18
*Santa Fe Indus., Inc. v. Green*
430 U.S. 462, 476 (1977)…………………………………………………………….20, 21
*Schneider v. J & C Carpet Co.*
23 A.D.2d 103, 105, (N.Y. 1st Dept. 1965)…………………………………….…2
*ScripsAmerica, Inc. v. Ironridge Global LLC*
56 F. Supp. 3d 1121, 1161 (C.D. Cal. 2014)……………………………………....21
*Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC*
219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002)……………………………………….3
*SEC v. U.S. Envtl., Inc.*
82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000)…………………………………………19
*Seeo Vista Co. v. Columbia Pictures Indust., Inc.*
725 F. Supp. 1286, 1294 (S.D.N.Y. 1989)…………………………………...…10
*Shields v. Citytrust Bancorp, Inc.*
25 F.3d 1124, 1128 (2d Cir. 1994)………………………………………………..16, 19
*Sofi Classic S.A. de C.V. v. Hurowitz*
444 F. Supp. 2d 231, 238 (S.D.N.Y. 2006)…………………………………….…..13
*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*
250 F.3d 87, 104-05 (2d Cir. 2001)……………………………………………….…14, 16
*T.H.C., Inc. v. Fortune Pet. Corp.*
1999 U.S. Dist. LEXIS 4039, at *6 (S.D.N.Y. March 31, 1999)…………………..……19
*UA Theatre Circuit, Inc. v. Sun Plaza Enter. Corp.*
352 F. Supp. 2d 342, 351 (E.D.N.Y. 2005)……………………………………..….26
*Varo, Inc. v. Alvis PLC*
691 N.Y.S.2d 51 (1st Dep't 1999)……………………………………………….…11
*Vitale v. Coyne Realty, Inc.*
66 A.D.2d 562, 414 N.Y.S.2d 388, 393 (4th Dep't 1979)………………………………12
*Wilson v. Merrill Lynch & Co.*
671 F.3d 120, 128 (2d Cir. 2011)……………………………………………………....8
*Zinaman v. USTS New York, Inc.*
798 F. Supp. 128, 134 (S.D.N.Y. 1992)………………………………………………....13

**STATUTES**

15 U.S.C. § 78-u-4……………………………………………………………………………..…19

**OTHER AUTHORITIES**

N.Y. C.P.L.R §302……………………………………………………………..….2, 3, 4, 5, 6

**REGULATIONS**

17 C.F.R. §240.10b-5……………………………………………...……1, 18, 19. 20, 21, 22, 23
17 C.F.R. §242.102…………………………………………………………………...….14

**RULES**

Fed. R. Civ. P. 8……………………………………………………………………….……..1
Fed. R. Civ. P. 9(b)…………………………………………………………………..…1, 16, 19
Fed. R. Civ. P. 12(b)…………………………………………………………..……..1, 2, 8

**I.**

**SUMMARY OF DEFENDANTS' POSITION**

Defendants Oxysure Systems, Inc., and Julian Ross (individually) respectfully bring this motion to dismiss the Complaint brought by Osher Capital Partners, LLC (the "Complaint"), under Rules 12(b)(2) and 12(b)(6), and would respectfully show the Court that:

***First***, this Court lacks personal jurisdiction over Defendant Julian Ross. The New York long arm statute requires proof that the defendant transacted business in the state, or committed a tort felt in the state *and* either regularly does or solicits business in the state, or derives substantial revenue from interstate or international commerce. None of those is present here.

***Second***, the Complaint fails to set forth any basis for holding Mr. Ross personally liable for breach of contract or for fraud. The contracts at issue were all signed by Oxysure (executed by Mr. Ross as its CEO, only); and the Complaint attributes no statement to Mr. Ross, personally, that was made to any member of Plaintiff's business, that could plausible be construed as fraud.

***Third***, the fraud and market manipulation claims must be brought as contract claims. New York law clearly holds that one may not allege fraud in the inducement for breach of a contractual warranty. Moreover, Plaintiff's election to affirm the contract precludes a fraud or tort action for rescission and damages.

***Fourth***, the fraud and 10b-5 market manipulation claims are not properly pled under Rule 8, much less with particularity under Rule 9(b). Not a single elements has been alleged, much less with particularity. And because Plaintiff accepted the risk of a stock decline whenever noteholders' shares were converted and sold, any inference of causation or damages is implausible.

***Finally***, Plaintiff's claims for injunctive relief should be dismissed in light of this Court's prior ruling on July 17, 2015 that damages are sufficient. Nothing has changed since then.

**II.**

**RULE 12(b)(2) MOTION TO DISMISS BY JULIAN ROSS**

Mr. Julian Ross moves to dismiss this matter under Rule 12(b)(2) for lack of personal jurisdiction. The Plaintiffs bear "the burden of demonstrating personal jurisdiction over a person or entity against whom [they] seek[] to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). In general, "New York courts have cautioned ... that defendants … should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact." *Id.* (citing *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 383 (1967)) (internal quotation marks and additional citation omitted). As this Court is well-aware, personal jurisdiction can only be predicated on two grounds: either general or specific. *Id.*

Plaintiff has alleged no grounds for finding general jurisdiction, nor could they meet such a tall burden given the paucity of contacts with the state.[1] In New York, jurisdiction must be predicated on the application of the Long Arm Statute, N.Y. C.P.L.R. § 302. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (2d Cir. 1996). *See also Schneider v. J & C Carpet Co.*, 23 A.D.2d 103, 105, (N.Y. 1st Dept. 1965) (New York's long-arm statute does not recognize personal jurisdiction absent evidence that "the defendant has transacted any business within the state, [and that] the cause of action arises from [] such business transactions."). Thus, Mr. Ross's *personal* activities on behalf of Oxysure must satisfy at least one prong of the long-arm statute. *Id.*

It is well established that "New York's long-arm statute … is narrower than the Due Process Clause" and thus imposes independent statutory obligations for the exercise of personal

[1] *See* Decl. of Julian Ross, February 4, 2016.

jurisdiction over a foreign defendant. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (2d Cir. 1996). Thus, where they do not meet the long-arm statute, cases filed in New York must nonetheless be dismissed even if it has not been shown that "maintenance of the suit [offends] traditional notions of fair play and substantial justice" under the Federal Constitution. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal citations omitted).

Only two potential provisions of the Long Arm Statute could arguably apply—§ 302(a)(1) ("transacts any business within the state") and § 302(a)(3) ("commits a tortious act without the state causing injury to person or property within the state…."). Neither apply because Mr. Ross has not transacted business within the state, does not "regularly do[] or solicit[] business within the state," does not "derive[] substantial revenue from goods used or consumed or services rendered, in the state," and does not "expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce[.]"

**A. <u>Julian Ross Has Not "Transacted Business Within the State" Under § 302(a)(1)</u>**

Under New York law, '[i]f an individual is sued in his individual capacity, but only had contact with New York as an officer of a corporation acting within the scope of his employment, that individual is not subject to personal jurisdiction in New York." *Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC.*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002); *see also Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 378 (S.D.N.Y. 2009) (rejecting personal jurisdiction over a Canadian domiciliary based solely on his status as the corporate defendant's principal, sole employee, and sole shareholder).

"To determine whether a party in a contract action has 'transacted business' within the meaning of § 302(a)(1), courts consider, among other things, the following factors: (1) whether the contract was negotiated and executed in New York, and whether the defendant visited New York for the purpose of meeting with the parties after the contract had been executed; (2) whether the contract contains a New York choice-of-law clause; (3) whether the contract is to be performed in New York; (4) whether the contract requires notices and payments to be sent to New York; and (5) defendant's physical presence in New York in connection with an ongoing contractual relationship with a New York corporation." *Arista Techs., Inc. v. Arthur D. Little Enters*., 125 F. Supp. 2d 641, 649-650 (E.D.N.Y. 2000) (citations omitted).

Here, Plaintiff has alleged no jurisdictional facts at all. There is no dispute that Mr. Ross is a citizen of Texas and that he was neither a party to, nor a signatory to the contract in his personal capacity.[2] No court has held that signing a contract in Texas (or anywhere other than New York) on behalf of one's company is sufficient to treat one as having "done business within the state" for the purposes of the New York long arm statute—in fact, just the opposite is true. *See Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir. 1982) ("So far as we are aware, no court has extended § 302(a)(1) to reach a non-domiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.") (collecting New York cases).

Moreover, for a defendant who has "no New York office, no New York mailing address, no New York bank accounts and no employees working in New York" and whose in-state contacts are "all sporadic and not carried out from a permanent location in the State or by [his] agents or

[2] *See* Declaration of Julian Ross, February 4, 2016.

employees in the State," there is no personal jurisdiction. *Cardone v. Jiminy Peak Inc.*, 667 N.Y.S.2d 82, 83 (1997). Nor can Oxysure's contacts be used as a proxy for Mr. Ross's. Jurisdiction over Oxysure is premised on the forum-selection clause in the Series B SPA,[3] not upon Oxysure's "doing business within the state." *Accord Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*, 2013 U.S. Dist. LEXIS 173466, *12-13 (S.D.N.Y. Dec. 9, 2013) (rejecting jurisdiction over agents of corporation where "Personal jurisdiction over RHI itself is based on the forum selection clause contained in the Agreement…not based on RHI's own actions in New York.").

Therefore, Plaintiffs cannot show that Mr. Ross "transacted business" within the state, and there is no personal jurisdiction in New York over Mr. Ross under NY CPLR § 302(a)(1). *Accord Digital Lab Solutions, LLC v. Stickler*, No. 06-cv-6482, 2007 WL 700821 at *3 (S.D.N.Y. Mar. 7, 2007); *Palace Exploration Co. v. Petroleum Dev.*, 41 F.Supp.2d 427, 434 (S.D.N.Y. 1998).

**B. NY CPLR § 302(a)(3) Does Not Apply**

Plaintiffs cannot rely on N.Y. C.P.L.R. § 302(a)(3) or their allegations of fraud or market manipulation. Section § 302(a)(3) provides in full:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent….
>
> 3. commits a tortious act without the state causing injury to person or property within the state, …. if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

[3] *See* Exhibit A, *Series B Stock Purchase Agreement*, effective December 29, 2014 ("Series B SPA").

Plaintiffs cannot meet N.Y. CPLR §§ 302(a)(3)(i)-(ii), for several reasons.

***First***, Plaintiffs cannot even begin to invoke that section because they have not alleged that Mr. Ross "committed a tortious act" without the state that affected them within the state. As discussed below in greater detail, the Complaint does not identify *a single statement* attributable to Mr. Ross personally. The fraud claims all stem from a contractual representation that they claim was fraudulent—contracts signed by Oxysure. And to the extent Plaintiff alleges "market manipulation," they have not alleged with any particularity how Mr. Ross's alleged innocuous *suggestion* to a note holder not to convert or stay out of the market – a pebble tossed into a pond – caused Plaintiff's tidal wave of injury in New York. The line is too attenuated.

***Second***, even if Plaintiff met their burden to allege tortious impact within New York, it is not enough. Section 302(a)(3)(i) also requires a showing that Mr. Ross "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state[.]" He does not. It is undisputed that Mr. Ross infrequently visits New York or does business here.[4] Moreover, Mr. Ross's role in the transaction was conducted 100% from Texas.[5]

***Third***, even if Mr. Ross could reasonably expect the alleged "acts" he did would have consequences in the state, Mr. Ross does not "derive[] substantial revenue from interstate or international commerce." He derives 100% of his income from Texas.[6]

Therefore, Plaintiff has failed to allege or demonstrate personal jurisdiction consistent with the New York Long Arm Statute, N.Y. C.P.L.R. § 302(a). Accordingly, all claims against Mr. Ross must be dismissed.

[4] *See* Decl. of Julian Ross.
[5] *Id.*
[6] *Id.*

**C. Exercising Personal Jurisdiction Over Julian Ross Would be Unconstitutional**

While the New York Long-Arm statute is not co-extensive with the due process clause, exercising personal jurisdiction here would indeed violate the U.S. Constitution.

***First***, none of the allegations demonstrates that Mr. Ross purposefully availed himself of New York. *See Hanson v. Denckla*, 357 U. S. 235, 254 (1958) (defendant must "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). At minimum, due process requires both that "the defendant on his own initiative … project[] himself into" New York, and that the plaintiff identify a substantial nexus between this voluntary projection and its cause of action. *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18 (1970). That is not met here.

***Second***, it has long been held that "some single or occasional acts" related to the forum may not be sufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" create only an "attenuated" affiliation with the forum. *See International Shoe Co*. v. *Washington*, 326 U.S. 310, 318 (1945). Thus, Mr. Ross's contacts do not meet this test.

***Third***, the forum selection or choice of law clauses are irrelevant. Mr. Ross is not a party to the contracts; and even if he were, it would not be enough. *Accord Aquiline Capital Partners LLC v. FinArch* LLC, 861 F.Supp.2d 378, 389 (S.D.N.Y. 2012) (choice of venue in contract insufficient to bring agents within New York's jurisdiction). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), held that a forum selection clause "standing alone would be insufficient to confer jurisdiction" without the other substantive acts that "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id.* at 482.

Therefore, there are no grounds for exercising personal jurisdiction over Mr. Ross individually. It would violate the long arm statute and the constitution.

## III.

## RULE 12(b)(6) MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 298 (S.D.N.Y. 2012). The Court should not accept as true conclusory allegations or "threadbare recitals" of the elements of a cause of action. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). It is only if the remaining, well-pleaded facts state a plausible case that a complaint will survive a motion to dismiss. *Id.* at 72 ("only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). A "sheer possibility" that Plaintiff's claims are plausible is not enough to meet this standard. *Id.*

### A. Mr. Ross Cannot Be Liable for Oxysure's Alleged Breaches of Contract or Fraud

Defendants "cannot be held individually liable for a breach of contract [if] they acted in their capacities as officers." *Puma Indus. Consulting, Inc. v. DAAL Assocs, Inc.*, 808 F.2d 982, 986 (2d Cir. 1987); *see also Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, slip op. at 4517 (2d Cir. 1995) ("Immunity extends to officers or employees who induce their corporation to breach a contract."). Here, the allegations suggest that Mr. Ross is personally liable for breaches of the contracts between the Plaintiffs and Oxysure. *See* Complaint ¶¶ 40-54.[7] But Mr. Ross signed

---

[7] *See* Case No. 1:15-cv-09594-VM, (Doc.# 1) (the "Complaint"). The matter was later joined with 15-cv-005443-VM as a related matter.

his name in his capacity as CEO of Oxysure—that much is plain from the face of the Series B SPA and Certificate of Designation.[8] Thus, he cannot be liable for breach of Oxysure's contract representations and warranties in Section 3.1. *Id.*

Additionally, Mr. Ross cannot be liable for fraud or market manipulation (which is really just a dressed-up recap of the fraud in the inducement claim). To recover damages for fraud under New York law, a plaintiff must allege: (1) a misrepresentation of fact made by the defendant which was false and known to be false by the defendant; (2) made to the Plaintiff for the purpose of inducing the plaintiff to rely upon it; (3) justifiable reliance of the plaintiff on the misrepresentation; and (4) actual damages. *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 208 (2d Cir. 2000). Here, the Complaint nowhere sets forth any statement made *by Mr. Ross* himself, much less one made to the Plaintiff, on which Plaintiff justifiably relied to its detriment, or how it caused actual damages. The entirety of the complaint therefore rests on a breach of *Oxysure's* representations and warranties in the SPA § 3.1. *See* Complaint ¶¶ 9-11, 25, 31, 33. Absent any statement attributable to Mr. Ross personally, he cannot be liable for fraud.

## B. Plaintiff's Tort Claims May Only Be Brought As Contract Claims

### 1. The Breach of Representation and Warranties Precludes a Claim for Fraud or Market Manipulation

Plaintiff has not alleged any alleged misrepresentations that were not reduced to writing in the contract. Plaintiff's Complaint only identifies the "representation and warranties" found in Series B SPA § 3.1(ff). *See* Complaint at ¶¶ 9-11; 25; 31; 33. The tort claims do nothing more than allege a breach of the representation that Oxysure had not engaged in market manipulation. "A cause of action for fraud does not arise when the only fraud relates to a breach of contract." *Grant*

[8] See Ross Decl. and exhibits thereto.

*v. DCA Food Indus*., N.Y.S.2d 327, 328 (3rd Dep't 1986) (citation omitted). Therefore, the fraud claims and market manipulation claim should be dismissed.

"Under New York law, a claim of fraud for breaching representations and warranties provided by a contract is not legally sufficient unless the complaining party can "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation or breach collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentations and breaches and are unrecoverable as contract damages." *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc*., 98 F.3d 13, 20 (2d Cir. 1996) (restating New York law); *DynCorp v. GTE Corp*., 215 F. Supp. 2d 308, 324 (S.D.N.Y. 2002) (dismissing fraud claim alleging recitation of prior oral representations that were reduced to reps and warranties in final agreement).

A fraud claim that is not based on a representation that was "extraneous" to or "collateral" to the contract will be dismissed. *See, e.g., Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.,* 2012 U.S. Dist. LEXIS 95693, *54-56 (S.D.N.Y. July 9, 2012) (holding that failure to "demonstrate a legal duty separate from the contract" or "a fraudulent misrepresentation collateral or extraneous to the contract" fails to set forth a proper claim for fraudulent inducement). *Accord Seeo Vista Co. v. Columbia Pictures Indust., Inc*., 725 F. Supp. 1286, 1294 (S.D.N.Y. 1989) ("New York law states clearly that an allegation that the defendant 'made the agreement knowing that [he or she] would not abide by it . . . says nothing which is not legally embraced by [a] cause of action for breach of contract'") (citation omitted).

In *DynCorp*, this Court dismissed fraud claims that attempted to circumvent the rule by recasting contract representations as prior oral statements about "present facts rather than future promises," holding that such "claims of fraud also are not 'collateral or extraneous to the terms of

the parties' agreement, since the false representations that they allege are the representations and warranties that are provided in" the bargained-for contracts themselves. 215 F.Supp. 2d at 324-25.

Similarly, in *Bank of Tokyo-Mitsubishi Ltd. v Enron Corp.*, 2005 U.S. Dist LEXIS 2134 (S.D.N.Y., Feb 14, 2005), the plaintiff sued for breach of contract and fraud. Because the parties' contract included representations that were "the precise misrepresentations on which [plaintiff's] fraudulent inducement claim is based, [and] specifically envisioned the remedies that should be available in the event that those misrepresentations came to light," the court dismissed the fraud claim on the ground that "those misrepresentations cannot also form the basis of a separate fraudulent inducement claim." *Id*. at *43. *See also Four Finger Art Factory, Inc. v. DiNicola,* 2000 U.S. Dist. LEXIS 1221, *5 (S.D.N.Y. Feb. 9, 2000) (dismissing fraud claim because "there was nothing about the plaintiff's allegation with respect to [defendant's] warranty which raised any alleged misrepresentation going beyond what was contained in . . . the contract,"); *MBIA Ins. Corp. v Credit Suisse Sec. (USA) LLC*, 32 Misc. 3d 758, 776-777 (N.Y. Sup. Ct. 2011) ("MBIA's first cause of action for fraud is dismissed. The alleged fraud in the inducement either duplicates the cause of action for breach of contractual representations and warranties in the second cause of action[.]") *rev'd on other grounds* 102 A.D.3d 488 (N.Y. App. Div. 1st Dep't 2013); *Varo, Inc. v. Alvis PLC*, 691 N.Y.S.2d 51 (1st Dep't 1999) (oral warranty regarding absence of environmental hazards on property being sold, held, not "collateral" to contractual provisions of indemnity; thus, contract, and not fraud, statute of limitations applied to cause dismissal of suit).

Here, Plaintiff is literally suing for fraud and market manipulation based upon the alleged falsehood of section 3.1(ff) in the Series B agreement. *See* Complaint ¶¶ 9-11, 25-30, 31-32, 33-34 (fraud claims for fraud in the inducement stemming from § 3.1(ff)). The market manipulation claim is just a restatement of the fraud in the inducement theory. *Compare id. with* ¶¶ 35-39

(market manipulation claims which culminate in "inducing Osher to purchase the Series B Stock") *and with* Series B SPA § 3.1(ff).

Accordingly, Plaintiff's first, second, third and fifth causes of action must be dismissed.

**2. The Tort Claims are Precluded by the Election of Remedies and Economic Loss Doctrines**

Under New York law, a fraud in the inducement claim requires an election of remedies – either the plaintiff affirms the contract and seeks damages, or repudiates the contract, and seeks rescission; plaintiffs cannot have it both ways. New York's "election of remedies" doctrine provides that "one may not both affirm and disaffirm a contract. . .or take a benefit under an instrument and repudiate it." *Accord Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 768 F. Supp. 115, 117 (S.D.N.Y. 1991) (citing *Lumber Mut. Cas. Ins. Co. of N.Y. v. Friedman*, 28 N.Y.S.2d 506 (1941). The *Morse/Diesel* court dismissed damages pleadings of fraud, holding that a plaintiff cannot recover damages and also rescission pursuant to the election of remedies rule because "an award of damages for fraud affirms the contract" while "rescission vitiates the contract and places the parties in status quo prior to the transaction." *Id*. (quoting *Vitale v. Coyne Realty, Inc*., 66 A.D.2d 562, 414 N.Y.S.2d 388, 393 (4th Dep't 1979)).

The election of remedies rule thus bars the pursuit of alternative relief after a party has "chosen one of two or more co-existing inconsistent remedies, and in reliance upon that election, that party must also have gained an advantage, or the opposing party must have suffered some detriment." *331 East 14th St. LLC v. 331 East Corp*., 740 N.Y.S.2d 327 (1st Dep't 2002) (quoting *Prudential Oil Corp. v. Phillips Petroleum Co*., 418 F. Supp. 254, 257 (S.D.N.Y. 1975).

Here, Plaintiff's (i) continued conversion of Series B shares to Oxysure Common Stock (*see* Complaint ¶ 24), (ii) bringing a temporary restraining order and injunction claim here in New York under the Series B SPA's choice of forum language to enforce the Series B SPA terms (which

was tried by this Court on July 17, 2015), and (iii) filing this suit claiming contract damages, collectively amount to an election to affirm the Series B contract and reap the advantages of its enforcement. *Accord Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 238 (S.D.N.Y. 2006); *see also* Complaint ¶¶ 24, ¶¶ 40-45, 48-55 (alleging subsequent conversions and exercises of contract rights to shares, seeking damages, specific performance and attorneys' fees under SPA).

Therefore, Plaintiff has elected to affirm the contract and seek its enforcement. Plaintiff is thus limited to contract damages and cannot circumvent Oxysure's contract defenses by alleging fraud in the inducement.

While Plaintiff is sure to cite cases that claimed to permit actions for fraud in the inducement, in New York such claims are precluded where they seek benefit of the bargain damages obtainable under the contract action—i.e., they are limited to their contract actions where "the fraud claim states nothing more than does the breach of contract claim." *Zinaman v. USTS New York, Inc.*, 798 F. Supp. 128, 134 (S.D.N.Y. 1992). *Accord Orlando v. Novurania of America, Inc.*, 162 F.Supp.2d 220, 225 (S.D.N.Y. 2001) (dismissing fraud claims because "New York's economic loss rule restricts plaintiffs who have suffered 'economic loss,' but not personal or property injury to an action for the benefit of the bargain. ***If the damages are the type remedied in contract, a plaintiff may not recover in tort.***") (emphasis added). That is precisely what Plaintiffs have done here. Indeed, Plaintiff has contracted for the remedies to the very breaches that they now label as "fraud." *Accord Enron Corp*, 2005 U.S. Dist. LEXIS 2134, *42-43.

Therefore, Plaintiff cannot seek to enforce the contract whilst claiming it is vitiated. By seeking to enforce the contract, and acting consistent therewith, they are precluded from seeking to rescind it, and are restricted to claims under the Series B SPA.

## C. Plaintiff has Not Alleged Falsity, Causation or Damages Arising from the Fraud

### 1. Plaintiff Has Not Alleged A Violation of Regulation M, Therefore They Cannot Plausibly Infer that the Alleged Misrepresentation was "False"

The representation alleged to have induced Plaintiff is Compliance with Regulation M. See Series B SPA § 3.1(ff). Plaintiff has not stated a violation of Regulation M. Regulation M only prevents a distribution participant from inducing another to "bid for or purchase a covered security during the applicable restricted period." 17 C.F.R. § 242.102(a). Here, the Complaint does not allege that Oxysure or Mr. Ross induced anyone to enter the market and bid up the price of Oxysure stock or purchase Oxysure's stock. The opposite is true—Plaintiff at best alleged that Mr. Ross requested someone to stay out of the market entirely. The Complaint has thus not alleged a violation of 17 C.F.R. § 242.102(a)'s plain terms. Nor has it alleged the non-applicability of the exceptions to liability as set forth in §§ 242.102(b). Moreover, Reg M specifically allows an issuer to stabilize a market to prevent the stock price from declining. *See* 17 C.F.R. § 242.104(b) ("Stabilizing is prohibited except for the purpose of preventing or retarding a decline in the market price of a security."). Therefore, the Complaint has not set forth a violation of Regulation M in order to claim that the representation of compliance therewith was "false."

### 2. Plaintiff Has Not Alleged a Plausible Theory of Causation or Damages

In addition to the other elements, a plaintiff alleging fraud must also allege facts demonstrating "proximate causation, such that the injury 'is the natural and probable consequence of the defrauder's misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.'" *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104-05 (2d Cir. 2001) (quoting *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir. 1986)).

Here, Plaintiff alleges that but-for the putative noteholder, JSJ, refraining from selling into the market some time before the 2014 transaction closed, the market share price would have been cheaper, and Plaintiff would not have entered the transaction and bought the Series B shares in December 2014. *See* Complaint at ¶¶ 9-11. While Plaintiff never contends what its damages actually are, Plaintiff implies that the "damage" is that now that JSJ finally did sell, Oxysure's shares have gotten cheaper and injured Plaintiff.

The trouble with this line of reasoning is that Plaintiff was made aware of the existence of the other noteholders via the contracts themselves (*see* Series B SPA schedule 3.1(g) (disclosure of outstanding convertible notes holding "on an as-converted basis: 1,190,853 [shares]")); and they had an opportunity to conduct diligence into JSJ's trading intentions.[9] New York law imposes an affirmative duty on sophisticated investors to protect themselves during business acquisitions by obtaining a prophylactic contractual warranty or investigating details of the transaction. *Global Mins. & Metals Corp. v Holmes*, 824 NYS2d 210 [1st Dep't 2006], *lv denied* 8 N.Y.3d 804 (2007). Plaintiff cannot simply rely on imprecise oral representations, or ambiguous oral agreements – they must do due diligence to justify their reliance. *Id*.

The combination of these two facts forecloses any plausible inference of proximate causation stemming from this so-called fraud. Plaintiff knew that the noteholders could convert over a million shares at any time and sell them into the market. And therefore, they should have reasonably expected (if their contention is to be believed) that at *any time*, those sales would have

[9] Plaintiff, a sophisticated investor, has not alleged (as they must) why they could not have uncovered the potential fraud through the exercise of diligence. Cf. *MBIA*, 32 Misc. 3d at 777 ("MBIA's first cause of action for fraud is dismissed. The alleged fraud in the inducement either duplicates the cause of action for breach of contractual representations and warranties in the second cause of action; cannot be maintained because MBIA, a sophisticated business entity, failed either to investigate material facts disclosed in documents admittedly in its possession or obtain contractual warranties; or the alleged misrepresentations were not material or amounted to nonactionable opinions of value or future expectations."). While, Plaintiff could argue that they instead requested the warranty contained in § 3.1(ff), that is precisely why the fraud claim fails and must be brought as a breach of contract claim.

affected Oxysure's market share price negatively. Thus, because Plaintiff purchased the Series B shares with that knowledge, they assumed the risk of Oxysure's shares dropping *whenever those holders converted to common shares and sold into the market*.[10] *Accord, MBIA,* 32 Misc. 3d 758, 776-777 (party that enters contract with knowledge of potential risk "assumes the risk" by foregoing greater due diligence or not seeking proper contract warranties).

Therefore, Plaintiff cannot plausibly allege that a drop in Oxysure's share price constitutes an injury, or is a basis for damages. Plaintiff has thus not plausibly pled proximate causation *or* damages. Their claims must therefore be dismissed. *See Suez Equity Investors, L.P.,* 250 F.3d at 104-05 (failure to plead causation and damages grounds for dismissal of tort claims).

**D. <u>The Fraud and Market Manipulation Claims Fail to Meet Rule 9(b)'s Particularity Requirements</u>**

The Complaint's fraud and market manipulation allegations also fail to meet Rule 9(b). *See* Fed R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud"). The Second Circuit has interpreted Rule 9(b) to require that complaints "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quoting cases).

Additionally, scienter must be sufficiently pled. Conclusory allegations that Mr. Ross "acted with scienter" is simply insufficient and does not satisfy Rule 9(b)'s pleading standards. *See Shields*, 25 F.3d at 1129 ("We have held in the context of securities fraud claims that such

[10] In other words, in the hypothetical alternate universe Plaintiffs posit—the one where Mr. Ross did not send the alleged emails requesting other holders to "stay out of the market," and [assuming arguendo] but for his statement those holders would have sold into the market affecting the market price – in that hypothetical universe, the holders would have sold their shares. Plaintiff posits that that would have resulted in a material reduction in Oxysure's share price (whatever the quantum). But, that cannot be "material" because it is the very risk Plaintiffs assumed when they bought the Series B shares with those convertible notes outstanding. They had full disclosure of the convertible notes or securities already issued, and they had constructive awareness of whether those shares had been sold or not.

allegations are 'so broad and conclusory as to be meaningless.'"). Simply alleging Oxysure's interest in raising capital and not having its stock price drop is likewise insufficient. *Accord Acito v. IMCERA Group*, 47 F.3d 47, 54 (2d Cir. 1995) ("Plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit. If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.").

In the Complaint, there are no allegations – other than merely conclusory ones – that:

- But-for Mr. Ross's email, the recipient of the email was going to sell shares;
- That it is only because of Mr. Ross's email, the recipient stayed out of the market;
- That Mr. Ross or Oxysure offered any sort of quid-pro quo, inducement or punishment to enforce compliance with his suggestion;
- That but-for Mr. Ross' email, the number of shares the holder would have sold, and the price he would have sold them at, would have affected Oxysure's share price;
- That the variation in the prevailing market price was material to the terms of the Series B transaction (they were not);[11]

---

[11] As we discussed previously, the fact that the noteholders' holdings were known to Plaintiff undermines any plausible inference of materiality as well. Consider also that Plaintiff's Series B shares were worth $1000 each, and converted at a value of $0.55. *See* Exhibit B, Certificate of Designation of Series B Shares, § 2 (stated value of preferred shares) and § 6(b) (conversion price). Therefore, as long as Oxysure's shares traded above $0.55, those shares were "in the money." Plaintiff admits that the Series B Shares that Plaintiff purchased in 2013 shared the exact same terms. Moreover, as public information shows, the trading price on the day the 2013 Series B transaction closed ($0.75) was actually *lower* than on December 29, 2014, the day the Series B transaction closed ($0.77), but still higher than the $0.55 conversion price. The Series B shares were "in the money" until June 14, 2015 when Oxysure first traded at $0.54—and have not recovered since—yet, Plaintiff held on to their shares and did not convert out of all of them before then.

Therefore, Plaintiff's blanket conclusory allegation that but-for the manipulation, Oxysure's shares would have traded lower is itself dubious at best. And the notion that Plaintiff would not have bought the Series B Shares in 2014 is implausible given that a year prior they had purchased the same shares when Oxysure was trading $0.04 lower, and they did not sell out of their holdings before June 2015, as Oxysure's when shares trended downward.

- That the price to which Oxysure's Common Stock would have dropped was below any of the lows it had before, such that Plaintiff would have been unwilling to purchase the Series B preferred shares;

- That when Oxysure's price reached that \price point, it was due to the recipient finally selling his shares and not due to factors such as low trading volume, media coverage, short-selling by rogue traders, among other things;

- That Mr. Ross or Oxysure did or offered to purchase shares at a specific price to stabilize the market price and keep "inflated";

- That Mr. Ross or Oxysure placed minimum bids in the market to stabilize the price but failed to disclose same;

- That Plaintiff suffered "damages" and how those damages were reasonably *foreseeable*.

Without particularity on at least most of these issues, Plaintiff has not adequately alleged that Mr. Ross's alleged representations were false, or were made with the requisite scienter, how they allegedly affected the market in any way, what the specific damages attributable to his conduct were, or those damages were foreseeable at the time the statement was made, that any of his alleged representations was the but-for cause of any damages, or that it was the proximate cause of any damages.

## E. <u>The Complaint Fails to Plead 10b-5 Violations Against Either Defendant</u>

### 1. The Standards Applicable to Pleading 10b-5 Violations and Market Manipulation

In order to state a claim under Section 10(b) and Rule 10b-5, Plaintiff must allege that the defendant made 1) a false representation or an omission; 2) of a material fact; 3) with scienter; 4) upon which plaintiffs justifiably relied; and 5) that the false representation or omission was the proximate cause of Plaintiff's damages. *See Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015 (2d Cir. 1989).

For a market manipulation claim, a plaintiff must allege (1) trading activity; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange. *ATSI Communs., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 100-101 (2d Cir. 2007). Plaintiffs must plead both transaction causation (i.e., that the fraud caused the plaintiff to engage in the purchase or sale of the security), and loss causation (i.e., that the conduct caused actual economic harm). *See Bennett v. U.S. Trust Co*., 770 F.2d 308, 313 (2d Cir. 1985).

The Complaint's 10b-5 market manipulation allegations must meet Rule 9(b)'s particularity requirements. *Accord Catton v. Defense Tech. Sys*., 2006 U.S. Dist. LEXIS 205, at *207 (S.D.N.Y., Jan. 3, 2006) (holding that Rule 9(b) requirements apply to 10b-5 claims of market manipulation). These rules are intended to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994). A claim of market manipulation under 10b-5 requires that the Complaint specify with particularity "what manipulative acts were performed, which defendant performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *SEC v. U.S. Envtl., Inc*., 82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000) (quoting *T.H.C., Inc. v. Fortune Pet. Corp.*, 1999 U.S. Dist. LEXIS 4039, at *6 (S.D.N.Y. March 31, 1999)).

"Because a claim for market manipulation requires a showing of scienter, the PSLRA's heightened standards for pleading scienter also apply. Therefore, the complaint must plead with particularly facts giving rise to a strong inference that the defendant intended to deceive investors

by artificially affecting the market price of securities. See 15 U.S.C. § 78u-4(b)(2). This pleading requirement is particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation." *ATSI*, 493 F.3d at 102. "So long as the investor's motive in buying or selling a security is not to create an artificial demand for, or supply of, the security, illegal market manipulation is not established. *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 383, (2d Cir. 1973).

**2. The Complaints Lack Sufficient Factual Allegations to Make Out a Claim for Market Manipulation**

Here, the Complaint putatively alleges a 10b-5 or common law claim based upon the bare-bones claim that "some time" in December 2014, Julian Ross emailed the holder of a convertible note, JSJ, and suggested to him not to convert his shares at that time, or to stay out of the market, for the time being. This is the *entirety of the alleged wrongdoing*. There are many, many shortcomings, which we attempt to distill for the Court's benefit:

***First***, it is important to note that in the catalogue of case law, no case has held that simply requesting someone to stay out of the market for a while—a vague, innocuous, and toothless request—constitutes "market manipulation" sufficient for liability under Rule 10b-5. "Manipulation is virtually a term of art when used in connection with securities markets. The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977).

***Second***, "case law in this circuit and elsewhere has required a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security." *ATSI Communs., Inc.*, 493 F.3d at 100. "In identifying activity that is outside the 'natural interplay of supply and demand,' courts generally ask whether a

transaction sends a false pricing signal to the market." *Id*. The Supreme Court has made clear that a manipulation claim under 10b-5 requires recognized manipulative devises under the securities laws—it is a "term of art" and not a general catch-all. *Santa Fe Indus*, 430 U.S. at 476. "where the sole basis for market manipulation claims is alleged misrepresentations or omissions, ***plaintiffs have not made out a market manipulation claim***[.]" 2006 U.S. Dist. LEXIS 205, *17-18 (emphasis added).[12] *Accord ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1161 (C.D. Cal. 2014) (rejecting manipulation claim based upon allegations that plaintiff "was misled by [defendant]'s statements and assurances regarding the amount of stock it would sell in a given period," and where plaintiff did not allege "that investors in its stock were misled as to the effect of [defendant]'s trading activity"). Here, the sole basis of the market manipulation claim is a false statement in the Series B SPA. Therefore, no manipulation claim has been alleged *ab initio*.

***<u>Third</u>***, courts have routinely found the lack of any detail concerning the specific scheme, timing, and examples of trades insufficient to set out a market manipulation case under Rule 10b-5. *See, e.g., Baxter v. A.R. Baron & Co.,* 1995 U.S. Dist. LEXIS 14882, *19-20, *23-24 (S.D.N.Y. Oct. 6, 1995) (allegations that "defendants inflated the market prices of … securities by misrepresenting the business condition of these companies and refusing to execute customer sell orders which might depress prices" insufficient because they do not set out "how the market in the securities at issue was manipulated with respect to these plaintiffs or how their specific transactions in [the] securities were connected with the alleged manipulative scheme"); *Endovasc Ltd. v. J.P. Turner & Co., LLC*, 2004 U.S. Dist. LEXIS 5075, *47 (S.D.N.Y. Mar. 30, 2004) (rejecting complaint where it "provides nothing more than generalized conclusory allegations of a scheme,

[12] This requirement in the market manipulation jurisprudence comports with the Series B SPA § 3.1(ff)'s representation and warranty of "Regulation M Compliance." Regulation M, as discussed already, strictly looks market activity, not misstatements or omissions.

with a laundry list of terms purporting to identify what manipulative acts were performed" and no "specific instance of trading by any defendant identified with specificity"); *In re Blech Sec. Litig.*, 961 F. Supp. 569, 581 (S.D.N.Y. 1997) (dismissing manipulation claims against codefendant because "Plaintiffs have pleaded no facts linking Jofen directly to any individual "fraudulent" trades on behalf of the Edward Blech Trust and in furtherance of the alleged scheme" but sustaining others because they schemed to "fraudulently trade" and inflate price of stocks).

***Fourth***, there are no allegations – other than merely conclusory ones – that set out the impact of that email on the market for Oxysure's shares or on causation and damages. *Accord Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 642-643 (S.D.N.Y. 2004) (dismissing market manipulation claim because "The general statements noted above do not specify … which securities were manipulated in what way, how such manipulation affected the market for the specific security, and in what way [plaintiff was] harmed by the manipulation"). Furthermore, Plaintiff has not alleged how long the market remained "inflated," when or what event caused the market to "correct," and how that is tied to the alleged manipulative activity. *Catton*, 2006 U.S. Dist. LEXIS 205, *40. It is not enough to merely "allege what the defendants did-beyond simply mentioning common types of manipulative activity," Plaintiff must "state how this activity affected the market" for Oxysure's stock. *ATSI*, 493 F.3d at 104. Where "there is no particular allegation in the Complaint directly supporting the theory that the disclosure or the materialization of the concealed risk led to plaintiffs' loss," then the complaint has not pled market manipulation. *Catton*, 2006 U.S. Dist. LEXIS 205, *41. And it is absolutely fatal to this claim that Plaintiff has not pled a single factual basis for plausibly inferring that JSJ had the ability to alter the market price for Oxysure's shares; that its intended share volume and price would have done so; or that absent JSJ's conversion and sale, it would have sold into the market, driving Oxysure's prices

down. *Accord In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 183 (2d Cir. 2013) (affirming dismissal of market manipulation claim in commodities case for failure to show ability or intent to affect the market price or that activities actually affected price).

***Fifth***, if Plaintiff's implicit contention is that it relied on the *market price* for Oxysure's shares in pricing or purchasing the Series B shares, and that the price of Oxysure's shares was inflated because of the market manipulation, Plaintiff has not actually alleged that theory or its components. Plaintiff has radically under-pled—having omitted factual allegations bridging the Ross email to *a single* market player, JSJ, and the shift (or lack thereof) of the entire market price. *Accord Catton*, 2006 U.S. Dist. LEXIS 205, *20-23 (discussing legal requirements for pleading causation—both transaction and loss causation—in 10b-5 market manipulation case); *Baxter*, 1995 U.S. Dist. LEXIS 14882, *27-28 (dismissing manipulation claims under 10b-5 for failing, *inter alia*, to set forth how alleged manipulative activity caused plaintiff's specific losses). Moreover, Plaintiff has not alleged the basis for deeming the market conditions—e.g., daily volume, coverage, demonstrable market uptake of information, liquidity—sufficient to allege an efficient market such that Plaintiff's reliance on the market price was presumptively reasonable. *Cf. In re UBS Auction Rate Sec. Litig.*, 2010 U.S. Dist. LEXIS 59024, *78 (S.D.N.Y. June 10, 2010) (explaining reasonable reliance requires allegations of "an impersonal, well-developed (i.e., efficient) market").

***Sixth***, even if Plaintiff can overcome the last hurdle, "where (as here) substantial indicia of the risk that materialized are unambiguously apparent on the face of the disclosures alleged to conceal the very same risk, a plaintiff must allege (i) facts sufficient to support an inference that it was defendant's fraud – rather than other salient factors – that proximately caused plaintiff's loss; or (ii) facts sufficient to apportion the losses between the disclosed and concealed portions of the

risk that ultimately destroyed an investment." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005). Plaintiffs knew that the shares were traded over the counter, which is itself inherently risky, and they knew that there were millions of shares held under convertible securities that could be traded at any time. *Accord Catton*, 2006 U.S. Dist. LEXIS 205, *37 (noting inherent risks in pink sheet traded stocks "raise a question as to plaintiffs' reasonableness") (quoting SEC publications). "A party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc*., 343 F.3d 189, 195-196 (2d Cir. 2003). Therefore, Plaintiff has not alleged how it was the fraud, rather than the market,

***<u>Seventh</u>***, the pleading is deficient because 10b-5 claims require that any fraud be "in connection with the sale or purchase of a security." *See* 17 C.F.R. § 240.10b-5. The Complaint never states how Oxysure's email "sometime" in December 2014, sent to JSJ (not to Plaintiff), and sent *before* Plaintiff ever purchased the Series B Shares (and thus, before Oxysure or Mr. Ross would have rendered the subject representation and warranty in § 3.1(ff)) can possibly be characterized as having been "in connection with the sale" by Oxysure of the Series B shares to Plaintiff. *Accord Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972). It defies common sense. Indeed, the timing and content of the email is likewise conspicuously missing. How long JSJ was asked to stay out of the market, and how long JSJ did stay out of the market is never alleged. The Complaint does not state when the email was sent, and the duration of the request is amorphous. Mr. Ross is not alleged to have asked JSJ to stay out of the market until he completed the Series B sale to Plaintiff. Nor is he alleged to have requested that JSJ not sell at or below any certain price that is allegedly material to Plaintiff. Therefore, there are insufficient

allegations to suggest that Mr. Ross's email to JSJ was "in connection" with the Series B share sales to Plaintiff.

***Eight***, Plaintiff's proffered argument that JSJ complied with Mr. Ross's request is bereft of any factual support, and is contrary to common sense. Pleading that JSJ complied with Mr. Ross's request on "information and belief" is simply not enough to meet Rule 9(b). The need for more particularity is especially present where, as here, it makes no sense for JSJ to agree not to sell into the market contrary to its own financial interest. The Complaint nowhere states that Oxysure or Mr. Ross promised JSJ a bonus, or to protect their financial backsides if they did not sell. If it was in JSJ's best interest not to sell at that time, e.g., because it was a rising market, then Plaintiff has failed to set forth even a scintilla of factual support for how their decision not to do so was (a) actually triggered by Mr. Ross, or (b) *detrimental* to Plaintiff.

***Finally***, Plaintiff has yet to plead any support for scienter. Mr. Ross's desire to have his stock price rise is not enough. *Accord Chill v. GE*, 101 F.3d 263, 267 & n.5 (2d Cir. 1996) (holding that a generalized motive that an issuer wishes to appear marketable, which could be imputed to any public for-profit enterprise, was insufficiently concrete to infer scienter)

Without allegations on these issues, Plaintiff has not adequately alleged that Mr. Ross's alleged representations were false, or were made with the requisite scienter, how they allegedly affected the market in any way, what the specific damages attributable to his conduct were, or those damages were foreseeable at the time the statement was made, that any of his alleged representations was the but-for cause of any damages, or that it was the proximate cause of any damages.

**F. The Integration/Merger Clause in the Series B SPA Bars the Fraud and Tort Claims**

The Series B SPA contains Section 5.3 of the Series B SPA, which provides:

> Entire Agreement. The Transaction Documents, together with the exhibits and schedules thereto, contain the entire understanding of the parties with respect to the subject matter hereof and thereof **and supersede all prior agreements and understandings, oral or written, with respect to such matters**, **which the parties acknowledge have been merged into such documents, exhibits and schedules**. (emphasis added)

Plaintiff has alleged fraud in the inducement based upon alleged misrepresentations that, effectively, were merged into the Representation and Warranty in the Series B SPA, § 3.1(ff). To the extent that Plaintiffs may contend that they relied on prior oral representations that were not reduced to writing in the contract, they are contractually estopped from enforcing such reliance—it defeats the purpose of Oxysure's bargaining for this provision and renders it a complete nullity. *Nautilus Ins. Co. v Matthew David Events, Ltd.*, 893 N.Y.S.2d 529, 532 (N.Y. App. Div. 1st Dep't 2010) (courts should not construe agreements so as to render terms a nullity).

Therefore, any prior understandings or representations—regardless of their source—have been "superseded" by the Series B SPA, including section 3.1(ff)'s representation that Oxysure and its agents have complied with Regulation M. *Accord Dunkin' Donuts Franchised Rests. LLC v. Tim & Tab Donuts, Inc.*, 2009 U.S. Dist. LEXIS 83798, *19 (E.D.N.Y., Sept. 15, 2009) (dismissing fraud in the inducement claims based upon complete integration clause in the contract); *UA Theatre Circuit, Inc. v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342, 351 (E.D.N.Y. 2005) ("Based on the integration clause, Plaintiff, a sophisticated corporation, has not alleged, nor can it, that it reasonably relied on any oral representations made by Defendants prior to the execution of the lease, which constitute the sole basis for the fraud claim.").

Thus, to the extent Plaintiffs attempt to broaden the scope of any prior oral representation, they have effectively disclaimed any reasonable reliance thereon to the extent it is contradicted by § 3.1(ff). The whole purpose of such integration and merger clauses is to give certainty, and preclude these types of "he said, he said" coin-toss disputes.

**G. <u>This Court's Prior Ruling Forecloses the Injunction Claims</u>**

On July 16, 2015, this Court rejected Plaintiff Alpha Capital Anstalt's claim(s) for injunctive relief on the grounds that damages are sufficient, and they failed to properly allege irreparable harm. *See* Doc.# 3. Nothing has changed since then and the Complaint fails to set forth *any* of the grounds, much less ones that remedy the Court's finding, for injunctive relief.

Accordingly, injunctive claims in this Complaint are likewise deficient and should be dismissed.

## IV.

## PRAYER FOR RELIEF

Based upon the foregoing, Defendants respectfully request that the Court (1) dismiss Julian Ross entirely from this lawsuit for lack of personal jurisdiction; and (2) dismiss the following claims for relief from the Complaint:

First Claim for Relief – Fraud in the Inducement Against Oxysure (rescission)

Second Claim for Relief – Fraud in the Inducement Against Oxysure (damages)

Third Claim for Relief – Fraud in the Inducement Against Both (damages)

Fourth Claim for Relief – Market Manipulation Against Both (damages)

Fifth Claim for Relief – Breach of Contract [Variable Rate Securities] (injunction)

Seventh Claim for Relief – Breach of Contract [failure to deliver shares] (injunction)

These should be dismissed *with prejudice* because any repleading would be futile.

Respectfully submitted this 4th day of February, 2016.

**STECKLER LLP**

*/s Mazin A. Sbaiti*
**Mazin A. Sbaiti, Esq.**
State Bar No. 4339057
12720 Hillcrest Rd.
Suite 1045
Dallas, Texas 75230
T: (972) 387-4040
F: (972) 387-4041
Mazin@Stecklerlaw.com
***Counsel for the Defendant***

## CERTIFICATE OF COMPLIANCE

This is to certify that I have attempted in good faith to comply with the Court's Chamber Rules regarding motions to dismiss in lieu of an Answer. Our answer was due on January 25, 2016. On January 19, 2016, I sent counsel for Plaintiff, Mr. Ken Zitter, a three-page letter informing him of the general bases of our motion and pointing him to specific authorities. He responded to this letter on or about January 27th, 2016. In a hearing before Judge Gorenstein on February 1, 2016, I was informed that his Chamber Rules would not apply to this motion, and that Judge Marrero's Chamber rules would—thus, I have filed the motion rather than seek a pre-motion conference (Marrero Chamber Rules II(A) ¶ 1 and ¶ 3).

*/s Mazin A. Sbaiti*
Mazin A. Sbaiti, Esq.

**CERTIFICATE OF SERVICE**

This is to certify that on the 4th day of February, 2016, a true and correct copy of the above and foregoing instrument was served via electronic service and/or First Class mail, upon the following counsel of record in accordance with the Federal Rules of Civil Procedure:

Kenneth Zitter
260 Madison Avenue #18
New York, NY 10016
Ph: 212-532-8000
Fax: 212-679-8990

*/s Mazin A. Sbaiti*
Mazin A. Sbaiti, Esq.