United States District Court
Southern District of New York
-------------------------------------------------------------x

Alpha Capital Anstalt and
Osher Capital Partners, LLC,

                         Plaintiff,

        v.                                       15 CV 5443 (VM)(GWG)

Oxysure Systems, Inc. and
Julian Ross,

                         Defendants.

-------------------------------------------------------------x


**Plaintiffs' Reply Memorandum of Law**
**on their Motion for Summary Judgment**


Law Offices of Kenneth A. Zitter
Attorneys for Plaintiffs,
  Alpha Capital Anstalt and
  Osher Capital Partners, LLC
260 Madison Avenue - 18th Floor
New York, New York 10016
212-532-8000

Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Point 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Oxysure Cannot Void Plaintiffs' Purchase of Oxysure Stock . . . . . . . . . . . . . . . . . . . 1

        A.    Any Claim Based Upon Exchange Act §15(a)
               Is Barred By The Statute Of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.    Oxysure Waived Any Claim Of Illegality By
               Failing To Plead It As An Affirmative Defense . . . . . . . . . . . . . . . . . . . 7

        C.    Assuming, *Arguendo*, That Oxysure Has Any Right To
               Rescind The Stock Sales, Any Such Rescission Is Subject
               To Equitable Defenses Which Preclude Any Such Claim . . . . . . . . . . . . . 8

              i.     Oxysure's claims are barred by laches . . . . . . . . . . . . . . . . . . . . . 8

              ii.    Oxysure's claims are barred because
                      it cannot return Plaintiffs' money . . . . . . . . . . . . . . . . . . . . . . . . 9

        D.    Oxysure Has Not Established That A Private
               Right Of Action Exists In the Second Circuit
               For A Violation Of Exchange Act 15(c)(1) . . . . . . . . . . . . . . . . . . . . 10

Point 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Oxysure Violated The SPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Table of Authorities

*Asch v. Philips, Appel & Walden, Inc.*, 867 F.2d 776 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 11

*Brannan v. Eisenstein*, 804 F.2d 1041 (8th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bull v. American Bank and Trust Co. of Pa.*, 641 F.Supp. 62 (E.D. Pa.1986) . . . . . . . . . . . . . 12

*Couldock & Bohan, Inc. v. Societe Generale
Sec. Corp.*, 93 F. Supp. 2d 220 (D. Conn. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*,
2006 WL 2620985  (D. Neb. Sept. 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Denenberg v. Schaeffer*, 137 A.D. 1197, 29 N.Y.S.3d 387 (2d Dep. 2016) . . . . . . . . . . . . . . . .14

*Dodds v. Cigna Securities, Inc.*, 841 F.Supp. 89
(W.D.N.Y. 1994), *aff'd,* 12 F.3d 346 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Drasner v. Thomson McKinnon Sec., Inc.*, 433 F.Supp. 485 (S.D.N.Y. 1977) . . . . . . . . . . . . . 6

*Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357 (5th Cir. 1968) . . . . . . . . . . . . . . . 10

*Found Ventures, LLC v. F2G, LTD.*,
2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Frati v. Saltzstein*, 2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . 10

*Goodman v. Shearson Lehman Bros., Inc.*, 698 F.Supp. 1078 (S.D.N.Y.1988) . . . . . . . . . . . . 12

*Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Domestic Fuel Corp.*, 79 B.R.184 (S.D.N.Y. Oct. 28, 1987) . . . . . . . . . . . . . . . . . . . . . . . 9

*Lawrence v. Richman Grp. of Connecticut, LLC*,
407 F. Supp. 2d 385 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 S. Ct. 616,
24 L. Ed. 2d 593 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Obstfeld v. Thermo Niton Analyzers, LLC*, 108 A.D.3d 658,
969 N.Y.S.2d 516 (2d Dept. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Olsen v. Paine Webber, Jackson & Curtis, Inc.*,
623 F.Supp. 17 (M.D.Fla.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Omega Overseas Partners, Ltd. v. Griffith*,
2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reg'l Properties, Inc. v. Fin. & Real Estate Consulting Co.*,
678 F.2d 552 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir.1988) . . . . . . . . . . . . . . . . . . . . . . 7

*Sheldon v. Vermonty*, 204 F.R.D. 679 (D. Kan. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Shotto v. Laub*, 632 F.Supp. 516 (D.Md.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Travellers International, A.G. v. Trans World
Airlines, Inc.*, 41 F.3d 1570 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States of America v. Krieger*, 773 F.Supp. 580 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . 7

*United States ex rel. Maritime Admin. v. Continental
Illinois Nat. Bank & Trust Co.*, 889 F.2d 1248 (2d Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Webber, Jackson & Curtis, Inc.*, 623 F.Supp. 17 (M.D.Fla.1985) . . . . . . . . . . . . . . . . . . . . . . 12

*Weiss v. Altholtz*, 2011 WL 4538459 (N.D. Ill. Sept. 29, 2011) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Zerman v. Jacobs*, 510 F.Supp. 132(S.D.N.Y.1981)
(Weinfeld, J.), *aff'd*, 672 F.2d 901 (2d Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Federal Rules of Civil Procedure:</u>

Rule 8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Treatises:

5 Wright and Miller, *Federal Practice and Procedure, Civil 3d*, §1278 (2004 ed.) . . . . . . . . . . 7


Securities Exchange Act

§15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 6, 13

§15(a)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 11

§15(c)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§78o(c)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§29(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 8, 11, 13

Preliminary Statement

This memorandum of law is submitted by Plaintiffs Alpha Capital Anstalt ("Alpha Capital") and Osher Capital Partners, LLC ("Osher") in reply to the memorandum of law submitted by Defendant Oxysure Systems, Inc. ("Oxysure") and in further support of their motion for summary judgment pursuant to Rule 56.

Although Oxysure disputes that it has violated the Securities Purchase Agreement ("SPA") and claims that Plaintiffs' investments in Oxysure are somehow void under federal securities laws, Oxysure does not dispute that if those defenses are unavailing (which they are) then Plaintiffs are entitled to the relief which they seek. As hereafter set forth, there is no basis to void Plaintiffs' purchase of Oxysure Series B Convertible Preferred Stock (the "Stock") and Oxysure clearly violated the SPA. Plaintiffs are, therefore, entitled to the relief which they seek.

Argument

Point 1

Oxysure Cannot Void Plaintiffs' Purchase of Oxysure Stock

Defendants argue that summary judgment must be denied because Ari Kluger ("Kluger") was allegedly an unregistered broker/dealer and, therefore, Oxysure's sale of the Series B Stock to Plaintiffs is void pursuant to §29(b) of the Exchange Act (DM, p. 2[1]). Kluger, as Oxysure admits, was working on behalf of Alpha Capital and Osher (Ross Decl., first full para.). Oxysure

---

[1]References to "DM" followed by a page number are references to Defendants' Memorandum of Law.

makes no claim that Kluger made any misrepresentations or otherwise engaged in any wrongful or improper conduct in Plaintiffs' purchase of the Stock. Oxysure makes no claim that Kluger, as an alleged broker/dealer, was in any way representing Oxysure or performed any services for it. Kluger was, at all times, acting at arm's length with Oxysure, representing Osher and, through LH Financial ("LH"), Alpha Capital regarding their potential investment in Oxysure. Oxysure makes no claim that it was in any way harmed by Plaintiffs or Kluger.

Kluger worked for LH, a service company which finds and negotiates potential investments exclusively for Alpha Capital.[2] LH does not perform any services for anyone or any entity other than Alpha Capital. Kluger is the sole owner of Osher. He does not perform services for anyone other than LH and for himself. Neither LH nor Kluger arrange investments, or buy or sell securities, or provide services for anyone else.[3] Oxysure has cited no case law which has ever held that such circumstances require Kluger to register as a broker or dealer.[4] Thus, there is no legal basis for Oxysure, which obtained over the years desperately needed funds by selling Stock to Plaintiffs, to claim for the first time, more than two years after Plaintiffs' initial purchase of the Stock and only after Plaintiffs sued Oxysure for its violations of the SPA, that Kluger was an

---

[2]Kluger Reply Aff., ¶1. The exclusive nature of the LH-Alpha Capital relationship and Kluger's sole ownership of Osher was not set forth in Plaintiffs' moving papers because Kluger's alleged broker/dealer status was raised for the first time in Defendants' answering papers.

[3]Further discovery about Kluger's activities is not needed because it will not reveal that LH or Kluger worked for anyone other than Alpha Capital and, with respect to Kluger, Osher.

[4]With respect to Osher, it makes absolutely no sense to hold that Kluger was acting as a broker, as opposed to an individual investor making investments for his own account, placing the investments in a wholly owned investment vehicle. If Kluger is a broker under those circumstances, then every person who buys and sells stock for his own account is a broker, an obviously incorrect result.

unregistered broker/dealer and, therefore, that the Stock sales are void and thereby keep

Plaintiffs' money.[5]

In any event, even assuming, *arguendo*, that Kluger was required, but failed, to register as

a broker/dealer, there is no basis to void the Stock sales because: i) any claim based upon

Kluger's alleged status as a broker/dealer is barred by the applicable statute of limitations or has

been waived; ii) assuming, *arguendo*, that there is a private right of action in the Second Circuit

for Oxysure to obtain rescission of the SPA, applicable equitable defenses prevent Oxysure from

exercising that right under the circumstances of this case; and iii) Oxysure has not established

that it has a private right of action in the Second Circuit for alleged violations of §15(a)(1) of the

Exchange Act.

A. Any Claim Based Upon Exchange Act §15(a)
   Is Barred By The Statute Of Limitations

Assuming, *arguendo*, that Kluger was an unregistered broker/dealer, and further

assuming, *arguendo*, that Oxysure would therefore have a right to rescind its sale of Stock to

Plaintiffs, any claims for rescission based upon an alleged violation of Section 15(a)(1) of the

Exchange Act must be brought within one year of discovery of the alleged violation and not more

than three years after its occurrence. As the court stated in *Obstfeld v. Thermo Niton Analyzers,*

*LLC*, 108 A.D.3d 658, 658-59, 969 N.Y.S.2d 516, 517-18 (2d Dept. 2013):

> The one-year statute of limitations and three-year statute of repose
> of section 29(b) of the Act apply to implied causes of action to

---

[5]Oxysure has never offered to return to Plaintiffs the purchase price of the Stock which
Plaintiffs still hold, as it is required to do - see p. 9, *infra*. Oxysure has told Plaintiffs that it does
not have the money to make any such return (Kluger Reply Aff., ¶2).

3

> rescind a contract for violation of section 15(a), whether asserted in
> a complaint or as a counterclaim or defense (*see Lampf, Pleva,*
> *Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. at 359, 111
> S.Ct. 2773; *Carter Fin. Corp. v. Atlantic Med. Mgt.,* 262 A.D.2d
> 178, 691 N.Y.S.2d 529; *Weiss v. Altholtz,* 2011 U.S. Dist LEXIS
> 111461; *Celsion Corp. v. Stearns Mgt. Corp.,* 157 F.Supp.2d at
> 947).

In this case, Oxysure, by its own admission, knew, from mid-year 2013 but not later than

December 2013, all of the facts underlying its assertion that Kluger was allegedly acting as a

broker/dealer in Plaintiffs' purchase of Oxysure's Stock.[6] The law is clear that the one year

statute of limitations begins to run when the person making the claim had either actual

knowledge or notice of facts which, in the exercise of due diligence, would have led to actual

knowledge of the violation. As the court stated in *Dodds v. Cigna Securities, Inc.*, 841 F.Supp.

89, 95 (W.D.N.Y. 1994), *aff'd,* 12 F.3d 346 (2d Cir. 1993):

> 'Discovery' within the meaning of the statute, 15 U.S.C.A.
> §78cc(b), quoted in footnote 2, *supra,* is to be determined we think,
> according to an objective standard; that is, 'discovery' means either
> actual knowledge or notice of facts which, in the exercise of due
> diligence, would have led to actual knowledge of the violation.
> *Goldenberg v. Bach and Company*, 270 F.2d 675, 681 (5th Cir.
> 1959) (*citing Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct.
> 582, 585, 90 L.Ed. 743 (1946)). The obligation to exercise
> reasonable diligence is also an essential element of the discovery
> rule, and is the basis for the objective approach to deciding when
> the statute of limitation in a securities fraud action accrues. See
> *Holmberg*, 327 U.S. at 397, 66 S.Ct. at 585 (reasonable diligence
> standard); *Goldenberg*, 270 F.2d at 681 (discovery is to be
> determined by an objective standard); *Mittendorf*, 372 F.Supp. at

---

[6]Ross Decl., first full paragraph. As set forth in both Complaints, Plaintiffs made their first purchase of Stock in December 2013 and another purchase of Stock in December 2014. Alpha still has 175 shares of Stock from its 2013 purchase and 400 shares of Stock from its 2014 purchase. Osher has no Stock remaining from the 2013 purchase and 125 shares from its 2014 purchase. See p. 3 of Plaintiffs' moving Memorandum of Law.

832 (the objective approach has been uniformly applied by Courts
in actions brought under both the 1933 and 1934 Securities Acts).

The elements which, according to Oxysure, determine whether an individual is acting as a

broker/dealer, are set forth at DM p. 7-11. Julian Ross ("Ross"), Oxysure's chief executive

officer, admits to knowing each one of those elements about Kluger prior to the end of December

2013 (Ross Decl., first full paragraph). Using reasonable diligence, Oxysure could have

determined that Kluger was not registered as a broker/dealer. Thus even if Kluger were acting as

a broker/dealer and required to register (which he was not), the statute of limitations for any

claims based upon that fact expired in December 2014, well before this suit was commenced. In

*Weiss v. Altholtz*, 2011 WL 4538459, at *1-2 (N.D. Ill. Sept. 29, 2011), dealing with a claim

based upon a failure to register as a broker/dealer, the court stated:

> Altholtz's failure to register with the SEC was easily discoverable
> by looking at the Financial Industry Regulatory Authority's
> (FINRA) website, which Weiss could have done more than a year
> before the complaint was filed. Because the discovery rule starts
> the clock based on "facts a reasonably diligent plaintiff would have
> known," Altholtz argues that Weiss is barred from bringing a
> claim. R. 51 at 10–11 (citing Merck & Co., Inc. v. Reynolds, ——
> U.S. ——, ——, 130 S.Ct. 1784, 1796, 176 L.Ed.2d 582 (2010)).

The court agreed with Altholtz and barred the claim based upon the one year statute.

Even if Ross, the chief executive officer of a public company which regularly sells its

securities to raise needed capital (Kluger Reply Affirmation, ¶3) alleged was personally

unfamiliar with the broker/dealer registration requirements (Ross Decl., first full paragraph) until

some unspecified date, and such alleged unfamiliarity somehow tolled the statute (which it does

not), Oxysure was represented in the sale of the Stock, both in 2013 and 2014, by Joseph

5

Horzepa, Esq., of Horzepa Spiegel & Associates PC, 802 Lovett Boulevard, Houston, Texas 77006 (Kluger Reply Affirmation, ¶4). Mr. Horzepa's listing in Martindale sets forth securities law as one of his practice areas (Kluger Reply Affirmation, ¶5). Ross makes no claim that his counsel was unfamiliar with the registration requirements. Any claims of illegality, therefore, based upon Kluger's failure to register under Exchange Act §15(a), are barred by the statute of limitations.

Even though Oxysure sold additional Stock to Plaintiffs in December 2014, any right to rescission of that transaction has also expired because more than one year has passed since that sale. Even if the statute had not expired on the 2014 Stock sale (which it has), rescission, in any event, would not be available to Oxysure in connection with that sale because rescission claims can only be brought by "unwilling innocents." *Found Ventures, LLC v. F2G, LTD.*, 2010 WL 3187294, at *7 (S.D.N.Y. Aug. 11, 2010) ("Only an unwilling innocent may seek to rescind a contract under section 29(b)."); *Drasner v. Thomson McKinnon Sec., Inc.*, 433 F.Supp. 485, 502 (S.D.N.Y. 1977) (Section 29(b) may be invoked only by an "unwilling innocent party."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 386-88, 90 S. Ct. 616, 622-23, 24 L. Ed. 2d 593 (1970) ("This language establishes that the guilty party is precluded from enforcing the contract against an unwilling innocent party . . ."). Admittedly having had knowledge since mid-2013 that Kluger was allegedly acting as a broker/dealer, Oxysure was hardly an "unwilling innocent" in dealing with him again in 2014. To the contrary, Oxysure was a willing, anxious and active participant with him to obtain crucial further investments from Plaintiffs.

B.  Oxysure Waived Any Claim Of Illegality By
     <u>Failing To Plead It As An Affirmative Defense</u>

Oxysure claims that the Stock sales are void because they were made in violation of

Exchange Act 15(a)(1). Rule 8(c) of the Federal Rules requires any claim of illegality to be

pleaded as an affirmative defense. Oxysure has failed to do so.[7] The law is clear that the failure to

plead an affirmative defense required by Rule 8(c) results in a waiver of the affirmative defense.

As is stated in 5 Wright and Miller, *Federal Practice and Procedure, Civil 3d*, §1278 (2004 ed.):

> It is a frequently stated proposition of virtually universal
> acceptance by the federal courts that a failure to plead an
> affirmative defense as required by Federal Rule 8(c) results in the
> waiver of that defense and its exclusion from the case; a number of
> cases illustrating the judicial application of waiver for failure to
> plead are cited in the note below;[8]

*United States v. Krieger*, 773 F. Supp. 580, 582-84 (S.D.N.Y. 1991) ("[D]ue to the mandatory

language of Rule 8(c), F.R.Civ.P., failure to plead an affirmative defense such as illegality

generally results in waiver of that defense and its exclusion from the case."). Oxysure's failure to

plead illegality as an affirmative defense, therefore, constitutes a waiver of the claim.

---

[7] Oxysure did not plead illegality as an affirmative defense in its Answer to Alpha Capital's Complaint and again failed to so plead in its Answer to Alpha Capital's Amended Complaint. Oxysure has not filed an Answer to the Osher Complaint.

[8] See also: *Travellers International, A.G. v. Trans World Airlines, Inc*., 41 F.3d 1570, 1579 (2d Cir. 1994) ("Failure to mitigate damages is an affirmative defense and therefore must be pleaded. Fed.R.Civ.P. 8(c). The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver. See *Sellers v. M.C. Floor Crafters, Inc*., 842 F.2d 639, 642 n. 2 (2d Cir. 1988); *United States ex rel. Maritime Admin. v. Continental Illinois Nat. Bank & Trust Co.*, 889 F.2d 1248, 1253 (2d Cir. 1989)).

C. Assuming, *Arguendo*, That Oxysure Has Any Right To
   Rescind The Stock Sales, Any Rescission Is Subject
   <u>To Equitable Defenses Which Preclude Such Claim</u>

Although as hereafter set forth in section D, the Second Circuit has not ruled that there is

a private right of action under §29(b), in those jurisdictions where such a right has been

recognized the law is clear that §29(b) provides only an equitable cause of action for rescission.

Thus any contract subject to that section is not void, as Oxysure argues, without regard to the

consequences. The person invoking that section has a claim for rescission, subject to all equitable

defenses. *Reg'l Properties, Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 557-59,

562-3 (5th Cir. 1982) ("[S]ection 29(b), by implication, does provide a private, 'equitable cause

of action for rescission or similar relief.' . . . we join with virtually all other courts that have

decided this issue and hold that all equitable defenses are available in a section 29(b) cause of

action"); *Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, 2006 WL 2620985, at *6-

10  (D. Neb. Sept. 12, 2006) ("Accordingly, the equitable defenses of laches, estoppel, and *in

pari delicto* are available in opposition to a section 29(b) action.")

   i. <u>Oxysure's claims are barred by laches</u>

Any claim by Oxysure for rescission is barred, as a matter of law, by laches. Oxysure has

waited three years after first dealing with Kluger to assert its claim for rescission. Oxysure easily

could have discovered that Kluger was not a registered broker/dealer by consulting the FINRA

web site. Oxysure suffered no alleged harm as a result of anything done by Kluger, LH, or any of

the Plaintiffs. To the contrary, Oxysure obtained much needed capital infusions from Plaintiffs

who fully performed all of their obligations (Kluger Reply Aff., ¶3) under the SPA. *Cornhusker*

8

*Energy, supra* ("'[T]here is a conspicuous lack of judicial enthusiasm' for rescission when there has been performance by the violator. *Occidental,* 496 F.2d at 1266 "). Oxysure cannot enjoy the benefits of raising capital from Plaintiffs and keeping them available for future potential investments and then, when Plaintiffs, three years later, sue Oxysure for its violation of the SPA, for the first time assert that the Stock sales are void. Oxysure undertook the obligations in the SPA, which it violated, in order to induce Plaintiffs to invest in Oxysure. Under the circumstance, Plaintiffs respectfully submit that laches bar Oxysure's claim for rescission.

ii. Oxysure's claims are barred because it cannot return Plaintiffs' money

Any claim by Oxysure for rescission is also barred, as a matter of law, because Oxysure has not offered to, and cannot, repay Plaintiffs the purchase price for the Stock which remains in their possession. Plaintiffs together hold 700 shares of Stock (Alpha Capital - 575, Osher - 125). Thus Oxysure would need to repay Plaintiffs $700,000 upon any rescission. Oxysure has not offered to and, in any event, cannot do so (Kluger Reply Affirmation, ¶2). It is elementary that the party claiming rescission must repay to Plaintiffs the purchase price for the Stock remaining in Plaintiffs' possession. *In re Domestic Fuel Corp.*,79 B.R.184, 193 (S.D.N.Y. Oct. 28, 1987) ("Even if the most complete right of rescission exists it cannot be exercised without a return or an offer to return such benefits."). Such failure precludes rescission.[9]

---

[9]With respect to that portion of the Stock as to which Plaintiffs took the market risk and sold, that portion of the sale cannot be rescinded because Plaintiffs no longer have that Stock.

9

D. Oxysure Has Not Established That A Private
   Right Of Action Exists In the Second Circuit
   For A Violation Of Exchange Act 15(c)(1)

Oxysure cites no Second Circuit case which holds that there is a private right of action for violation of §15(a)(1).[10] In fact, the Second Circuit has never ruled that such a private right of action exists. *Frati v. Saltzstein*, 2011 WL 1002417, at *6 fn 3 (S.D.N.Y. Mar. 14, 2011) ("While Defendants acknowledge that the Second Circuit has not addressed whether a violation of §15(a)(1) can serve as a predicate for a § 29(b) action for rescission, the Court need not address this question . . .").[11]

The Court should not find such a right in this case for several reasons. First, Oxysure does not appear to be within the class of persons the brokerage registration rules are designed to protect. *Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357, 362 (5th Cir. 1968) ("However, the Act requires only that appellants be in the class of persons whose interest the Act was designed to protect.").[12] It is undisputed that the relationship between Kluger and Oxysure was arm's length and that Kluger performed no broker or dealer or any other services for Oxysure. It would be a strange result if Oxysure could then seek to rescind a transaction based

---

[10]The only Second Circuit case cited by Oxysure is *Boguskavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) cited in footnote 20 in its Memo of Law. That case addressed the sufficiency of pleading, not whether such private right of action is available. In remanding the case, the court stated, "We do not, of course, express an opinion as to the merits of Boguslavsky's claims."

[11]Although some district court cases have so held, the Second Circuit has not. See *Lawrence v. Richman Grp. of Connecticut, LLC*, 407 F. Supp. 2d 385, 391 (D. Conn. 2005; *Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220, 231 (D. Conn. 2000).

[12]The case is from the Fifth Circuit which, as noted above, recognizes a private right of action.

10

upon the status of a person who performed no broker or dealer services for it. Oxysure does not claim that it retained Kluger to sell its securities. The presence of an alleged unregistered broker or dealer cannot permit everyone associated with the transaction to have a right of rescission.

Second, it appears that under the circumstance of this case where the SPAs are not themselves illegal and their performance involve no illegal acts, that there is no such private right of action. *Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777-78 (2d Cir. 1989) ("We therefore hold that section 15(c)(1) of the 1934 Securities Exchange Act, 15 U.S.C. § 78o(c)(1), does not implicitly create a private cause of action."); *Zerman v. Jacobs*, 510 F.Supp. 132, 135 (S.D.N.Y. 1981) (Weinfeld, J.), *aff'd,* 672 F.2d 901 (2d Cir. 1981) ("Under section 29(b), 'only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts. There is no suggestion that the basic customer agreement plaintiff signed is not lawful.'"); *Frati v. Saltzstein, supra,* at *6 ("There is, however, no reason to believe that the contracts themselves could not be legally performed - a fact which is fatal to Plaintiffs' claims [alleging failure to register as broker-dealers under §15(a)(1) of the Exchange Act]."); *Omega Overseas Partners, Ltd. v. Griffith,* 2014 WL 3907082, at *4-5 (S.D.N.Y. Aug. 7, 2014) ("Accordingly, the Court finds that § 215(b)—like § 29(b)—voids only contracts that are made illegally or require illegal performance.").

In *Sheldon v. Vermonty*, 204 F.R.D. 679, 684-85 (D. Kan. 2001), the court  collected all the cases in which courts have found no private right of action under §15(a) (gathered in the footnote[13]) and set forth the reasons why no private right of action is appropriate:

---

[13]*Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1578 (9th Cir. 1990) (holding that section 15 in general does not create private cause of action); *Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777 (2d Cir. 1989) (holding that section 15(c)(1) does not create a private

11

In fact, no court considering the issue since the Supreme Court articulated the test for implying a cause of action in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), has recognized a private cause of action under section 15.

      This Court agrees with the overwhelming majority of courts which have held that neither section 15(a)(1) nor 15(c)(1) of the Exchange Act provides for a private right of action. As the Supreme Court has made clear, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). The issue of whether a statute creates a cause of action, either expressly or by implication, is a matter of statutory construction. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). When the statute does not expressly provide for a private remedy, the Court must determine whether there is an indication of Congressional intent to create a private cause of action. *Id; Southwest Air Ambulance v. City of Las Cruces,* 268 F.3d 1162, 1169 (10th Cir. 2001).

      Section 15 does not expressly provide for any private cause of action. . . . This Court also finds no Congressional intent to create a private remedy under section 15(a)(1). Again, the legislative history is silent. Also, the Court finds it significant that various subsections of section 15 provide for action by the Securities Exchange Commission relating to the registration of brokers and dealers. The fact that Congress provided for means by which violations of various provisions of section 15 are to be enforced weighs heavily against any suggestion that Congress might have intended to create a private right of action against a broker or dealer who failed to properly register in violation of the statute.

      In light of the above, the Court holds that Plaintiff's

---

cause of action and stating that there is "little or nothing else to indicate that Congress intended to create such a remedy"); *Brannan v. Eisenstein,* 804 F.2d 1041, 1043 n. 1 (8th Cir. 1986) (affirming district court's dismissal of claim because section 15 does not confer a private right of action); *Goodman v. Shearson Lehman Bros., Inc.,* 698 F.Supp. 1078, 1086 (S.D.N.Y. 1988) (refusing to recognize civil cause of action under section 15(a)(1)); *Bull v. American Bank and Trust Co. of Pa.,* 641 F.Supp. 62, 65 (E.D.Pa. 1986) (dismissing section 15(a)(1) claim because no private right of action recognized); *Shotto v. Laub,* 632 F.Supp. 516, 518 n. 2 (D.Md. 1986) (dismissing section 15(c)(1) claim because no private cause of action recognized); *Olsen v. Paine Webber, Jackson & Curtis, Inc.,* 623 F.Supp. 17, 18 (M.D.Fla. 1985) (same).

proposed section 15 claim does not state a claim upon which relief
can be granted.

Absent a private right of action, there is no basis for any claim under §15(a) or §29(b).


Point 2

Oxysure Violated The SPA

Oxysure argues (DM 13-15) that its sale of admittedly variable rate securities did not

violate the SPA because: a) any promissory notes they issued were for less than $200,000 and,

therefore, did not violate the terms of the SPA; b) Oxysure allegedly offered Plaintiffs a chance to

participate in the Series C Stock, and, therefore, the issuance of such stock did not violate the

SPA; and iii) Oxysure's failure to file a Form 10K is not a claim asserted in the Complaint. In any

event, Oxysure was excused from such filing because of "impossibility' or "impracticality' (DM

p. 2-3, 13-25). None of those arguments are correct and none of those arguments constitute a

defense to Plaintiffs' summary judgment motion.[14]


Oxysure's arguments are incorrect because:

i) Oxysure undisputedly issued convertible debt on February 19, 2015 in the amount of

$236,000 (Exhibit D to Zitter moving affirmation). Thus its defense that debt issuances under

---

[14]Although Oxysure argues that the fact that Plaintiffs' did not allege such failure to file
in the Complaint renders summary judgment inappropriate (DM p. 25), the failure to file
occurred just six days before this motion was brought and continues through today (Kluger Reply
Aff., ¶6). Oxysure claims that impossibility or impracticality of performance would excuse the
failure to file, citing the Ross Decl. (DM p. 25 notes 92 and 93). There is simply nothing in the
Ross Decl. which sets forth any basis for an impossibility defense.

13

$200,000 do not violate the SPA is unavailing because it issued debt in excess of that amount.

ii) Although Oxysure argues that it is permitted under the SPA to incur debt less than $200,000 (DM p. 13-14), issuances of variable rate securities, including variable rate debt, in any amount is prohibited.  Any argument claim that the prohibition on the issuance of variable rate securities does not include variable rate debt issuances in any amount simply misreads the SPA. The clear language of the SPA, cited at p. 3-4 of Plaintiffs' moving brief, explicitly so provides.

Oxysure's argument that it was understood between and among the parties that Oxysure could continue its alleged practice of issuing small denomination convertible notes (Ross Decl., ¶2) is simply belied by ¶5.3 of the SPA, a merger clause which provides that the SPA contains the entire understanding of the parties and supersedes all prior agreements and understandings. Oxysure's claim of prior agreements or understandings which contradict the terms of the SPA is, therefore, unavailing. *Denenberg v. Schaeffer*, 137 A.D.3d 1197, 29 N.Y.S.3d 387, 388 (2d Dept. 2016) ("[P]laintiff is precluded, by a merger clause contained in that writing, from presenting evidence of an alleged prior oral agreement between the parties regarding the same subject matter.").

iii) Oxysure's argument that the debt exemption of $200,000 allowed it to incur unlimited debt, as long as no single debt obligation exceeded $200,000 (DM 13-15) is simply not correct The $200,000 limitation is contained in ¶3.1(z) of the SPA. Oxysure represents that it is solvent and that it will not incur debts beyond its ability to repay them. For purposes of that solvency representation, the parties agreed that Oxysure could incur up to $200,000 in debt. Oxysure's position that ¶3.1(z) allows it to incur unlimited debts as long as each debt is less than $200,000 makes no sense in the context of that representation relating to Oxysure's solvency. Oxysure

14

clearly incurred debts well in excess of $200,000 (Exhibit D to Zitter moving Aff.). It is in default under the SPA.

iv) Oxysure argues that the issuance of the Series C Stock did not violate the SPA because Oxysure offered to allow the Plaintiffs to participate in that issuance, which they declined to do (DM p. 18-24). The SPA does not provide that offering Plaintiffs the opportunity to participate in a financing exempts Oxysure from issuing variable rate securities which do not otherwise comply with the terms of the SPA. The provisions of the SPA are unambiguous, consistent and make sense. Oxysure had to offer the Plaintiffs the right to participate in the issuance of the Series C Stock. Whether or not Plaintiffs participated, the SPA did not permit Oxysure to issue stock at a price lower than called for in the SPA, which it did. Oxysure presents no contemporaneous emails or other documents to support its novel interpretation of the SPA, which would, in any event be barred by the merger clause. Oxysure's issuance of the Series C Stock violated the SPA.

v) Oxysure's failure to file its Form 10K occurred until after the Complaints were filed (DM p. 25-26). There is no dispute that Oxysure was obligated, but failed, to file that Form. Oxysure provides no details of why filing that Form was impossible. Thus Oxysure is in default for failing to file the Form 10K.It has set forth no facts which establish any defense to that claim.

<u>Conclusion</u>

For the foregoing reasons, and for the reasons set forth in Plaintiffs' moving papers, the Court should grant summary judgment, as requested.

15

Law Offices of Kenneth A. Zitter

By _____

    Kenneth A. Zitter, Esq.
    Attorneys for Plaintiffs
      Alpha Capital Anstalt and
      Osher Capital Partners, LLC
    260 Madison Avenue, 19th Floor
    New York, New York 10016
    (212) 532-8000
    KAZ-3195

16