```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ALPHA CAPITAL ANSTALT, et al.,      :
                                    :
                    Plaintiff,      :
                                    :
        - against -                 :       15-CV-5443 (VM)
                                    :
OXYSURE SYSTEMS, INC., et al.,      :       DECISION AND ORDER
                                    :
                    Defendants.     :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Alpha Capital Anstalt ("Alpha Capital") and Osher Capital Partners, LLC ("Osher Capital,") (collectively "Plaintiffs") brought this action against defendants Oxysure Systems, Inc. ("Oxysure") and Julian Ross ("Ross") (collectively "Defendants"), alleging that Defendants breached the terms of the Securities Purchase Agreement ("SPA") entered into by the parties. (Dkt. Nos. 1, 40.) Plaintiffs now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). (Dkt. Nos. 73-76.) Upon review of the record, the Court finds that Plaintiffs have not satisfied their burden of demonstrating the absence of any genuine issue of material fact that the SPA prohibited the issuance of the Series B Convertible Stock (the "Convertible Notes") or the C, D and E and Stock. Accordingly, Plaintiffs' motion is DENIED.

## I. BACKGROUND

A. Plaintiffs' Motion for Summary Judgment

Alpha Capital's Amended Complaint ("Complaint," See Dkt. No. 40) alleges that Oxysure breached the SPA by: (1) incurring indebtedness over $200,000 and (2) issuing Series C, D and E stock (the "C, D and E Stock"). Alpha Capital seeks the following damages: (1) a preliminary and permanent injunction; and (2) damages resulting from the breach of contract; and (3) attorneys' fees.

Osher has also filed a complaint in a related action pending before this Court. ("Osher Complaint," Case No. 15-cv-9594, See Dkt. No. 1.) The Osher Complaint alleges that Oxysure breached the SPA by: (1) incurring indebtedness over $200,000; (2) issuing the C, D and E stock; and (3) preventing Osher from participating in subsequent financing. Osher asserts claims for: (1) fraud in the inducement against Oxysure; (2) fraud in the inducement against Defendants; (3) fraud in the inducement against Defendants; (4) market manipulation against Defendants; (5) breach of contract for the sale of variable rate securities against Oxysure; (6) breach of contract for the sale of variable rate securities against Defendants; and (7) breach of contract for failure to deliver shares against Oxysure. Osher requested the following

2

damages: (1) rescission of the contract; (2) rescissionary damages; (3) damages for fraudulently inducing Osher to enter into the SPA; (4) damages resulting from the market manipulation; (5) a preliminary and permanent injunction; (6) damages for breach of contract; and (7) attorneys' fees. Alpha Capital's and Osher's cases were consolidated for all purposes. (See Dkt. No. 49.)

Oxysure improperly filed a motion to dismiss Osher's Complaint without first submitting pre-motion correspondence to the Court pursuant to the Court's Individual Practices. (See Dkt. No. 60.) Plaintiffs responded with a Motion for a Preliminary Injunction that Oxysure opposed. (See Dkt. No. 66.) The Court thereafter held a telephone conference with all parties and directed them to submit a briefing schedule for a Motion for Summary Judgment and expedited discovery, if needed. (See Dkt. Minute Entry dated April 7, 2016.) Because the pending Motion to Dismiss and Motion for a Preliminary Injunction thus became moot, the Court subsequently terminated them. See id.

In response to the Court's order, Plaintiffs filed the instant Motion for Summary Judgment. ("Motion," See Dkt. No. 73.) They argue that: (1) Oxysure issued variable rate securities in violation of the SPA by issuing three

3

convertible notes whose conversion price varied with the market price of Oxysure's common stock; (2) Oxysure issued securities exceeding the $200,000 cap on indebtedness contained in the SPA; and (3) Oxysure failed to file its Form 10Ks ("Form 10K") in accordance with the Securities Exchange Act of 1934 (the "Exchange Act"). See id. Defendants' opposition ("Response," See Dkt. Nos. 78, 79.) argues that: (1) Ari Kluger ("Kluger"), Osher's agent who negotiated the financing agreements between Alpha Capital, Osher and Oxysure, is not registered as a broker-dealer, making the SPA void and unenforceable under federal law; (2) the transactions disputed by Plaintiffs were merely indebtedness instruments allowed under the SPA; (3) the stock issuances did not violate the Series B Shares' Terms because Plaintiffs knew about the transaction prior to closing and neither objected nor asked to participate; (4) Plaintiffs have put forth no evidence of injury, damages, or causation; (5) none of Plaintiffs' rights under the Series B Stock were impaired by the Series C Transactions because Oxysure followed the procedural requirements of the SPA; (6) the Court should not read the SPA as a restrictive covenant because doing so would be contrary to public policy; and (7) Oxysure's failure to file a Form 10(k) has never been plead and therefore must be

4

dismissed. Neither party appears to have engaged in expedited discovery in the course of briefing this Motion. (<u>See</u> Dkt. No. 77 at 12.)

B.   <u>Provisions of the SPA in Dispute</u>

There are three relevant provisions of the SPA in dispute. First, Section 4.13 ("Section 4.13") of the SPA, titled "Subsequent Equity Sales," places restrictions on the types of instruments Oxysure could subsequently issue. Section 4.13 states in relevant part:

> [T]he Company will not, without the consent of Purchasers . . . issue nor agree to issue any common stock, floating or Variable Priced Equity Linked Instruments nor any of the foregoing or equity with price reset rights . . . (collectively, the "Variable Rate Transaction"). For purposes hereof . . . "Variable Priced Equity Linked Instruments" shall include: (A) any debt or equity securities which are convertible into, exercisable or exchangeable for, or carry the right to receive additional shares of Common stock either (1) at any conversion, exercise or exchange rate or other price that is based upon and/or varies with the trading prices of or quotations for Common Stock at any time after the initial issuance of such debt equity security, or (2) with a fixed conversion, exercise or exchange price that is subject to being reset at some future date at any time after the initial issuance of such debt or equity security due to a change in the market price of the Company's Common Stock since the date of initial issuance . . . [T]he Company will not . . . issue any Common Stock or Common Stock Equivalents, if such issuance . . . would be at an higher effective price per share of Common Stock less than the higher of the Conversion Price or Warrant Exercise Price in effect at the time of such lower issuance . . . or would be issued or made on terms more favorable to such other holder or

5

recipient than the Purchaser, with respect to the terms of the offering pursuant to the transaction documents.

(See Dkt. No. 75, Ex. 1.)

Second, Section 4.17 ("Section 4.17"), titled "Participation in Future Financing," mandates that Oxysure allow Plaintiffs to participate in any future financing. Section 4.17 states in relevant part:

> Subject to the rights granted to the Purchasers . . . each Purchaser shall have the right to participate in up to an amount of the Subsequent Financing equal to 100% of the Subsequent Financing on the same terms, conditions and price provided for in the subsequent financing . . . At least seven Trading Days prior to the closing of the Subsequent Financing, the Company shall deliver to each Purchaser a written notice of its intention to effect a Subsequent Financing, which Pre-Notice shall ask such Purchaser if it wants to review the details of such financing[.]

(See Dkt. No. 75, Ex. 1.)

Third, Section 3.1(z) ("Section 3.1(z)"), titled "Solvency," defines the word "Indebtedness" and describes the levels of indebtedness that Oxysure can borrow in the future. Section 3.1(z) states in relevant part:

> For the purposes of this Agreement, "Indebtedness" means (x) any liabilities for borrowed money or amounts owed in excess of $200,00 other than debt financing from a licensed United States bank regularly engaged in such lending activity which may include the issuance of a nominal amount of warrants or options exercisable at or above the Conversion Price which would then be in effect, and (y) all guaranties, endorsements and other contingent obligations in respect of indebtedness of others, whether or not the same are or should be

6

> reflected in the Company's balance sheet (or the notes thereto), except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business, but in all cases excluding trade accounts payable incurred by the Company and its Subsidiaries in the ordinary course of business; and (z) the present value of any lease payments in excess of $200,000 due under leases required to be capitalized in accordance with GAAP.

(See Dkt. No. 75, Ex. 1.)

## II. DISCUSSION

A. LEGAL STANDARD

Summary judgment is appropriate if the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this assessment, the Court looks to the relevant substantive law to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To survive summary judgment, the disputed factual issues must also be "genuine" -- that is, "sufficient evidence [must] favor[] the nonmoving party for a jury to return a verdict for that party." Id. at 249. The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there

7

are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. See Celotex Corp., 477 U.S. at 323. If the moving party satisfies its burden, the nonmoving party must provide specific facts showing that there is a genuine issue for trial in order to survive the motion for summary judgment. See Shannon v. New York City Transit Auth., 332 F.3d 95, 98-99 (2d Cir. 2003). In determining whether the moving party is entitled to judgment as a matter of law, the court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). Although the party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), if there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party that supports a finding that a material factual dispute exists, summary

8

judgment is improper. See Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996).

B.      APPLICATION

    1.     Defendants' Affirmative Defense

First, in response to Plaintiffs' allegations, Defendants assert that the SPA is void and unenforceable under federal law because Kluger, the principal who negotiated the agreements, was an unregistered broker-dealer. Section 15(a) of the Exchange Act states that it is "unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C. Section 78o(a)(1). Section 29(b) of the Exchange Act further states that a "contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void[.]" 15 U.S.C.

Section 78cc(b). Although there are exemptions from this rule for certain types of securities, Regulation D offerings like those at issue here are not exempt. See 15 U.S.C. Section 78(c)(12)(vii); 17 C.F.R. Section 240-15a-6.

While the Second Circuit has yet to address whether a violation of Section 15 of the Exchange Act can give rise to a private action for rescission of a contract under Section 29(b) of the Exchange Act, the Court need not reach that question here because Defendants are barred by the applicable statute of limitations from raising this claim.

There is a one-year statute of limitations for any implied cause of action under Section 29(b) of the Exchange Act. See, e.g., Ceres Partners v. GEL Associates, 918 F.2d 349, 358-359 (2d Cir. 1990). The one-year statute of limitations runs from the time when an individual "could have, through the exercise of reasonable diligence, discovered the fraud" at issue. Dodds v. Cigna Sec., Inc., 841 F.Supp. 89, 92 (W.D.N.Y. 1992). Ross, the CEO of Oxysure, submitted a declaration in conjunction with Defendants' Response stating that while completing the first transaction in December 2013 with Kluger he "did look up Mr. Kluger, LH Financial and Osher Capital on the FINRA Broker Check system, and none [was] listed as being a licensed Broker Dealer." (Dkt. 79 at 1.) He

10

further stated that "at the time [he] was not as familiar as [he] is now with the registration requirements under the securities laws." (Id.)

"[I]gnorance of the law alone" does not toll statutes of limitations. Sanders v. Chappius, No. 12-cv-3339, 2012 WL 6756238, *6 (S.D.N.Y. Nov. 9, 2012); Pizarro v. New York State, No. 07-cv-2845, 2007 WL 2769484, at *2, (E.D.N.Y. Sept. 21, 2007). As Defendants admit that they were aware that Kluger was not a licensed broker-dealer in December 2013, the one year statute of limitations began running no later than December 2013. Thus, Defendants are barred from raising any defense based on an implied right of action under Section 29(b) of the Exchange Act.

2. Defendants' Issuance of Convertible Notes

Plaintiffs' argue that Oxysure's issuance of the Convertible Notes on January 12, February 15, and March 19, 2015, with a total principal value of $536,000 for $495,000 in cash, violated Section 4.13's restriction on the issuance of variable rates securities. The Convertible Notes were convertible at a price that varied with the market price of Oxysure common stock.

However, interpreting Section 4.13's ban on variable rate transactions in this way conflicts with both Section

11

3.1(z) and Section 4.17 of the SPA. Section 3.1(z) clearly contemplates that Oxysure may issue certain instruments to raise money as it states that indebtedness under $200,000 in value would be allowable under the SPA. This provision also considers that Oxysure may need to issue convertible instruments to raise money, as the clause explicitly states that the acceptable debt instruments "may include the issuance of a nominal amount of warrants or options exercisable at or above the Conversion Price which would then be in effect[.]" (Dkt. No. 75, Ex. 1.)

Furthermore, Section 4.17 contemplates the issuance of "common stock, common stock equivalents for cash consideration, Indebtedness or a combination thereof" as long as Plaintiffs were given the opportunity to participate in such financing. (Dkt. No. 75, Ex. 1.) It is inconsistent for the SPA to simultaneously prohibit such transactions and allow them, as long as Plaintiffs have the first chance to fund those transactions. The result of this inconsistency is ambiguity regarding the interpretation of the SPA, and what the parties intended to allow regarding the issuance of future stock or debt instruments.

"[W]here the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be

12

considered." JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009). The "meaning of the ambiguous contract is a question of fact for the factfinder." Id. While Plaintiffs correctly note that Section 5.3 of the SPA contains a merger clause, the "general effect of a merger clause is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing." Schwarz v. ThinkStrategy Capital Mgmt. LLC, No. 9-cv-9346(PAE), 2012 WL 2026365, at *17 (S.D.N.Y. May 31, 2012). Here, extrinsic evidence is needed to clarify the meaning of allowable "indebtedness" as compared to the restricted "variable rate transactions" rather than augment the terms of the contract.

Oxysure submitted evidence, including a declaration from Ross, that Plaintiffs knew that Oxysure depended on small-sized convertible debt instruments to survive. (See Dkt. No. 79.) Plaintiffs contend that they did not intend to allow the issuance of these convertible debt instruments. At the summary judgment stage all ambiguities must be resolved "in favor of the party against whom summary judgment is sought." Major League Baseball Properties, 542 F.3d at 309. Bearing this standard in mind, there are sufficient open questions regarding the meaning of the SPA with respect to the

13

restrictions on the issuance of convertible debt instruments such that summary judgment regarding the issuance of the Convertible Notes would be inappropriate.

3.  Defendants' Series C, D and E Issuances

Plaintiffs argue that Oxysure's issuance of C, D and E stock on June 30, 2015 violated Section 4.13's restriction on issuance of stock. Defendants contend that reading Section 4.13 in conjunction with Section 4.17 makes Plaintiffs' proposed reading nonsensical.

It is a "fundamental rule of contract construction that specific terms and exact terms are given greater weight than general language" and that "specific words . . . limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." See Aramony v. United Way of America, 254 F.3d 403, 413-414 (2d Cir. 2003). Section 4.13 has broad, general language that indicates Plaintiffs could bar the issuance of stock ("except as may be issued to the Purchasers pursuant to this Agreement the Company will not issue or reissue any Preferred Stock") (Dkt. No. 75, Ex. 1.), but Section 4.17 includes detailed instructions mandating that, when Defendants intend to raise more capital by issuing stock,

14

they must give Plaintiffs' at least seven days' notice and allow them to participate, if they so desire. These two provisions contradict one another. Plaintiffs would not need to have such lengthy provisions to ensure they get proper notice of all transactions if Section 4.13 acted as an affirmative bar of those transactions without the approval of Plaintiffs.

Furthermore, Oxysure attached e-mails illustrating that it complied with all of the provisions of Section 4.17 by providing Kluger and Plaintiffs with adequate notice of the sale of the C, D, and E stocks and offering them the opportunity to participate. (See Dkt. No. 80, Ex. 1.) There is no evidence that Plaintiffs objected after receiving the notice via e-mail until the commencement of this action.

In any event, even if the SPA did affirmatively bar Oxysure from raising any further capital without Plaintiffs' approval, that provision may violate public policy. Oxysure is a Delaware corporation, and Delaware's corporate governance rules mandate that "business and affairs of every corporation . . . shall be managed by or under the direction of the board of directors." 8 Del. C. Section 141(a); Burghart v. Landau, 821 F. Supp. 173, 179 (S.D.N.Y. 1993)("The generating principal of the Delaware Corporation law is that

15

the management of the business affairs of a corporation is posited in the hands of the board of directors."). Delaware law "does not permit actions or agreements by stockholders which would take all power from the board to handle matters of substantial management policy." Abercrombie v. Davis, 123 A.2d 893, 899 (Del. Ch. 1956), rev'd on other grounds, 130 A.2d 338 (Del. 1957).

Under Plaintiffs' interpretation of the SPA, Oxysure would be prevented from raising capital exceeding the $200,000 indebtedness allowance if the company needed it. This reading of the SPA would give Plaintiffs, shareholders only, substantial control of the company, including Oxysure's ability to finance its undertakings. Reading the SPA this way would violate public policy. See Restatement (Second) of Contracts Section 193 ("[A] promise by a fiduciary to violate his fiduciary duty or a promise that tends to induce such a violation is unenforceable on grounds of public policy.").

In light of the substantial ambiguity regarding the correct interpretation of the SPA, and because Plaintiffs' proposed reading would render the SPA void on public policy grounds, Plaintiffs have failed to meet their burden of demonstrating the absence of any genuine issue of material

16

fact that the SPA prohibited the issuance of the C, D and E and Stock.

4. <u>Defendants' Failure to File a Form 10K</u>

Plaintiffs further allege in the Motion that Oxysure failed to file its 2015 Form 10K as required under Section 15 of the Exchange Act. While neither party disputes that Oxysure was required to file the form and failed to meet that requirement, Plaintiffs did not make any allegations in the Complaint regarding Oxysure's failure to file a Form 10k.

A court "cannot grant summary judgment regarding a [] claim if the plaintiffs have failed to plead the claim in the Complaint." <u>Condova v. Larson</u>, No. 3-96-cv-2111, 1997 WL 280496, at *2, n. 1 (D. Conn. April 30, 1997); <u>Davis v. New York City Health and Hosps. Corp.</u>, 508 Fed. Appx. 26, n.1 (2nd Cir. 2013); <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Angel Constr. Grp., LLC</u>, No. 08-cv-1672, 2010 WL 3463190 (E.D.N.Y. August 30, 2010)(Denying summary judgment because plaintiffs did not plead the claim in their complaint.) As Plaintiffs have not moved to further amend the Complaint to include facts alleging that Oxysure failed to file its Form 10(k), this Court cannot grant summary judgment on this ground.

17

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. Nos. 73-76) of Plaintiffs Alpha Capital Anstalt ("Alpha Capital") and Osher Capital Partners, LLC ("Osher")(collectively "Plaintiffs") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") is **DENIED**.

**SO ORDERED.**

Dated:   New York, New York
         November 2 2015

                                    Victor Marrero
                                       U.S.D.J.

18