**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **ALPHA CAPITAL ANSTALT,**<br>**OSHER CAPITAL PARTNERS,**<br><br>***Plaintiff,***<br><br>***v.***<br><br>**OXYSURE SYSTEMS, INC. et al.**<br><br>***Defendants.*** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No. 15-cv-005443**<br>**(Ref Case 1:15-cv-09594)** |

**DEFENDANT ROSS'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

**I.**

**ANSWER**

Defendant Julian Ross ("Ross") respectfully submits this Original Answer and Affirmative Defenses.

THE PARTIES

1. Plaintiff Osher Capital Partners, LLC ("Osher") is a New York Limited Liability Company with its principal place of business in Rockland County, New York.

**Defendant does not have sufficient information to admit or deny this allegation, but takes the allegation at face value.**

2. Defendant Oxysure Systems, Inc. ("Oxysure") is a Delaware corporation with its principal place of business in Frisco, Texas.

**Defendant Ross admits that Oxysure is a Delaware corporation and had its principal place of business in Frisco, Texas until prior to the filing of its bankruptcy.**

3. Defendant Julian Ross ("Ross") is an individual who, upon information and belief, is citizen of the State of Texas. At all relevant times, Ross was the Chief Executive Officer of Defendant Oxysure who signed all of the documents hereafter referred to on behalf of Oxysure.

**Admit.**

JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**Defendant does not contest subject matter jurisdiction.**

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated and it is the exclusive district in which Osher and Oxysure agreed that the claims hereafter set forth can be brought.

**Defendant denies that this court has proper venue nor that the court has personal jurisdiction over Defendant Julian Ross.**

FACTS COMMON TO ALL CLAIMS

6. On or about December 26, 2013, Osher purchased 75 shares of Oxysure Series B Convertible Preferred Stock (the "Series B Stock") for $75,000. The Preferred Stock was convertible into shares of Oxysure common stock. Osher also received, in connection with the Series B Stock, warrants (the "2013 Warrants") to purchase additional shares of Oxysure

common stock.

**Defendant denies this allegation to the extent it uses the verb "purchased." Ross admits that Osher received Series B Stock and 2013 Warrants in 2013.**

7. On December 29, 2014, Osher purchased an additional 125 shares of the Series B Stock for $125,000. The additional Preferred Stock was convertible into shares of Oxysure common stock. Osher also received, in connection with the additional Series B Stock, warrants to purchase 227,273 additional shares of Oxysure common stock (the "2014 Warrants"). The 2013 Warrants and 2014 Warrants are together referred to as the "Warrants". Osher purchased the Series B Stock and Warrants pursuant to the terms of the 2013 and 2014 Securities Purchase Agreements, whose terms were identical in all material respects and, except as otherwise specified, will together be referred to as the "SPA". The Series B Stock is governed by the Certificate of Designation filed by Oxysure with the Delaware Secretary of State on or about December 20, 2013 and the Amended Certificate of Designation filed by Oxysure with the Delaware Secretary of State on or about December 24, 2014. The terms of the Certificate of Designation and the Amended Certificate of Designation are identical in all material respects and, except as otherwise specified, will together be referred to as the "Certificate of Designation".

**Defendant denies this allegation to the extent it uses the verb "purchased." Defendant admits that Osher received Series B Stock and 2014 Warrants in 2014.**

8. Osher currently holds 125 shares of Series B Stock and Warrants to purchase 227,273 shares of Oxysure common stock from the December 2014 purchase. Osher currently holds shares of Series B Stock and Warrants to purchase shares of Oxysure common stock from the December 2013 purchase. Osher has invested $200,000 in Oxysure.

**Defendant lacks sufficient information at this time to admit or deny this allegation**.

9. In the December 2014 SPA, in order to induce Osher to purchase additional Series B Stock and Warrants, Ross, on behalf of Oxysure, represented that it had not and would not directly or indirectly take any action designed to stabilize or manipulate the price of any of its securities. Thus, in §3.1(ff) of the SPA, Oxysure represented as follows:

> (ff) Regulation M. Compliance. The Company has not, and to its knowledge no one acting on its behalf has: (i) taken, directly or indirectly, any action designed to cause or to result in the stabilization or manipulation of the price of any security of the Company to facilitate the sale or resale of any of the Securities, (ii) sold, bid for, purchased, or paid any compensation for soliciting purchases of, any of the Securities, or (iii) paid or agreed to pay to any Person any compensation for soliciting another purchase any other securities of the Company.

That representation was important to Osher, and Osher relied on it, to insure that the market price of Oxysure common stock had not been manipulated prior to Osher's purchase of Oxysure convertible securities in December 2014. That representation directly related to the price which Osher was willing to pay for the Series B Stock and the Warrants which were convertible into Oxysure common stock.

**Defendant generally denies this allegation and states that the Agreement speaks for itself.**

10. Contrary to such representation, Ross, in the month of December 2014, while negotiating on behalf of Oxysure the purchase by Osher of additional Oxysure convertible securities, requested another holder of Oxysure convertible securities, JSJ Investments, LLC ("JSJ"), to refrain from converting and selling Oxysure shares. Thus Oxysure's representation that it did not take any action designed to cause or to result in the stabilization or manipulation of the price of any security of the Company to facilitate the sale or resale of any of the Securities

was false. To the contrary, Oxysure took steps to manipulate the price of its common stock.

**Defendant denies this allegation.**

11. Upon information and belief, JSJ complied with such request. Upon information and belief, Ross has requested other holders of Oxysure convertible securities on other occasions to assist Oxysure in manipulating the price of its securities.

**Defendant denies this allegation.**

12. Pursuant to the Certificate of Designation, Osher had the right to convert each share of Series B Stock, at any time and from time to time, into Oxysure common stock at an initial Conversion Price of $0.55 subject to downward adjustment, as set forth in the Certificate of Designation. The initial Exercise Price of the Warrants was $1.20, subject to downward adjustment in accordance with the terms of the Warrants.

**Defendant admits this allegation to the extent it states that the Series B shares were initially convertible at $0.55 per share and the warrants were convertible at $1.20 per share. Otherwise, Defendant denies any and all implications of this allegation.**

13. In the SPA, the parties agreed, among other things, that while Osher still owned Series B Stock or the Warrants:

i) Oxysure would not enter into any Variable Rate Transactions, as defined and set forth in the SPA. In general, that provision prohibited Oxysure from issuing any securities or debt instruments which were convertible into Oxysure common stock at a variable conversion price - i.e., a price which fluctuated with the then obtaining market price of Oxysure common stock; and

ii) Oxysure would not issue any stock at a price less than the greater of the Series B Stock Conversion Price and the Exercise Price of the Warrants. Since December 2013, that price has been $1.20 per share; and

iii) Osher, along with another investor, had the right to participate in any Subsequent Financing.

**Defendant denies this allegation and states that the Agreements speak for themselves and will be subject to judicial construction and interpretation.**

14. In addition, the Certificate of Designation setting forth the terms and conditions of the Series B Stock provided that so long as 15% of the originally issued Series B Stock remained outstanding:

i) Oxysure would not incur any indebtedness over $200,000; and

ii) Oxysure would not issue any securities which would be *pari passu* or senior to the Series B Stock in terms of rights upon liquidation or dividends.

**Defendant denies this allegation and states that the Agreements speak for themselves and will be subject to judicial construction.**

15. All those provisions were important to Osher in purchasing the Series B Stock and the Warrants. The issuance of other variable rate convertible securities, after Osher purchased the Series B Stock and the Warrants, places continuing substantial downward pressure on the price of Oxysure's common stock, to Osher's detriment. Osher insisted upon the Variable Rate Transaction provision in order to insure that no such pressure would be exerted on Oxysure's common stock while Osher owned the Series B Stock and the Warrants, which were convertible into Oxysure common stock.

**Defendant denies this allegation and states that the Agreements speak for themselves and will be subject to judicial construction.**

16. Similarly, Oxysure's agreement not to issue stock at less than the higher of the Series B Stock Conversion Price and the Warrant Exercise Price was designed to insure, as much as possible, that the Series B Stock and the Warrants would retain their value. The right to participate in future financings would allow Osher to benefit further from its initial investment in Oxysure and help protect Osher from dilution of its position in Oxysure.

**Defendant denies this allegation and states that the Agreements speak for themselves and will be subject to judicial construction.**

17. Oxysure's agreement not to incur any indebtedness and not to issue any securities which were *pari passu* or senior to the Series B Stock was also designed to insure the value of the Series B Stock. Without the foregoing provisions, Osher would not have purchased the Series B Stock or the Warrants. Oxysure agreed to those provisions to induce Osher to invest $200,000 in Oxysure.

**Defendant denies this allegation and states that the Agreements speak for themselves and will be subject to judicial construction.**

18. The SPA and the Certificate of Designation were publicly filed twice: first, as Documents 9 and 10 in Oxysure's Form 10K filed with the SEC on April 15, 2014 and, again, as Documents 4 and 5 in Oxysure's Form 10K filed with the SEC on March 31, 2015. Thus the limitation on Oxysure's ability to issue variable rate convertible securities or *pari passu* securities, the price at which any securities could be issued after Osher purchased the Series B

Stock and the Warrants in December 2013 and the limitations on incurring debt were all publicly available.

**Defendant denies this allegation and states that the public filings speak for themselves and will be subject to judicial construction.**

19. In violation of those limitations, Oxysure issued: i) Series C, D and E Convertible Preferred Stock (the "Series C Stock", the "Series D Stock" and the "Series E Stock" as the case may be) and convertible notes to Adar Bays LLC ("Adar") and Union Capital LLC ("Union LLC") on or about June 30, 2015; and ii) variable rate convertible notes (together with the convertible notes issued to Adar and Union LLC, the "Convertible Notes") to JSJ, Group 10 Holdings, LLC ("Group 10"), Union LLC and Macallan Partners, LLC ("Macallan") in or about the first quarter of 2015; iii) issued stock below the price of $1.20; iv) incurred indebtedness in excess of $200,000; v) issued *parri passu* securities, and vi) failed to allow Osher to participate in Subsequent Financings in 2014 and 2015 in accordance with the terms of their agreement.

**Defendant denies this allegation.**

20. Based upon Oxysure's public filings, Oxysure issued 385,000 shares of Series C Stock and $300,000 of Convertible Notes to Adar and Union LLC on June 30, 2015 for a total consideration of $1 million. On that date Oxysure also issued 1,050,000 shares of Series D Stock and 531,667 shares of Series E Stock to Adar and Union LLC in escrow pending the occurrence of certain events. Upon information and belief those events have not yet occurred so the sale of the Series D Stock and Series E Stock has not yet been completed. The convertible notes issued on June 30, 2015, upon information and belief, could also be converted into common shares.

**Defendant admits that Series C shares have been issued, that Series D and E shares have**

**not yet been issued to the investors pursuant to contingency provisions, and otherwise, denies the allegations.**

21. The issuance of the Series C, D and E Stock and the convertible notes on June 30, 2015 violated the SPA because they were convertible into common shares at a price which varied with the market price of the common shares, they were *parri passu* with the Series B Stock, the common shares could be acquired for a price of less than $1.20 per share, Osher was not afforded an opportunity, in accordance with the terms of the agreements between Oxysure and Osher, to purchase that stock or the convertible notes, and Oxysure incurred over $200,000 in indebtedness.

**Defendant denies the allegations and states that the Agreements speak for themselves and will be subject to judicial construction.**

22. Oxysure disclosed in its Form 10Q for the quarter ended March 31, 2015, filed on May 18, 2015, that it had issued, during the first quarter of 2015, variable rate convertible notes. Union LLC, JSJ, Group 10 and Macallan, upon information and belief, purchased those convertible notes. The issuance of those convertible notes also violated the terms of the SPA because, upon information and belief, those notes are convertible into common stock at a price which varies with the market price of the common stock and enabled the holders to obtain stock at less than $1.20 per share. The issuance of those convertible notes also violated the SPA because Osher was not afforded the opportunity to purchase them in accordance with the terms of the agreements between Osher and Oxysure and Oxysure incurred more than $200,000 in indebtedness.

**Defendant admits that Oxysure issued certain convertible notes and otherwise denies the allegations and states that the filings and Agreements speak for themselves and will be subject to judicial construction.**

23. As a result of Oxysure's violations of the agreements between the parties, Osher had the right, under Section 10(b)(B) of the Certificate of Designation, to require Oxysure to redeem the Osher Series B Stock with Oxysure common stock at the Triggering Redemption Amount, as defined in the Certificate of Designation. On November 2, 2015, Osher requested that Oxysure redeem its Series B Stock for at least 756,526 shares of Oxysure common stock, the applicable Triggering Redemption Amount.

**Defendant denies the allegations and states that the Agreements speak for themselves and will be subject to judicial construction.**

24. Despite Osher's demand, Oxysure has failed to redeem Osher's Series B Stock, in violation of Oxysure's agreement with Osher.

<u>First Claim for Relief</u>
Fraud in the Inducement Against Oxysure
relief requested - rescission

25. Osher realleges paragraphs 1 through 24.

**Defendant denies the allegations.**

25. In order to induce Osher to purchase additional Seris B Stock and Warrants, Oxysure represented in the December 2014 SPA that it would not directly or indirectly take any action designed to stabilize or manipulate the price of any of its securities.

**Defendant denies the allegation.**

27. That representation was important to Osher and Osher reasonably relied on such representation in agreeing to purchase additional Series B Stock and Warrants and in agreeing to the purchase price thereof.

**Defendant denies the allegation.**

28. That representation was false, and Ross, at the time he signed the SPA on behalf of Oxysure, knew it was false. In December 2014, on at least two separate occasions, when Osher was negotiating with Oxysure to buy the additional stock, Ross requested JSJ to refrain from selling any Oxysure common stock. Those requests were made in order to prop up and otherwise manipulate the price of Oxysure common stock while Osher was negotiating to purchase additional Oxysure convertible preferred stock.

**Defendant denies the allegation.**

29. But for said misrepresentation, Osher would not have purchased the additional Series B Stock and Warrants in December 2014.

**Defendant denies the allegation.**

30. As a result of said misrepresentation, Osher is entitled to rescind its purchase of the Series B Stock and Warrants which it purchased pursuant to the December 2014 SPA. Osher stands ready to return such stock and warrants against return of the purchase price.

**Defendant denies the allegation.**

<u>Second Claim for Relief</u>
Fraud in the Inducement Against Both Defendants
relief requested - rescissionary damages

31. Osher realleges paragraphs 1 through 24 and 26 through 29.

**Defendant denies the allegation.**

32. As a result of said misrepresentation, Osher is entitled to rescissionary damages against both defendants, jointly and severally, in the amount of $200,000, plus interest.

**Defendant denies the allegation.**

<u>Third Claim for Relief</u>
Fraud in the Inducement Against Both Defendants
relief requested - damages

33. Osher realleges paragraphs 1 through 24 and 26 through 29.

**Defendant denies the allegation.**

34. As a result of said misrepresentation, Osher overpaid for the Oxysure convertible preferred shares and warrants which it acquired in December 2014 and has otherwise suffered damages, in an amount to be determined at trial.

**Defendant denies the allegation.**

<u>Fourth Claim for Relief</u>

Market Manipulation Against Both Defendants
relief requested - damages

35. Osher realleges paragraphs 1 through 24 and 26 through 29.

**Defendant denies the allegation.**

36. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule 10b-5 promulgated thereunder 17 C.F.R. 240.10b-5, proscribe both material misstatements and manipulative devices employed in connection with the sale of a security.

**Defendant denies the allegation.**

37. Osher purchased additional Series B Stock and Warrants on December 29, 2014.

Ross requested JSJ on at least two occasions during December 2014, including December 28, 2014, the day before Osher made its purchase, to refrain from selling Oxysure common stock. Upon information and belief, Ross made the same request of other holders of Oxysure convertible securities. Upon information and belief, JSJ and other holders of Oxysure convertible securities complied with such request and refrained from converting their Oxysure convertible securities and then selling into the market the common stock which otherwise would have been received upon such conversion. As a result, because of the reduced number of Oxysure common shares which otherwise would have been sold during December 2014, the price of Oxysure common stock was artificially higher than it would have been absent Oxysure's manipulation of the supply of shares available for sale. Such conduct by Oxysure constituted market manipulation, in violation of Section 10(b) and Rule 10b-5. Such conduct also establishes that Oxysure misrepresented in the SPA the fact that it had not taken any action designed to manipulate the price of any of its securities.

**Defendant denies the allegation.**

38. Oxysure and Ross acted with *scienter* in manipulating the price of Oxysure's common stock. The requests to other holders of Oxysure convertible securities to refrain from selling stock while Oxysure was negotiating the sale of additional convertible securities to Osher, with one such request occurring the day before Osher entered into the 2014 SPA pursuant to which Osher bought additional Series B Stock and Warrants, connotes intentional and willful conduct designed to deceive or defraud Osher by controlling or artificially affecting the price of Oxysure securities. Particularly given Oxysure's crucial need for Osher's additional investment funds to continue its operations, it was essential to Oxysure to maintain the price of its common stock to insure that Osher would proceed with its investment.

**Defendant denies the allegation.**

39. Oxysure's market manipulation and misrepresentation caused Osher damages both by inducing Osher to purchase the Series B Stock and Warrants and by compelling Osher to pay a price for such securities which was higher than Osher otherwise would have paid, absent the misrepresentation and wrongful manipulation.

**Defendant denies the allegation.**

<u>Fifth Claim for Relief</u>
breach of contract - sale of variable rate securities
relief sought - preliminary and permanent injunction

40. Osher realleges paragraphs 1 through 24.

**Defendant denies the allegation.**

41. Osher purchased the 675 shares of Oxysure's Series B Stock and Warrants in or about December 2013. In or about December 2014, Osher purchased an additional 400 shares of the Series B Stock and received additional Warrants.

**Defendant denies the allegation.**

42. In connection with such purchases, Oxysure agreed, among other things, not to issue securities in Variable Rate Transactions, as defined in the agreements between the parties, not to issue securities for a price less than the greater of the Series B Stock Conversion Price or the Warrant Exercise Price, to afford Osher the opportunity to invest in any Subsequent Financing, not to incur indebtedness in excess of $200,000, and not to issue securities *pari passu* with the Series B Stock in terms of dividend distributions and liquidation preferences.

**Defendant denies the allegation.**

43. In violation of those limitations, Oxysure issued: i) Series C, D and E Convertible

Preferred Stock and Convertible Notes to Adar and Union Capital LLC on or about June 30, 2015; and ii) Convertible Notes to JSJ, Group 10, Union LLC and Macallan in or about the first quarter of 2015; iii) issued stock below the price of $1.20; iv) incurred indebtedness in excess of $200,000; v) issued *parri passu* securities, and vi) failed to allow Osher to participate in Subsequent Financings in 2014 and 2015 in accordance with the terms of their agreement.

**Defendant denies the allegation.**

44. Osher has no adequate remedy at law.

**Defendant denies the allegation.**

45. Osher is, therefore, entitled to an injunction, both preliminary and permanent, enjoining Oxysure from: i) honoring any conversion requests submitted by any holder of any Oxysure Series C, D or E Convertible Preferred Stock or any convertible note or other convertible security issued after December 26, 2013 and containing a variable conversion price; ii) issuing or releasing from escrow any variable rate securities or securities which otherwise violate the terms of the SPA and the Certificate of Designation governing the Series B Stock; iii) issuing any securities for less than the amount set forth in Section 4.13 of the SPA; iv) entering into any Subsequent Financing in violation of Osher's right to participate therein in accordance with Section 4.17 of the SPA; v) incurring any indebtedness in violation of its agreements with Osher; and vi) paying any dividends to the Series C, D and E Preferred Stock or paying, in liquidation, any amounts to the holders of said Stock before Osher has been paid in full all amounts due to it upon liquidation.

**Defendant denies the allegation.**

<u>Sixth Claim for Relief</u>
breach of contract - sale of variable rate securities
relief sought - damages

46. Osher realleges paragraphs 1 though 24.

**Defendant denies the allegation.**

47. As a result of Oxysure's breach of contract, Osher is entitled to damages as determined at trial, including, but not limited to, interest at the lower of 18% per annum or the maximum rate permitted by applicable law, as set forth in ¶10(b) of the SPA.

**Defendant denies the allegation.**

Seventh Claim for Relief
breach of contract - failure to deliver shares
relief sought - preliminary and permanent injunction

48. Osher realleged paragraphs 1 through 24.

**Defendant denies the allegation.**

49. On and after November 2, 2015, Oxysure was obligated to deliver to Osher at least 756,526 shares of Oxysure common stock.

**Defendant denies the allegation.**

50. Oxysure failed to deliver said shares.

**Defendant denies the allegation.**

51. Osher has no adequate remedy at law.

**Defendant denies the allegation.**

52. Osher, therefore, is entitled to an injunction, both preliminary and permanent, directing Oxysure to deliver to Osher at least 756,526 shares of its unlegended common stock.

**Defendant denies the allegation.**

Eighth Claim for Relief
breach of contract - failure to deliver shares

relief sought - damages

53. Osher realleges paragraphs 1 through 24, 48 and 49.

**Defendant denies the allegation.**

54. As a result, Osher has been damaged in an amount to be determined at trial.

**Defendant denies the allegation.**

Ninth Claim for Relief
attorneys fees

55. In accordance with §11(d) of the Certificate of Designation and §5.9 of the SPA, Osher is entitled to reimbursement of its attorneys fees and other costs and expenses incurred in the prosecution of this action, such amounts to be determined after trial.

**Defendant denies the allegation.**

Wherefore, Plaintiff Osher Capital Partners, LLC demands judgment against Defendant Oxysure Systems, Inc. as follows:

i) on the First Claim for Relief, for an order of rescission directing Oxysure to pay back the full purchase price of the Series B Stock and Warrants purchased by Osher in December 2014, against delivery of said securities to Oxysure by Osher; and

**Defendant denies the allegations.**

ii) on the Second, Third and Fourth Claims for Relief, for damages, jointly and severally against both Defendants, in an amount to be determined at trial; and

**Defendant denies the allegation.**

iii) on the Fifth Claim for Relief, for an injunction, both preliminary and permanent, enjoining Oxysure from: i) honoring any conversion requests submitted by any holder of any Oxysure Series C, D or E Convertible Preferred Stock or any convertible note or other

convertible security issued after December 26, 2013 and containing a variable conversion price; and ii) issuing or releasing from escrow any variable rate securities or securities which otherwise violate the terms of the SPA and the Certificate of Designation governing the Series B Stock; and iii) issuing any securities for less than the amount set forth in Section 4.13 of the SPA; and iv) entering into any Subsequent Financing in violation of Osher's right to participate therein in accordance with Section 4.17 of the SPA; and v) incurring any indebtedness in violation of its agreements with Osher; and vi) paying any dividends to the Series C, D and E Preferred Stock or paying, in liquidation, any amounts to the holders of said Stock before Osher has been paid in full all amounts due to it upon liquidation; and.

**Defendant denies the allegation.**

iv) on the Sixth and Eighth Claims for Relief, for damages in an amount to be determined at trial; and

**Defendant denies the allegation.**

iv) on the Seventh Claim for Relief, for an injunction, both preliminary and permanent, directing Oxysure to deliver to Osher at least 756,526 shares of its freely trading common stock.

**Defendant denies the allegation.**

v) on the Ninth Claim for Relief, for reimbursement of attorneys' fees and other costs and expenses incurred by Osher in the prosecution of this action; and

**Defendant denies the allegation.**

vi) on all Claims for Relief, for interest and the costs and disbursements of this action; and

**Defendant denies the allegation.**

vii) for such other, further and different relief as the Court deems just and proper.

**Defendant denies the allegation.**

## II.

## AFFIRMATIVE DEFENSES

Defendant Julian Ross raises the following defenses:

56. The complaint fails to state any claims upon which relief can be granted.

57. The complaint fails to state a valid cause of action.

58. The claims are barred for lack of personal jurisdiction.

59. The claims are barred for lack of capacity for personal liability.

60. The claims are barred by the doctrines of consent, waiver, estoppel or acquiescence.

61. The claims are barred by the doctrine of unclean hands and other equitable defenses.

62. The Plaintiffs violated various provisions of the Securities Exchange Act of 1934, as amended.

63. Fraud in the inducement into the 2014 escrow agreement and 2014 SPA.

64. Failure to mitigate. Plaintiffs failed to mitigate their damages.

65. Offset. Defendant is entitled to offset of damages against Plaintiffs.

66. Ratification. Defendant Oxysure has performed on the contracts (“Contracts”) underlying the issuances of the Series B Stock, and Plaintiffs have made conversions (to common stock) of shares of Series B Stock issued to them and sold the as-converted common shares (of Oxysure) into the market for significant gains. Plaintiffs’ election to affirm the Contracts preclude a fraud or tort action for rescission and damages.

67. Rescission. The Contracts are void *ab initio* because Plaintiffs violated United States Securities laws.

68. Discharge. The Contracts and Plaintiffs' claims have been discharged by the United States Bankruptcy Court, Eastern District of Texas.

69. Force Majeur / impossibility. Defendant Oxysure's primary product became the subject of an FDA recall which it impossible to provide any additional performance.

70. Plaintiffs' suit is for oppression, bad faith or harassment purposes.

71. Mistake. The Contracts are void *ab initio* by the doctrine of mistake.

72. Unconscionability. Certain provisions of the Contracts are barred by the doctrine of unconscionability.

WHEREFORE, Defendant Ross respectfully requests that this Court:

i. Enter judgment in favor of Defendant Ross on each of the counts in Plaintiffs' complaint;

ii. Dismiss the Plaintiffs' complaint with prejudice;

iii. Award Defendant Ross his costs and reasonable attorney fees, and

iv. Grant Defendant Ross such other and further relief as the Court deems fair and equitable.

## III.

## JULIAN ROSS'S COUNTERCLAIM

### A. SUMMARY OF THE ACTION

This counterclaim for rescission, restitution, and attorney's fees and costs, stems from the activities of Osher Capital Partners and Ari Kluger, Osher's principal and control person. In short, Mr. Kluger and Osher Capital Partners acted as de-facto broker-dealers in the transactions underlying this case, taking shares of stock as their de facto brokerage fee—but without being

duly registered and licensed by the Securities and Exchange Commission ("SEC") or the Financial Industry Regulatory Authority ("FINRA"). It is *illegal* to do what Osher and Kluger have done under federal laws – namely to serve as placement agents for securities offerings, with full knowledge that they were doing so in violation of the securities laws. Any contracts made in connection therewith are thus, *void*.

## B. PARTIES

1. Counterclaim Plaintiff Ross is an individual residing in Frisco, Texas.

2. Counterclaim Defendant Alpha Capital Anstalt is a foreign associated company with its principal place of business in Lichtenstein. It is a plaintiff in the underlying action and thus requires no services of process and has already consented to jurisdiction herein.

3. Counterclaim Defendant Osher Capital Partners LLC is a limited liability company with its principal place of business in New York. It is a plaintiff in the underlying action and thus requires no services of process and has already consented to jurisdiction herein.

4. Counterclaim Defendant Ari Kluger is an individual resident in the State of New York (upon information and belief). He is duly joined under Rule 13(h) as an additional counterclaim defendant. He may be served with process personally.

## C. JURISDICTION AND VENUE

5. Subject matter jurisdiction over this claim is proper under 28 U.S.C. § 1331.

6. Jurisdiction over the parties is proper because all counterclaim defendants are residents of New York and/or have already subjected themselves to the personal jurisdiction of this court by bringing the underlying lawsuit in this court.

7. Venue is proper in this court as this counterclaim is a mandatory counterclaim under Rule 13(a)(1) because it arises out of the transaction or occurrence that is the subject matter of the Plaintiffs' claims and does not require adding another party over whom the court cannot acquire jurisdiction.

## D. FACTUAL BACKGROUND

8. In 2013, Oxysure was approached by Ari Kluger who represented that he represented in the United States an investor from Leichtenstein, Alpha Capital Anstalt through his own firm, Osher Capital Partners.

9. Mr. Kluger represented that he would be able to place Oxysure's then contemplated shares of Series B Stock.

10. The shares of Series B Stock were privately issued shares under Regulation D, with face value $1000 per share, convertible at any time after a six-month holding period into Oxysure's common stock for $0.55 per share (e.g., each share of Series B Stock converted into 1,818 shares of Oxysure common stock).

11. On or around December 26, 2013, and after back-and forth negotiations between Oxysure and Mr. Kluger on behalf of Alpha, and due diligence conducted by or at the behest of Mr. Kluger, Alpha purchased 675 shares of Oxysure's Series B Stock.

12. Simultaneously, Osher was issued as $20,000 as a fee, which Osher either took as a cash fee or as part payment towards the purchase of 75 shares of Series B Stock.

13. In addition, affiliates or associates of Osher or Ari Kluger took a total of $40,000 in fees.

14. In addition, Osher took 68,182 of the 2013 Warrants and affiliates or associates of Osher or Ari Kluger took a total of 136,364 of the 2013 Warrants.

15. Alpha converted many of these shares of Series B Stock at the $0.55 conversion price while the price of Oxysure's common shares was well above $1.00, thus netting itself hundreds of thousands of dollars in immediate profit.

16. On or about December 26, 2014, Alpha purchased another 400 shares of Series B Stock from Oxysure.

17. Osher simultaneously was issued 42 shares of the Series B Stock and 76,364 of the 2014 Warrants as part of its placement fee, and then purchased an additional 83 shares of the Series B Stock.

18. Alpha and Osher both continued to convert shares of their Series B Stock through Oxysure and sold the as-converted common shares it had (presumably) for even greater profits. They continued to do so even as Oxysure' stock price began to decline in later on in 2015.

19. Osher served as Alpha's placement agent for these securities – even taking an "in kind" fee in the form of shares of Oxysure's Series B Stock, Oxysure 2013 Warrants and Oxysure 2014 Warrants, all of which Osher did not have to pay for.

20. Osher thus served as a de-facto broker dealer as that term is known and used in the securities laws.

21. Neither Osher nor Kluger was registered with the SEC or FINRA as a licensed broker dealer as required by 15 U.S.C. § 78o.

22. Mr. Kluger meets the definition for control person liability under the securities laws.

## E. CAUSES OF ACTION

23. Counterclaim Plaintiff realleges and incorporates the factual allegations as if fully set forth herein.

24. Counterclaim Plaintiff raises the following causes of action based thereupon:

**FIRST CAUSE OF ACTION**
**Declaratory Relief (28 U.S.C. § 2201)**
**(Against Osher)**

25. Defendant Ross seeks declaratory relief that the Contracts are void under 15 U.S.C. § 78o and § 78cc.

26. Upon information and belief, Osher knowingly violated the law by serving as a broker-dealer and accepting fees and remuneration for said services in the performance of its agreements or activities with Alpha and others.

27. Defendant Ross seeks equitable rescission and all such additional equitable restitution as is available for any shares already purchased and converted by Osher for its own account or on behalf of another.

**SECOND CAUSE OF ACTION**
**Declaratory Relief (28 U.S.C. § 2201)**
**(Against Alpha)**

28. Defendant Ross seeks declaratory relief that the transactions are void under 15 U.S.C. § 78o and § 78cc.

29. Upon information and belief, Alpha knowingly violated 15 U.S.C. § 78o by engaging Osher and paying Osher an unlawful fee.

30. Defendant Ross seeks equitable rescission and all such additional equitable restitution as is available for any shares already purchased and converted by Alpha for its own account.

**THIRD CAUSE OF ACTION**
**Injunctive Relief**
**(Against Alpha and Osher)**

31. Defendant Ross seeks injunctive relief preventing Alpha and Osher from exercising any rights under the Series B transaction documents which are henceforth deemed void and therefore unenforceable.

32. Void contracts may not be enforced as a matter of law and the Court should enjoin any attempt to seek conversions in violation of the law.

33. Defendant Ross seeks injunctive relief requiring Alpha and Osher to cease their business practices in violation of the federal securities laws.

**FOURTH CAUSE OF ACTION**
**Conversion**
**(Against Alpha and Osher)**

34. Alpha and Osher are in receipt of shares of Series B Stock, and Alpha and Soher both converted shares of Series B Stock into common shares via exercise of an illegal contract which is now deemed void.

35. Any shares obtained or sold thereunder are hereby deemed converted as a matter of law in violation of Defendants' rights.

36. Alpha and Osher must return the shares or pay Defendant sufficient damages to compensate Defendant for the loss of the shares.

37. Defendant Ross is further entitled to punitive damages as the illegality of this contract is well established to be in violation of the public trust and public interest.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Alpha and Osher)**

38. Osher and Alpha have been unjustly enriched at Defendants' expense by holding Oxysure's shares and having the opportunity to convert them when the shares were not properly owned by them pursuant to an illegal contract.

**SIXTH CAUSE OF ACTION**
**CONTROL PERSON LIABILITY**
**(Against Kluger)**

39. Ari Kluger is a control person of Osher as defined in the securities laws.

40. Ari Kluger knowingly engaged in the conduct giving rise to the statutory and common law violations hereunder.

41. Kluger is therefore personally liable for any damages and other relief to Defendant Ross.

**Defendant Ross hereby requests a trial by jury on his above counterclaim.**

**Respectfully submitted this 10th day of September, 2017.**

/s/ *Julian Ross*

JULIAN ROSS, Defendant, Counter-Plaintiff *Pro Se*
5100 Eldorado Parkway
Suite 102-801
McKinney, Texas 75070
T: (972) 752-3403
F: (844) 262-0854
Legalprose2000@gmail.com

**CERTIFICATE OF SERVICE**

This is to certify that on the 10th day of September, 2017, a true and correct copy of the above and foregoing instrument was served via electronic service and/or First Class mail, upon the following counsel of record in accordance with the Federal Rules of Civil Procedure:

Kenneth Zitter
260 Madison Avenue #18
New York, NY 10016
Ph: 212-532-8000
Fax: 212-679-8990

*/s Julian Ross*

JULIAN ROSS, Defendant, Counter-Plaintiff *Pro Se*